

F I L E D

JUN 0 3 2019

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

## TABLE OF CONTENTS

| | PAGE |
|---|---|
| TABLE OF CONTENTS | i |
| TABLE OF AUTHORITIES | ii |
| STATEMENT OF THE CASE | 1 |
| STATEMENT OF THE FACTS | 4 |
| PROPOSITION I | 7 |

PROSECUTORIAL MISCONDUCT DEPRIVED APPELLANT OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL.

PROPOSITION II .................................... 19

THE COURT PLAINLY ERRED BY ALLOWING OFFICER TESTIMONY ABOUT APPELLANT'S UNWARNED, INCRIMINATING CUSTODIAL STATEMENT. THE STATEMENT WAS KEY TO MR. HOLLAND'S COUNT 2 CONVICTION.

PROPOSITION III .................................... 23

TRIAL COUNSEL FAILED TO SUBJECT THE STATE'S CASE TO MEANINGFUL ADVERSARIAL TESTING. APPELLANT'S CONSTITUTIONAL RIGHT TO COUNSEL WAS COMPROMISED TO THE EXTENT THAT PREJUDICE SHOULD BE PRESUMED.

PROPOSITION IV .................................... 27

ALTERNATIVELY, TRIAL COUNSEL'S UNREASONABLE ERRORS PREJUDICED APPELLANT AND PRECLUDED EFFECTIVE ASSISTANCE.

PROPOSITION V .................................... 33

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ORDERED APPELLANT'S SENTENCES TO BE SERVED CONSECUTIVELY.

Mail ___No Cert Svc ___No Orig Sign
___C/J ___C/MJ ___C/Ret'd ___No Env
___No Cpy's ___No Env/Cpy's ___O/J ___O/MJ

**PROPOSITION VI** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

    THE COURT LACKED JURISDICTION TO IMPOSE THE COUNT 2-4
    SENTENCES BASED ON THE CONVICTIONS REFLECTED IN THE
    JUDGMENT AND SENTENCE DOCUMENTS.

**PROPOSITION VII** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

    CUMULATIVE ERRORS DEPRIVED APPELLANT OF A FAIR
    PROCEEDING AND A RELIABLE OUTCOME.

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

**TABLE OF AUTHORITIES**
**CASE AUTHORITIES**

**FEDERAL CASES**

*Cargle v. Mullin*, 317 F.3d 1196 (10th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . 37

*Carnley v. Cochran*, 369 U.S. 506, 82 S. Ct. 884,
    8 L. Ed. 2d 70 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824,
    17 L. Ed. 2d 705 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Coffin v. United States*, 156 U.S. 432, 15 S. Ct. 394,
    39 L. Ed. 481 (1895) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S. Ct. 1868,
    40 L. Ed. 2d 431 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Eze v. Senkowski*, 321 F.3d 110 (2nd Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . 31

*Hicks v. Oklahoma*, 447 U.S. 343, 100 S. Ct. 2227,
    65 L. Ed. 2d 175 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602,
    16 L. Ed. 2d 694 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 29

*Osborn v. Shillinger*, 861 F.2d 612 (10th Cir. 1988) . . . . . . . . . . . . . . . 25, 29

*Pennsylvania v. Muniz*, 496 U.S. 582, 110 S. Ct. 2638,
110 L. Ed. 2d 528 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Rhode Island v. Innis*, 446 U.S. 291, 100 S. Ct. 1682,
64 L. Ed. 2d 297 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Smith v. Phillips*, 455 U.S. 209, 102 S. Ct. 940,
71 L. Ed. 2d 78 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052,
80 L. Ed. 2d 674 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . 23, 27

*United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039,
80 L. Ed. 2d 657 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Garza*, 118 F.3d 278 (5th Cir. 1997) . . . . . . . . . . . . . . . . 21

*United States v. Pacheco-Lopez*, 531 F.3d 420 (6th Cir. 2008). . . . . . . . . . . 20

*United States v. Parra*, 2 F.3d 1058 (10th Cir. 1993) . . . . . . . . . . . . . . 21, 29

*United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010) . . . . . . . . . . . . . 8, 30

*In re Winship*, 397 U.S. 358, 90 S. Ct. 1068,
25 L. Ed. 2d 368 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . 11, 28

## STATE CASES

*Armstrong v. State*, 1956 OK CR 80, 300 P.2d 766 . . . . . . . . . . . . . . . . . . 9

*Aycox v. State*, 1985 OK CR 83, 702 P.2d 1057 . . . . . . . . . . . . . . . . . . . . . . 29

*Barnes v. State*, 2017 OK CR 26, ___ P.3d___ . . . . . . . . . . . . . . . . . . . 10

*Bell v. State*, 2007 OK CR 43, 172 P.3d 622 . . . . . . . . . . . . . . . . . . . . . . . 7

*Brewer v. State*, 1982 OK CR 128, 650 P.2d 54 . . . . . . . . . . . . . . . . . 13, 31

*Brown v. State*, 1998 OK CR 77, 989 P.2d 913 . . . . . . . . . . . . . . . . . . . 28

*Buis v. State*, 1990 OK CR 28, 792 P.2d 427 . . . . . . . . . . . . . . . . . . . . . 34

*Chandler v. State*, 1977 OK CR 324, 572 P.2d 285 . . . . . . . . . . . . . . . . . . 37

*Ex parte Custer*, 1948 OK CR 126, 88 Okl.Cr. 154, 200 P.2d 781 . . . . . . . 36

*Davis v. State*, 2005 OK CR 21, 123 P.3d 243 . . . . . . . . . . . . . . . . . . . 23, 27

*Dunkle v. State*, 2006 OK CR 29, 139 P.3d 228 . . . . . . . . . . . . . . . . . . 22

*Florez v. State*, 2010 OK CR 21, 239 P.3d 156 . . . . . . . . . . . . . . . . . . 14

*Frederick v. State*, 2001 OK CR 34, 37 P.3d 908 . . . . . . . . . . . . . . . 28

*Gourley v. State*, 1989 OK CR 28, 777 P.2d 1345 . . . . . . . . . . . . . . . 12, 30

*Hogan v. State*, 2006 OK CR 19, 139 P.3d 907 . . . . . . . . . . . . . . . . . 7, 19

*Hunter v. State*, 2009 OK CR 17, 208 P.3d 931 . . . . . . . . . . . . . . . . . 15, 31

*Jackson v. State*, 2006 OK CR 45, 146 P.3d 1149 . . . . . . . . . . . . . . . . . . 20

*Jennings v. State*, 1987 OK CR 219, 744 P.2d 212 . . . . . . . . . . . . . . . . . 27

*King v. State*, 2008 OK CR 13, 182 P.3d 842 . . . . . . . . . . . . . . . . . . . 34

*Kreijanovsky v. State*, 1985 OK CR 120, 706 P.2d 541 . . . . . . . . . . . . . 20

*Luna v. State*, 2016 OK CR 27, 387 P.3d 956 . . . . . . . . . . . . . . . . . . . 16

*McCarty v. State*, 1988 OK CR 271, 765 P.2d 1215 . . . . . . . . . . . . . . . . . 12

*Miller v. State*, 2013 OK CR 11, 313 P.3d 934 . . . . . . . . . . . . . . . . 7, 15, 31

*Neloms v. State*, 2012 OK CR 7, 274 P.3d 161 . . . . . . . . . . . . . . . . . 33, 36

*Peninger v. State*, 1991 OK CR 60, 811 P.2d 609 . . . . . . . . . . . . . . . . 37

*Robertson v. State*, 1995 OK CR 6, 888 P.2d 1023 . . . . . . . . . . . . . . . 36

*Roy v. State*, 2006 OK CR 47, 152 P.3d 217 . . . . . . . . . . . . . . . . . . . 11, 30

*Satterlee v. State*, 1976 OK CR 88, 549 P.2d 104 . . . . . . . . . . . . . . . . . 14

*Scott v. State,* 1991 OK CR 31, 808 P.2d 73 . . . . . . . . . . . . . . . . . . . . . . 36

*Simpson v. State,* 1994 OK CR 40, 876 P.2d 690 . . . . . . . . . . . . . . . . . 21

*Smith v. State,* 1977 OK CR 317, 572 P.2d 262 . . . . . . . . . . . . . . . . . . . 34

*Smith v. State,* 1987 OK CR 235, 744 P.2d 1282 . . . . . . . . . . . . . . . . . . . 9

*Starr v. State,* 1979 OK CR 126, 602 P.2d 1046 . . . . . . . . . . . . . . . . . 9, 14

*Stewart v. State,* 2016 OK CR 9, 372 P.3d 508 . . . . . . . . . . . . . . . . . . . 14

*Sykes v. State,* 1951 OK CR 154, 95 Okl.Cr. 14, 238 P.2d 384 . . . . . . . . . 18

*Taylor v. State,* 1971 OK CR 457, 490 P.2d 1404 . . . . . . . . . . . . . . . . . 33

*Tobler v. State,* 1984 OK CR 90, 688 P.2d 350 . . . . . . . . . . . . . . . . . 12, 30

## CONSTITUTIONAL AUTHORITIES

United States Constitution

    U.S. Const. amend. V . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 19, 29, 37

    U.S. Const. amend. VI . . . . . . . . . . . . . . . . . . . . . . . 7, 19, 23, 29, 32

    U.S. Const. Amend. XIV . . . . . . . . . . . . . . . . . . . 19, 23, 29, 32, 37

Oklahoma Constitution

    Okla. Const. art. II, § 7 . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 19, 29

    Okla. Const. art. II, § 20 . . . . . . . . . . . . . . . . . . . . 7, 19, 23, 29, 32

    Okla. Const. art. II, § 21 . . . . . . . . . . . . . . . . . . . 19, 23, 29, 32, 37

## STATUTORY AUTHORITIES

Oklahoma Statutes

    21 O.S. 540 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 O.S. 1531.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 35

21 O.S.2011, § 51.1(A)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

22 O.S.2011, § 926.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

22 O.S.2011, § 929. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

22 O.S.2011, §§ 978 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

22 O.S.2011, § 980 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

22 O.S.Supp.2016, § 977(A)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

63 O.S. § 2-415 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

63 O.S. § 2-503 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 34

68 O.S. § 450.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 35

68 O.S.2011, § 450.8(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## OTHER AUTHORITIES

Oklahoma Uniform Jury Instructions

Instruction No. 10-9.6A, OUJI-CR (2d) . . . . . . . . . . . . . . . . . . . . . . . 15

Instruction No. 10-21, OUJI-CR (2d) . . . . . . . . . . . . . . . . . . . . . . . . 15

## MISCELLANEOUS

Rule 1.1, *Oklahoma Rules of Professional Conduct,*
    Title 5, ch. 1., App. 3-A (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Standard 3-6.8(c), *American Bar Association for Criminal Justice,*
    *Prosecution Function* (4th Ed. 2015) . . . . . . . . . . . . . . . . . . . . . . . . 10

# IN THE COURT OF CRIMINAL APPEALS FOR THE STATE OF OKLAHOMA

JESSE WILLIAM HOLLAND, )
)
           Appellant, )
)
v. )      Case No. F-2017-638
)
THE STATE OF OKLAHOMA, )
)
           Appellee. )

## BRIEF OF APPELLANT

Jesse William Holland, Appellant, will be referred to by name or as Appellant. Appellee will be referred to as the State or the prosecution. Numbers in parentheses refer to page citations in the original Tulsa County record (O.R.); the transcript of the October 31, 2016, preliminary hearing (PH Tr.); the transcript of the jury trial held June 6-7, 2017 (Tr.I, Tr.II); and the transcript of the June 16, 2017, sentencing (Sent. Tr.). Citations to the State's exhibits (State Exh.) will also be placed in parentheses.

## STATEMENT OF THE CASE

On October 4, 2016, the State charged Appellant by information in Tulsa County Case No. CF-2016-5318 with:

- Count 1 - Trafficking in Illegal Drugs (Methamphetamine), a felony, in violation of 63 O.S. § 2-415.
- Count 2 - Acquiring Proceeds From Drug Activity, a felony, in

violation of 63 O.S. § 2-503[1].

- Count 3 - Possessing Controlled Drugs without Tax Stamp Affixed, a felony, in violation of 68 O.S. § 450.1[2].
- Count 4 - Falsely Personating Another to Create Liability, a felony, in violation of 21 O.S. § 1531.4[3].
- Count 5 - Obstructing an Officer, a misdemeanor, in violation of 21 O.S. 540.

The Information contained a second page alleging several prior convictions. (O.R. 14-19)[4] A preliminary hearing was held on October 31, 2016, before the Honorable James Keeley, Special District Judge. Appellant rejected the State's offer (PH Tr. 3), and after testimony, the court overruled Appellant's demurrer and bound him over as charged (PH Tr. 41-42).

The two-day jury trial commenced on June 6, 2017, before the Honorable William LaFortune, District Judge. Assistant District Attorneys Isaac Shields and Mark Morgan appeared for the State, and Beverly Atteberry represented Appellant. Four witnesses testified for the prosecution during the first stage. Appellant stipulated to certain elements of Count 4 regarding the benefit of false

---

[1] § 2-503 actually pertains to property forfeitures. § 2-503.1 describes the offense of Proceeds Derived from Illegal Drug Activity.

[2] § 450.1 provides only definitions related to controlled dangerous substance taxes. The substantive tax requirements are set forth in §§ 450.2-450.7, and violations thereof are described in §§ 450.8 and 450.9.

[3] Title 21 contains no statute § 1531.4. Subsection four of §1531 describes "other acts" of false personation.

[4] The State would twice amend the Information, making corrections only to the endorsed witness list and to the second page. (O.R. 25-30, 31-35; PH Tr. 4, 41)

2

personation[5]. (Tr.I 208-209; State Exh. 3) After the State rested, the court overruled Appellant's demurrer. Appellant waived opening statement and offered no witnesses or evidence. (Tr.I 214) The jury was instructed (Tr.II 231), and after closing arguments and deliberation, returned guilty verdicts on all five counts (Tr.II 264-267; O.R. 40-44).

No witnesses testified at the trial's second stage, but a certified DOC pen pack containing six prior Judgment and Sentences was admitted. (State Exh. 4) After instructions and closing arguments, Appellant interposed an out-of-time demurrer to the State's second-stage evidence, which was overruled. (Tr.II 288-289) The jury found Appellant guilty of the felony counts after two or more previous convictions, and fixed the following punishments:

- Count 1 - 51 years; $25,000 fine;
- Count 2 - 12 years[6];
- Count 3 - 4 years; $1,000 fine;
- Count 4 - 10 years; $1,000 fine;
- Count 5 - 1 year.

(Tr.II 290-293; O.R. 101-105)

On June 16, 2017, the court sentenced Appellant accordingly, with Count 5 running concurrently to Count 4, but with all other terms to be served consecutively.  The court also assessed a $150 VCA fee for each count and

[5]The stipulation was presumably to avoid mention of Appellant's unrelated outstanding warrants. (PH Tr. 15, 22; Tr.II 219)

[6]The Count 2 verdict form was not signed by the foreperson (O.R. 102), but the jury was polled and indicated a unanimous verdict (Tr.II 290-293).

3

granted credit for time served. (Sent. Tr. 5-6) The corresponding Judgment and Sentences were filed on June 19, 2017. (O.R. 108-127)[7] It is from these judgment and sentences that Appellant now appeals.

## STATEMENT OF FACTS

Tulsa police officers testified to the following. Officer Wesley Anderson was on patrol in north Tulsa on September 29, 2016, when he observed a red Mercury Cougar at 5:13 p.m. A large crack in the vehicle's windshield obstructed the driver's view in violation of a city ordinance. (Tr.I 122-124) Anderson followed the car, which pulled into a QuikTrip parking lot. When the officer checked the tag, he determined that the license plate did not match that vehicle[8]. Officer Anderson backed his unit up, blocking the Mercury, and made contact with the occupants - a female driver and male passenger, identified as Appellant. (Tr.I 124-127; PH Tr. 19) Neither suspect had identifying information. Appellant provided the name of "Jeremy Holland" and a birth date of August 28, 1978. (Tr.I 127-129, 138) Anderson observed that Appellant was shaking, pinching at his right pocket, and reaching under the seat. (Tr.I 126-128)

Other officers arrived, and Anderson advised about Appellant's furtive movements and that he was unable to locate the suspects in the database with

---

[7] The Count 1 Judgment and Sentence omitted the $25,000 fine. (O.R. 108)

[8] At trial, Officer Anderson acknowledged that the tag indeed matched the car, but that he had inadvertently entered the incorrect number. (Tr.I 124-125)

4

the names they provided. (Tr.I 173) Officer Dean Montgomery and Corporal Wyett Poth approached the Mercury's passenger side and similarly observed Appellant fidgeting and attempting to reach under the seat. Concerned for their safety, they ordered Appellant to exit the vehicle. (Tr.I 148, 174) Outside of the vehicle, Appellant kept flexing and shifting, ignoring commands and preventing a patdown. The officers eventually cuffed Appellant and got him to the ground. Appellant became compliant once threatened with a taser. (Tr.I 130-131, 149-151, 174-177) Officer Montgomery considered Appellant to be under arrest for obstruction at that point and searched him, discovering $1,190 of cash in his left pocket and a plastic bag containing a crystal-like substance in his right pocket. (Tr.I 131, 176-181; State Exh. 1)

Montgomery field tested the substance, which was presumptively positive for methamphetamine. (Tr.I 179-181) The bag was not affixed with a tax stamp (Tr.I 187-188), and the substance was in pure, uncut, hardened crystal form (Tr.I 198-199). No smoking device, spoon, syringe, or smaller baggies were found. (Tr.I 182-183) The substance was booked into evidence (Tr.I 132-136, 184-187) and ultimately determined by the Tulsa Police Department Forensic Laboratory to be 51.0 grams of methamphetamine. [9] (Tr.I 207).

---

[9] The Probable Cause Affidavit stated a weight of 65.6 grams. (O.R. 23)

The officers eventually determined that the male passenger was Jesse Holland, whose birth date was December 16, 1982. Appellant stated that he was not employed. (Tr.I 135, 138, 188-192) Appellant was arrested, and the vehicle was towed. Four cell phones were discovered in the car. (State Exh. 2; Tr.I 188) Additional facts will be discussed as they relate to the individual propositions of error.

## PROPOSITION I

**PROSECUTORIAL MISCONDUCT DEPRIVED APPELLANT OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL.**

**Standard of Review.** This Court evaluates prosecutorial misconduct claims by determining whether the challenged comments so infected the trial that it was rendered fundamentally unfair, such that the jury's verdicts cannot be relied upon. *Miller v. State*, 2013 OK CR 11, ¶ 116, 313 P.3d 934, 974. Prosecutorial remarks that were not met with a contemporaneous objection are reviewed for plain error. *Hogan v. State*, 2006 OK CR 19, ¶ 87, 139 P.3d 907, 934.

**Argument and Authorities.** A criminal defendant has a due process right to a fundamentally fair trial. U.S. Const. amend. V, XIV; Okla. Const. art. II, §§ 7, 20. The touchstone of alleged prosecutorial misconduct is the fairness of the trial. *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78 (1982). Even absent contemporaneous objections, when prosecutor's conduct taken as a whole crossed the line of acceptable behavior, relief is warranted. *Bell v. State*, 2007 OK CR 43, ¶ 6, 172 P.3d 622, 624.

### A. Assistant District Attorney Shields improperly emphasized his own military background, causing the jury to sympathize and identify with the prosecution.

While introducing himself and his co-counsel to the jury panel, Prosecutor Shields stated "...I joined the Army, spent several years doing that. Infantry officer by trade so I hate math okay. So I did a few tours in Iraq, wound up here and

7

went to law school." (Tr.I 49) The Prosecutor subsequently addressed a retired

Army venireperson (Tr.I 43) as his "soldier buddy" (Tr.I 63) and again referred to

his enlistment in the infantry (Tr.I 68). Later in voir dire, the ADA discussed

applying the same law to different facts and used petty larceny as an example:

> [Stealing a pencil] is petty larceny, right? It is not your pencil, okay?
> It is a misdemeanor, okay. But would you agree with me if I said that
> despite that there is a difference between like my second tour in Iraq,
> right before I left, my son gave me a little pen and said, Dad, wear
> this every day on your dog tags and this will keep you safe. Just some
> little knickknack thing, right. If you took that, do you think it is - I
> mean, the physical value of the pencil and that little knickknack - it's
> probably the same thing at the store, but does it feel different?

(Tr.I 72)

It was improper for Shields to endear himself to the jury in this manner. A

prosecutor's remarks about his own military service serve no purpose other than

to enhance his stature in the jury's eyes and create a good guy/bad guy

dichotomy. *United States v. Warshak,* 631 F.3d 266, 303-304 (6th Cir. 2010). They

likely stir jurors' patriotism and potentially shift the focus away from the actual

trial issues. *Id.,* 631 F.3d at 306.

### B. The prosecution intentionally elicited improper testimony from a State witness.

During Officers Montgomery's cross-examination, defense counsel asked

questions suggesting Appellant possibly possessed the drugs for personal use.

(Tr.I  192-197) The following exchange took place on redirect:

Prosecutor Shields: I want to ask you specifically about the defendant. Is he a drug dealer?

Officer Montgomery: Yes.

(Tr.I 199) The court sustained Appellant's objection, but the damage was done.

The impropriety of the State's question was blatant. Fact finding is the sole and exclusive province of the jury. *Armstrong v. State,* 1956 OK CR 80, ¶ 15, 300 P.2d 766, 769. Defense counsel's broaching of a subject does not grant the State an unrestricted license to say anything at all. *Starr v. State,* 1979 OK CR 126, ¶ 13, 602 P.2d 1046, 1049. It is the responsibility and duty of the prosecuting attorney to use fair, honorable, reasonable, and lawful means to secure a verdict. *Smith v. State,* 1987 OK CR 235, ¶ 7, 744 P.2d 1282, 1285.

### C. The prosecution's first-stage closing arguments disparaged the presumption of innocence and attempted to shift the State's burden.

After already twice telling the jury that their decision shouldn't take long (Tr.II 240, 251), the prosecution then  stated:

> This is not going to be hard. This is not difficult. Punishment is not before you at this time. You don't have to go back there and say, gosh, what is this worth? And really that is why this case is being tried. This isn't about did he do it, it is about what it is worth. But we are not there yet. [] Your job for this stage is to get out of here and the hardest decision that you should probably be doing when you get back there is figuring out who your foreperson is going to be because the evidence all points to one thing, that he is an incredibly guilty individual and that the State has proven each and every element in everyone of those counts. That's it. Guilty or not. So figure out who

your foreperson is going to be and we will see you in about 15 minutes. Okay?[10]

(Tr.II 258)

"The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin v. United States,* 156 U.S. 432, 453, 15 S.Ct. 394, 403, 39 L.Ed 481 (1895). The State undermined this sacred principle by pressuring the jury to deliberate hastily and by giving short shrift to the first stage, contending that the case was not even about guilt/innocence, but only about sentencing. A prosecutor should not seek to divert the jury from its duty of deciding the case on the evidence. Standard 3-6.8(c), *American Bar Association Standards for Criminal Justice,* Prosecution Function (4th Ed. 2015). *See also, Barnes v. State,* 2017 OK CR 26, ¶ 11, ___ P.3d ___ (prosecutors should neither demean the trial process nor ignore the presumption of innocence).

The State's first-stage closing argument continued:

And you are going to have this inclination to go back there and try to struggle to come up with a defense for him, because that is your inclination, because no one likes to send people to prison. You are going to want to go back there and think is it possible that he has cash in his left pocket and a lot of drugs in his right pocket and says I have no job, is it possible that money came from something else? You are going to want to do that, but is it reasonable? And that's the

---

[10]The court sustained Appellant's objection to the final comment. (Tr.II 259)

burden, beyond a reasonable doubt. You are going to have to fight that inclination to go back there and try to force yourself into thinking of some possible defense that he has. Remember he's entitled to a fair trial, but not a fair shot, because if you are guilty, [you are] guilty. [Ms. Atteberry] doesn't have much to work with. She's going to do her job...but that doesn't mean she has much to work with.

(Tr.II 251-252)

Appellant presented no evidence in the case. By commenting on how little defense counsel had to work with, the State implied that Appellant had a burden to prove his innocence. *See, e.g., Roy v. State,* 2006 OK CR 47, ¶ 44, 152 P.3d 217, 232 (it is improper to argue that the defendant failed to produce evidence). By encouraging the jury to "fight" against any inferences favorable to Appellant, the prosecution attempted to shirk its own burden. The Government has the duty to establish guilt beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 362, 90 S.Ct. 1068, 1071, 25 L.Ed.2d 368 (1970) (citations omitted). The prosecution's remarks devalued the first stage and obscured both the State's burden and Appellant's presumption of innocence.

### D. The State's inflammatory comments during second-stage closing arguments led to an excessive sentence.

The prosecution argued:

When you determine what you are going to do with him, make sure that whatever punishment that you decide keeps him locked up for the rest of his life, because he has had way too many opportunities until now. Send him a message that enough is enough. Because if you look through all these priors and you see how many chances he

11

is given, ladies and gentlemen, this is not catch and release anymore. This is a time for DOC to catch and keep him. Pick a number. Pick whatever number you want. You can pick 1,000, if you want. Send him a message. Make sure you say I am fed up with that. You can't be here with the rest of us. Make sure he never gets out.

(Tr.II 277)

This Court found that an almost identical improper argument provoked the jury to fix an excessive punishment requiring modification in *Gourley v. State,* where the prosecutor urged the jury to send the appellant "a message" by assessing "the maximum possible sentence you can conceive," even as high as "2,000 years." *Gourley v. State,* 1989 OK CR 28, ¶ 9, 777 P.2d 1345, 1349.

While there was no evidence of any victim in the case, Prosecutor Shields nevertheless sought to appeal to sympathy for hypothetical victims:

No one likes to punish anybody. But I want you to think about not just those six priors, I want you to think about this case. And I want you to think about one dose of meth. [] What it does to a human being. What it does to the lives of the people close to that human being. I want you to think about someone who profits from destroying lives and families, and then I want you to multiply that to 204[11], and that's what we caught him on. We caught him on 204 opportunities to ruin lives so that he can make a buck.

(Tr.II 287)

It is improper to request sympathy for victims. *McCarty v. State,* 1988 OK CR 271, ¶ 16, 765 P.2d 1215, 1221 (the State argued that the death penalty was warranted for the love of the appellant's victims and future victims); *Tobler v.*

---

[11]The number 204 represented the potential amount of individual, quarter-gram doses.

*State,* 1984 OK CR 90, ¶ 16, 688 P.2d 350, 354 (a prosecutor's attempt to invoke victim sympathy is reprehensible).

The State concluded its final closing argument:

> On Count 1, Mr. Morgan is right, whatever number you want to. I am asking you life is meant for someone like him. Absolutely. I am asking you not to consider any less than that, but honor those 204 people that didn't have to be destroyed that day [], write 204 years on Count 1, make sure he doesn't get out because he's not stopping...Stop him. You have to stop him because he's not going to figure [it] out on his own. This is hard. It is not supposed to be easy. But when you go back and you are passing around his dossier of his career in crime, do not forget the 204 people that would have been destroyed, but for that broken windshield, and never let him out of prison.

(Tr.II 287-288)

The prosecution's theme of "stopping him" echoed throughout their closing argument (Tr.II 285-286) and improperly alluded to future crimes that Appellant might commit. *Brewer v. State,* 1982 OK CR 128, ¶ 8, 650 P.2d 54, 58. Further, the State's reference to Mr. Holland's "dossier of his career in crime" improperly characterized him as a career criminal. *Gourley,* 1989 OK CR 28, ¶ 9, 777 P.2d at 1349.

### E. The State's unmistakable references to pardon and parole policies led to an excessive sentence.

During the punishment stage, the State admitted a DOC pen pack showing that Appellant had been convicted of six prior felonies and received the following sentences:

- Ottawa County Case CF-2010-348, Ct. 1: 20 years DOC with all but the first 8 years suspended.

13

- Ottawa County Case CF-2010-348, Ct. 2: 20 years DOC with all but the first 8 years suspended.
- Pottawatomie County Case CF-2003-125, Ct. 1: 2 years DOC by private contractor, Oklahoma Court Services Probation.
- Pottawatomie County Case CF-2001-331, Ct. 1: 3 years DOC.
- Pottawatomie County Case CF-2001-268, Ct. 1: 3 years DOC.
- Pottawatomie County Case CF-2001-266, Ct. 1: 1 year DOC.

(State Exh. 4)

The prosecution then argued:

You need to consider the fact that those prior six felony convictions [] carry 49 years of punishment handed down to him and he's still here.

(Tr.II 276)

[Ms. Atteberry] actually said, hey, let's do the minimum [on Count 1], that's still 27 years. Well, you notice that he has already had a couple of 20 year terms back in 2010. He's right there.

(Tr.II 284)

The State should not suggest that a defendant will not serve the full term of imprisonment imposed. *Florez v. State*, 2010 OK CR 21, ¶ 6, 239 P.3d 156, 158. Parties must not encourage jurors to speculate about probation, pardon or parole policies. This Court determines under the totality of the circumstances whether the prosecution made an unmistakable reference to Oklahoma's pardon and parole system, which prejudiced the defendant. *Stewart v. State*, 2016 OK CR 9, ¶ 14, 372 P.3d 508, 511. When the State makes such an unmistakable and prejudicial reference, this Court will modify an appellant's sentence. *See, e.g., Satterlee v. State*, 1976 OK CR 88, ¶ 27, 549 P.2d 104, 111; *Starr v. State*, 1979 OK CR 126, ¶¶ 12-14, 602 P.2d at 1049. Sentence modification is required where

14

the jury is informed of a prior suspended sentence and where the prosecution then calls this fact to the jury's attention during argument. *Hunter v. State,* 2009 OK CR 17, ¶¶ 8-11, 208 P.3d 931, 933-934 (finding plain error and reducing Hunter's sentence from 20 years to 6 years).

Additionally, in response to Appellant's argument that his youth at the time of the previous offenses should be considered, ADA Shields said "the law has a cutoff for when you get freebies [], and that's before you turn 18." (Tr.II 281-282) It is improper for the prosecution to characterize separate sentences as "freebies" and imply that the defendant was not held fully accountable. *Miller v. State,* 2013 OK CR 11, ¶¶ 206-207, 313 P.3d at 996-997.

### F. The prosecution misstated the law and improperly ridiculed defense counsel.

At the second stage, Appellant maintained that each count was separate and that it was permissible for the jury to find him guilty after two or more former convictions on certain counts, but guilty after only one or no prior convictions on other counts. (Tr.II 277-278) This was a correct statement of law. In determining a proper punishment, the jury *may* consider previous convictions proven beyond a reasonable doubt. Instruction No. 10-21, OUJI-CR (2d) (emphasis added); (O.R. 89-96). Each charge merits separate consideration, and a verdict on one count should not affect a verdict on other counts. Instruction No. 10-9.6A, OUJI-CR (2d)[12]. Further, an Oklahoma jury is the sentencer, and due process ensures that

---

[12]The jury was so instructed during the first stage. (O.R. 60)

15

a defendant will be deprived of his liberty only to the extent determined by the jury's discretion. *Hicks v. Oklahoma*, 447 U.S. 343, 345-346, 100 S.Ct. 2227, 2229, 65 L.Ed.2d 175 (1980). *See also*, 22 O.S.2011, § 926.1; *Luna v. State*, 2016 OK CR 27, ¶ 18, 387 P.3d 956, 962.

The State responded to Appellant's argument by telling the jury that they had no discretion in the matter:

> [The jury instruction] requires us to come in and prove he has got prior convictions, and we have, that's what this is. Right? So how asinine is it? How asinine is it for you to hear the fact that, well, if you find that the State has done its job and proven more than two felonies on one crime, I want you to pretend like you don't know that they have done that on a second one. What? You should be offended by that. I am asking you at this point to pretend like they haven't done their job when you are filling out one verdict form to -
>
> Ms. Atteberry: Judge, I am going to object to this.
>
> The Court: Sustained.

(Tr.II 283)

> ADA Shields continued:
>
> No, you cannot. Remember your verdict has to speak the truth, and no, there is no luxury to go back and to sit there and say that I am going to pretend that evidence didn't exist. Your verdict must speak the truth, [] you have to go back there and if you decide that you can believe that pen pack, that those priors are more than two prior convictions, then that top line is the one you are filling out on every verdict form, except for the [] misdemeanor [].

(Tr.II 284)

The State improperly and incorrectly informed the jury that if they found Appellant guilty after two or more convictions on one charge, then they could not render a different verdict on the other felony counts. Prosecutors should not

16

mislead jurors in closing argument, particularly when the misleading statements involve misstatements of law. *Florez*, 2010 OK CR 21, ¶ 6, 239 P.3d at 158. Further, labeling defense counsel's argument as "asinine" and "offensive" amounted to needless ridicule, which this Court has condemned. *Brewer*, 1982 OK CR 128, ¶ 7, 650 P.2d at 58.

The State's improper remarks particularly affected Count 3, Possessing CDS without a Tax Stamp Affixed. The prosecution acknowledged throughout the case that the charge was redundant and even "stupid," (Tr.II 236-237, 256), but justified it to the jury by saying "But do you really care how many times you want to kick a drug dealer down?" (Tr.II 257). The offense, after one or no prior convictions, does not mandate imprisonment. 68 O.S.2011, § 450.8(B); 21 O.S.2011, § 51.1(A)(3)[13]. The jury found Appellant guilty after two or more prior convictions and sentenced him to the corresponding four-year minimum. (Tr.II 290; O.R. 103) Given the State's own comments downplaying the charge, the jury certainly would have fixed a lesser period or no prison term at all, had Shields not incorrectly stated that they were obligated to find guilt after two or more former convictions once they found similarly on a separate count.

**Conclusion.** "The function of the prosecutor under the Federal Constitution is not to tack as many skins of victims as possible to the wall. His function is to vindicate the right of people as expressed in the laws and give those accused of crime a fair trial." *McCarty*, 1988 OK CR 271, ¶ 17, 765 P.2d at 1221, *quoting*

---

[13] The jury was erroneously instructed that the punishment range was 1-10 years after one prior conviction. (O.R. 94)

*Donnelly v. DeChristoforo,* 416 U.S. 637, 648-649, 94 S.Ct. 1868, 1874, 40 L.Ed.2d 431 (1974) (Douglas, J., dissenting). When there is any doubt as to whether or not prosecutorial misconduct affected the trial, the benefit of the doubt should be given to the accused. *Sykes v. State,* 1951 OK CR 154, 95 Okl.Cr. 14, 18, 238 P.2d 384, 388.

While prosecutorial misconduct pervaded Appellant's entire trial, it was especially evident during the punishment stage. As demonstrated by their note to the court about consecutive/concurrent (O.R. 45), the jury was sensitive to the actual amount of time Mr. Holland would serve, but proceeded to fix an aggregate 78-year sentence after hearing the State's inflammatory comments, unmistakable references to pardon and parole, and misstatements of law.

The cumulative effect of improper conduct rendered Appellant's trial unfair. Mr. Holland requests that his conviction be reversed and remanded for a new trial. Appellant alternatively requests favorable modification of his sentence or a new sentencing proceeding pursuant to 22 O.S.2011, § 929.

18

## PROPOSITION II

**THE COURT PLAINLY ERRED BY ALLOWING OFFICER TESTIMONY ABOUT APPELLANT'S UNWARNED, INCRIMINATING CUSTODIAL STATEMENT. THE STATEMENT WAS KEY TO MR. HOLLAND'S COUNT 2 CONVICTION.**

**Standard or Review.** In the absence of a timely objection at trial, this Court will review for plain error. *Hogan v. State*, 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923. To be entitled to relief, an appellant must establish 1) the existence of an actual error (i.e., deviation from a legal rule), 2) that the error was plain and obvious, and 3) that the error adversely impacted his substantial rights by affecting the proceedings' outcome. *Id.*

**Argument and Authorities.** Appellant was convicted of Count 2, Acquiring Proceeds from Drug Activity. Officer Montgomery testified that he transported Appellant to jail, and during booking, asked Appellant about his employment. Appellant indicated that he had no job. Montgomery testified that this was significant in identifying the $1,190 in cash as narcotics proceeds. (Tr.I 188-192) The record does not indicate that Appellant was ever advised of his rights. At preliminary hearing, Montgomery definitively stated that he did not read Appellant his rights. (PH Tr. 39)

A criminal defendant has a right to avoid self-incrimination and a right to counsel. U.S. Const. Amend. V, VI, XIV; Okla. Const. Art. II, §§ 7, 20, 21. The prosecution must demonstrate that the defendant was properly warned before using his statements that stemmed from custodial interrogation. *Miranda v.*

19

*Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). The waiver of a constitutional right cannot be presumed from a silent record. *Carnley v. Cochran,* 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962). "Generally, statements made by a suspect during custodial interrogation are inadmissible unless the suspect is first informed of his *Miranda* rights and then voluntarily waives his rights against self-incrimination and to counsel." *Jackson v. State,* 2006 OK CR 45, ¶ 19, 146 P.3d 1149, 1157. "The term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police . . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Kreijanovsky v. State,* 1985 OK CR 120, ¶ 17, 706 P.2d 541, 545, *quoting Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).

In a plurality opinion, the United States Supreme Court recognized a "booking exception" to custodial interrogation for routine biographical data. *Pennsylvania v. Muniz,* 496 U.S. 582, 601-602, 110 S.Ct. 2638, 2650, 110 L.Ed.2d 528 (1990). However, the "booking exception" does not extend to questions asked during booking that are designed to elicit incriminatory admissions. *Id.,* n. 14. The "booking exception" requires a reviewing court to carefully scrutinize the facts, as even a relatively innocuous series of questions, in light of the factual circumstances, can be reasonably likely to elicit an incriminating response. *United*

*States v. Pacheco-Lopez,* 531 F.3d 420, 423-424 (6th Cir. 2008). "[W]here questions regarding normally routine biographical information are designed to elicit incriminating information, the questioning constitutes interrogation subject to the strictures of *Miranda.*" *United States v. Parra,* 2 F.3d 1058, 1068 (10th Cir. 1993).

Under the instant circumstances, Officer Montgomery asking Appellant about his job - after he discovered 51 grams of methamphetamine and $1,190 of cash in his pockets - constituted interrogation which required a *Miranda* warning. Montgomery testified at preliminary hearing that a suspect's lack of employment is a primary consideration that he looks for in associating cash with drugs. (PH Tr. 26) The officer clearly knew that Appellant's response could be incriminating.

When a constitutional violation is established, reversal is required unless the State can show the error was harmless beyond a reasonable doubt. *Simpson v. State,* 1994 OK CR 40, ¶ 34, 876 P.2d 690, 701, *citing Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The State cannot meet this burden, as Officer Montgomery's testimony about Appellant's statement was integral to the Count 2 conviction. Currency does not become proceeds of a drug crime until a narcotics sale has been completed. *United States v. Garza,* 118 F.3d 278, 284 (5th Cir. 1997). With no proof of a prior drug transaction, the State relied entirely on circumstantial evidence, in which Appellant's unemployment figured prominently. During first-stage closing arguments, the State repeatedly

21

emphasized that Appellant had no job. (Tr.II 236, 253, 256) $1,190 was not a prohibitive amount, and had Appellant's statement indicating unemployment been properly excluded, the jury would have had a reasonable doubt about the source of the funds.

**Conclusion.** "The rights protected by *Miranda* and the potential importance of information garnered through this kind of questioning are both too precious to be jeopardized by a failure to do what is so easily done: inform the person being interrogated of their rights under *Miranda*." *Dunkle v. State*, 2006 OK CR 29, ¶ 23, 139 P.3d 228, 237. Allowing testimony about Appellant's unwarned statement of being jobless constituted plain error. Mr. Holland's substantial rights were affected, as the State relied heavily on this evidence to secure the Drug Proceeds conviction, for which Appellant was sentenced to 12 years. Appellant requests that this Court reverse his Count 2 conviction.

## PROPOSITION III

**TRIAL COUNSEL FAILED TO SUBJECT THE STATE'S CASE TO MEANINGFUL ADVERSARIAL TESTING. APPELLANT'S CONSTITUTIONAL RIGHT TO COUNSEL WAS COMPROMISED TO THE EXTENT THAT PREJUDICE SHOULD BE PRESUMED.**

**Standard of Review.** Claims of ineffective assistance of counsel are mixed questions of law and fact which are subject to *de novo* review. *Davis v. State,* 2005 OK CR 21, ¶ 7, 123 P.3d 243, 246.

**Argument and Authorities.** An accused has the right to "the Assistance of Counsel for his defense." U.S. Const. amend. VI. *See also,* U.S. Const. amend. XIV; Okla. Const. art. II, § 20. "If no actual 'Assistance' 'for' the accused's 'defense' is provided, then the constitutional guarantee has been violated." *United States v. Cronic,* 466 U.S. 648, 654, 104 S.Ct. 2039, 2044, 80 L.Ed.2d 657 (1984). The Sixth Amendment requires meaningful adversarial testing of the prosecution's case. *Id,* 466 U.S. at 656, 104 S.Ct. at 2045.

Ineffective assistance claims are often evaluated under the familiar two-prong test of *Strickland,* which requires demonstration of prejudice. *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984). However, no specific showing of prejudice is required where there is such a breakdown in the adversarial process that the conviction is presumptively unreliable. *Cronic,* 466 U.S. at 662, 104 S.Ct. at 2049. Prejudice is presumed "if

counsel entirely fails to subject the prosecution's case to meaningful adversarial testing..." *Id.,* 466 U.S. at 659, 104 S.Ct. at 2047.

Appellant's trial counsel, Beverly Atteberry, filed no motions in the case. Counsel waived opening statement at both stages (Tr.I 214; Tr.II 267), and presented no witnesses or evidence. Ms. Atteberry interposed few objections and conducted only token cross examination of three of the State's four witnesses. (Tr.I 139-142, 152-153, 192-197) From cross examination and the brief closing argument, it is apparent that Counsel's entire defense at the first stage was premised on the absurd notion that Appellant possessed the 51 grams of methamphetamine for personal use. (Tr.I 140-141, 152, 192-193, 196-197; Tr.II 242-245) The State's case was completely unchallenged.

Ms. Atteberry's conduct after the trial explains her performance during the proceedings. Appellant references Exhibit A of his **Motion to Supplement**, an affidavit from a neutral attorney who described the following:

> I was present in the Tulsa County courthouse on June 7, 2017, on the final day of Jesse Holland's trial in Case Number CF-2016-5318.
>
> After the jury fixed punishment in Mr. Holland's case, I observed his attorney, Beverly Atteberry, in the hallway celebrating with the prosecutors and in the presence of legal interns.
>
> Ms. Atteberry appeared pleased with the results of the case. She patted the Assistant District Attorney on the back and made disparaging commetns about Mr. Holland and his family. She and the prosecutors laughed at Mr. Holland and his family.

Ms. Atteberry told the prosecutors that Mr. Holland was an idiot for going to trial and deserved to die in prison, at this point she laughed. She said that Mr. Holland would be well liked in prison, that his sex life would improve. She also said that Mr. Holland was an ugly "son of a bitch" and a poor excuse for a human being. Ms. Atteberry said that Mr. Holland's wife was stupid for having babies with him and she didn't know how Mr. Holland's wife could come to court and try to help him. That she wouldn't help him if she was his wife, he was disgusting. She said what kind of life is a child going to have with "that" for a father. She stated that she had just made the worst closing argument of her legal career and laughed.

(3.11 Mot. Exhibit A)

"[A]n attorney who adopts and acts upon a belief that his client should be convicted 'fail[s] to function in any meaningful sense as the Government's adversary.'" *Osborn v. Shillinger*, 861 F.2d 612, 625 (10th Cir. 1988); *quoting Cronic*, 466 U.S. at 666, 104 S.Ct. at 2051. Counsel's post-trial conduct is relevant to a *Cronic* claim. *Osborn*, 861 F.2d at 628-629 (the attorney abandoned his duty of loyalty to the petitioner as evidenced by, among other things, publicly chastising Osborn and subsequently writing the district judge a letter indicating that the client deserved his death sentence). In *Osborn*, the Tenth Circuit affirmed post-conviction relief based on denial of Sixth Amendment assistance, and found that since trial counsel had "turned against Osborn," the proceeding "was not adversarial, and therefore was unreliable," *Id.*, 861 F.2d at 629.

Ms. Atteberry's trial performance and shocking statements thereafter reveal not only disloyalty and a belief that Appellant should be convicted, but also actual animosity towards Mr. Holland and his family. As her interests were aligned with

25

the prosecution, Ms. Atteberry could not and did not effectively advocate for Appellant. The State presented its case unchecked, and given the breakdown in the adversarial process, Appellant's convictions are presumptively unreliable.

**Conclusion.** "[T]he right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *Cronic,* 466 U.S. at 658, 104 S.Ct. at 2046. Appellant respectfully requests that his convictions be reversed and the matter remanded to the district court for a new trial where the State's case is properly tested.

## PROPOSITION IV

### ALTERNATIVELY, TRIAL COUNSEL'S UNREASONABLE ERRORS PREJUDICED APPELLANT AND PRECLUDED EFFECTIVE ASSISTANCE.

**Standard of Review.** Claims of ineffective assistance of counsel are mixed questions of law and fact which are subject to *de novo* review. *Davis v. State,* 2005 OK CR 21, ¶ 7, 123 P.3d 243, 246. To gain relief on an ineffective assistance of counsel claim, an appellant typically must show that: 1) counsel's representation fell below an objective standard of reasonableness, and 2) counsel's unprofessional errors probably affected the proceeding's results. *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984); *Jennings v. State,* 1987 OK CR 219, ¶ 8, 744 P.2d 212, 213-215.

**Argument and Authorities.** A Tulsa Police Department forensic chemist testified that the methamphetamine he analyzed in this case weighed 51.00 grams. (Tr.I 206-207; State Exh. 1) No lab report was admitted. The chemist claimed that their scales are accurate within one hundredth of a gram. (Tr.I 205) Officers Anderson (Tr.I 132-133) and Montgomery (Tr.I 184-187) testified as to the chain of custody. Officer Montgomery stated that he was 100% certain that State's Exhibit 1 was the same bag of narcotics recovered from Appellant. (Tr.I 187)

After Appellant was arrested, Anderson took the drugs to the Gilcrease Division station to weigh on the electronic scales. (Tr.I 134-135) In the filed arrest affidavit, Officer Anderson indicated that the substance weighed 65.61 grams.

(O.R. 23) Moreover, as described in Appellant's **Motion to Supplement**, Tulsa Police Department Property Receipt No. BL4631[14], signed by officers Anderson and Montgomery, likewise indicated a "drug preweight" of 65.6 grams, but also noted a gross substance weight 71.4 grams. (3.11 Mot. Exhibit B) At no point did Ms. Atteberry challenge this evidence, point out the substantial discrepancies to the jury, or ask the State witnesses for an explanation.

The State must show that proffered physical evidence is in substantially the same condition as when it was seized. *Brown v. State,* 1998 OK CR 77, ¶ 58, 989 P.2d 913, 929. Any weakness in the chain of custody goes to the weight of the evidence. *Frederick v. State,* 2001 OK CR 34, ¶ 105, 37 P.3d 908, 937. The Government must establish guilt beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 362, 90 S.Ct. 1068, 1071, 25 L.Ed.2d 368 (1970) (citations omitted).

The arrest affidavit indicating 65.61 grams was on file with the court. (O.R. 22-23) The property receipt, if not included with the State's discovery materials (O.R. 37), was surely readily accessible. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066. Competent handling of a particular matter requires factual inquiry and analysis, as well as adequate preparation. Rule 1.1, *Oklahoma Rules of Professional Conduct,* tit. 5, ch. 1, app. 3-A (2011), Comment 5. Counsel was objectively

---

[14]Officer Anderson provided this same receipt number during testimony. (Tr.I 133)

unreasonable for either failing to discover the different weights or being aware but neglecting to raise the issue. "Defense counsel must present conflicting evidence to the court, not judge the issue for himself." *Osborn v. Shillinger*, 861 F.2d 612, 628 (10th Cir. 1988).

Counsel's deficient performance prejudiced Appellant, as the subject discrepancies were not fractions of a gram. The 21.4 gram variance was itself a trafficking level amount. Had the jury been presented with the alarming inconsistencies, there certainly would have had been a reasonable doubt whether State's Exhibit 1 was actually recovered from Appellant on September 29, 2016.

Additionally, as set forth in Proposition II, Mr. Holland's unwarned statement about being jobless was improperly admitted at trial. U.S. Const. Amend. V, VI, XIV; Okla. Const. Art. II, §§ 7, 20, 21; *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966); *United States v. Parra*, 2 F.3d 1058, 1068 (10th Cir. 1993). Officer Montgomery testified that this was significant in identifying the cash as drug proceeds (Tr.I 191-192), and the State emphasized Appellant's unemployment during closing arguments (Tr.II 236, 253, 256). At no point did trial counsel seek to exclude or object to this testimony. Failure to object to inadmissible evidence constitutes deficient performance. *Aycox v. State*, 1985 OK CR 83, ¶¶ 5-6, 702 P.2d 1057, 1058. $1,190 was not a prohibitive amount, and if not for Ms. Atteberry's unprofessional error allowing

29

testimony about the unwarned, incriminating statement, it is unlikely that Appellant would have been convicted of Count 2, Acquiring Drug Proceeds, and sentenced to twelve years imprisonment.

Counsel also failed to object to several unseemly prosecutorial statements discussed in Proposition I, which Appellant incorporates by reference. Ms. Atteberry did not object to Prosecutor Shields' repeated improper references to his own military career. (Tr.I 49, 63, 68, 72) *United States v. Warshak,* 631 F.3d 266, 303-304 (6th Cir. 2010). Counsel did not object to the State's inappropriate arguments trivializing the guilt stage[15] and attempting to shift the burden of proof[16]. *Roy v. State,* 2006 OK CR 47, ¶ 44, 152 P.3d 217, 232. Counsel's failure to object to these improper comments during voir dire and the first stage undermines confidence in the guilty verdicts.

Ms. Atteberry's acquiescence to prosecutorial misconduct continued during the second stage. Counsel did not object to the State's improper arguments to "send him a message...pick 1,000 [years], if you want" (Tr.II 277), *Gourley v. State,* 1989 OK CR 28, ¶ 9, 777 P.2d 1345, 134; appealing for victim sympathy (Tr.II 287), *Tobler v. State,* 1984 OK CR 90, ¶ 16, 688 P.2d 350, 354; and to "stop" this

---

[15]"This is not difficult. Punishment is not before you at this time. You don't have to go back there and say, gosh, what is this worth? And really that is why this case is being tried. This isn't about did he do it, it is about what it is worth." (Tr.II 258)

[16]"[Ms. Atteberry] doesn't have much to work with. She's going to do her job...but that doesn't mean she has much to work with." (Tr.II 252)

career criminal (Tr.II 287-288), *Brewer v. State,* 1982 OK CR 128, ¶ 8, 650 P.2d 54, 58; *Gourley,* 1989 OK CR 28, ¶ 9, 777 P.2d at 1349. While a prosecutor should not call attention to a former suspended sentence, *Hunter v. State,* 2009 OK CR 17, ¶¶ 8-11, 208 P.3d 931, 933-934, trial counsel neither sought to redact the portions of State Exhibit 4 indicating Appellant's prior suspended sentences in Ottawa County Case CF-2010-348 and Pottawatomie County Case CF-2003-125, nor objected to the prosecution's unmistakable references thereto (Tr.II 276, 284). Finally, regarding the State's misstatement of law - that a finding of guilt after two or more prior convictions was required on all counts if the jury found similarly on any count - Ms. Atteberry correctly objected initially (Tr.II 283), but interposed no objection to Prosecutor Shields' identical argument immediately thereafter (Tr.II 284). Failure to object to a prosecution's improper argument constitutes ineffective assistance. *Miller v. State,* 2013 OK CR 11, ¶ 215, 313 P.3d 934, 998-999. There is little doubt that the State's inappropriate second-stage arguments influenced the jury. Had trial counsel objected to these comments, there is a reasonable probability that Appellant would not have received an aggregate 78-year sentence.

**Conclusion.** "[I]f certain omissions cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness, we would find the quality of representation sufficiently deficient..." *Eze v. Senkowski,* 321 F.3d 110, 112 (2nd Cir. 2003)

31

Counsel's errors denied Mr. Holland's constitutional right to effective assistance of counsel. U.S. Const. amends. VI, XIV; Okla. Const. art. II, §, 20. Appellant respectfully requests that his convictions be reversed and the matter remanded to the district court for a new trial or that his sentence be favorably modified.

## PROPOSITION V

**THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ORDERED APPELLANT'S SENTENCES TO BE SERVED CONSECUTIVELY.**

**Standard of Review.** This Court reviews a trial court's decision to run sentences consecutively for an abuse of discretion. *Neloms v. State,* 2012 OK CR 7, ¶ 35, 274 P.3d 161, 170.

**Argument and Authorities.** The court ordered Appellant's misdemeanor sentence to run concurrent to Count 4, but imposed consecutive service of the other terms totaling 77 years. (Sent. Tr. 5-6; O.R. 108-127) Count 2 (Proceeds) and Count 3 (Tax Stamp) were clearly transactional with and/or reliant upon Count 1 (Trafficking). The Count 4 False Personation charge stemmed from providing a false name to the police, but the officers discovered Appellant's real identity within minutes. (Tr.I 135) During deliberations, the jury inquired if the sentences would be served concurrently. (O.R. 45)

Modification from consecutive to concurrent is warranted where the crimes occurred near the same time and place, where not all offenses were serious, and where the jury suggests a preference of concurrent service. *Taylor v. State,* 1971 OK CR 457, ¶ 4, 490 P.2d 1404, 1405. The court abused its discretion by imposing consecutive sentences.

**Conclusion.** Mr. Holland respectfully requests this Court to modify his sentence so that his prison terms be served concurrently.

## PROPOSITION VI

**THE COURT LACKED JURISDICTION TO IMPOSE THE COUNT 2-4 SENTENCES BASED ON THE CONVICTIONS REFLECTED IN THE JUDGMENT AND SENTENCE DOCUMENTS.**

**Standard of Review.** Matters implicating the district court's jurisdiction are never waived and can be raised at any time. *Smith v. State,* 1977 OK CR 317, ¶ 13, 572 P.2d 262, 265-266. Jurisdictional concerns are questions of law, *Buis v. State,* 1990 OK CR 28, ¶ 2, 792 P.2d 427, 428, which require *de novo* review, *King v. State,* 2008 OK CR 13, ¶ 4, 182 P.3d 842, 843.

**Argument and Authorities.** The Count 2 Judgment and Sentence states "The defendant has been found GUILTY by jury to the crime of ACQUIRE PROCEEDS FROM DRUG ACTIVITY, in violation of 63 O.S. 2-503...and is sentenced to TWELVE (12) YEARS..." (O.R. 112) § 2-503 pertains only to property forfeitures under the Uniform Dangerous Substances Act and does not describe a particular offense. The correct section related to drug proceeds is § 2-503.1. Further, absent enhancement with prior convictions, the offense punishment range is only 2-10 years. § 2-503.1(E). The Count 2 Judgment and Sentence indicates only that Appellant was "guilty," not that he was guilty after two or more former felony convictions[17]. No enhancement provision is cited.

---

[17]The same is also true for the other three felony Judgment and Sentences . (O.R. 108, 116, ¶20).

34

The Count 3 Judgment and Sentence states "The defendant has been found GUILTY by jury to the crime of POSSESSION OF CONTROLLED DRUG W/O TAX STAMP AFFIXED, in violation of 68 O.S. 450.1...and is sentenced to FOUR (4) YEARS..." (O.R. 116). § 450.1 only provides definitions relevant to CDS taxes. It neither proscribes conduct not delineates punishment, as both are properly set forth in § 450.8.

The Count 4 Judgment and Sentence states "The defendant has been found GUILTY by jury to the crime of FALSELY PERSONATE ANOTHER TO CREATE LIABILITY, in violation of 21 O.S. 1531.4...and is sentenced to TEN (10) YEARS..." (O.R. 120) Title 21 does not contain a section 1531.4. False Personation of Another is described in § 1531, and subsection four therein relates to other acts of personation to accrue a benefit.

The incorrect statutory provisions cited in the Count 2-4 Judgment and Sentences were identical to those charged in the Information. (O.R. 14-15, 25-26, 31-32) Appellant recognizes that the jury was correctly instructed on the subject offenses and found him guilty thereof after two or more previous convictions. The Judgement and Sentence document is critical, however, as it defines to the executive branch the judgment and the sentence that must be executed. 22 O.S.2011, §§ 978, 980. The Judgment and Sentence must "contain the statutory reference to the felony crime the defendant was convicted of..." 22 O.S.Supp.2016,

35

§ 977(A)(4). Procedural compliance is required before the awesome power of the government can be brought to bear on one of its citizens. *Buis*, 1990 OK CR 28, ¶ 10, 792 P.2d at 431.

· A district court has no jurisdiction to impose a punishment beyond the statutory maximum. *Ex parte Custer*, 1948 OK CR 126, 88 Okl.Cr. 154, 157, 200 P.2d 781, 783. The statutes cited in the Count 2-4 Judgment and Sentences are either incorrect, do not exist, or provide less-severe punishments than those to which Appellant was sentenced. Accordingly, if the Judgment and Sentences are not amended, Appellant's Count 2-4 sentences require modification. *Id.; Robertson v. State*, 1995 OK CR 6, ¶ 8, 888 P.2d 1023, 1025; *Scott v. State*, 1991 OK CR 31, ¶ 17, 808 P.2d 73, 78.

**Conclusion.** If the Judgment and Sentences are not corrected by an order *nunc pro tunc* (*see, e.g., Neloms v. State*, 2012 OK CR 7, ¶¶ 41-45, 274 P.3d 161, 171-172), then Appellant's sentences in Counts 2-4 must be modified.

## PROPOSITION VII

## CUMULATIVE ERRORS DEPRIVED APPELLANT OF A FAIR PROCEEDING AND A RELIABLE OUTCOME.

Should this Court find that none of the above propositions, standing alone, warrant relief, Appellant requests that this Court consider the cumulative effect of these errors. Even when trial errors, viewed separately, do not amount to reversible error, their cumulative effect may nevertheless deprive an accused of a fair trial. *See, e.g., Peninger v. State,* 1991 OK CR 60, ¶ 23, 811 P.2d 609, 613; *Chandler v. State,* 1977 OK CR 324, ¶ 13, 572 P.2d 285, 289-290. The proper standard of review for a cumulative error claim must aggregate all errors which were found to be harmless or denied for insufficient prejudice and analyze whether their cumulative effect on the outcome is such that, collectively, they can no longer be determined harmless. *Cargle v. Mullin,* 317 F.3d 1196, 1206-1207 (10th Cir. 2003).

The errors in this case, taken together, deprived Appellant of a fair trial. U.S. Const. amends. V and XIV; Okla. Const. art. II, § 20. Appellant respectfully requests that this Court reverse his convictions and remand the case for a new trial. In the alternative, Mr. Holland requests that this Court favorably modify his sentences as allowed by law.

37

### CONCLUSION

For the reasons and authorities cited herein, Appellant respectfully requests that the Judgment and Sentence of the District Court be reversed and the case be remanded for a new trial. In the alternative, Appellant asks that the sentence be favorably modified.

Respectfully submitted,

JESSE WILLIAM HOLLAND

By: _Chad Johnson_

Chad Johnson
Appellate Defense Counsel
Oklahoma Bar No. 32432
P.O. Box 926
Norman, Oklahoma 73070
(405) 801-2727

ATTORNEY FOR APPELLANT

## CERTIFICATE OF SERVICE

This is to certify that on January 5, 2018, a true and correct copy of the foregoing Brief of Appellant was served upon the Attorney General by leaving a copy with the Clerk of the Court of Criminal Appeals for submission to the Attorney General, and a copy was caused to be mailed, via United States Postal Service, postage pre-paid, to Appellant at the address set out below, on the date of filing or the following business day.

Jesse William Holland #404882
Lawton Correctional Center
8607 SE Flower Mound Rd.
Lawton, OK 73501

*Chad Johnson*

Chad Johnson

CLIENT'S COPY

FILED
IN COURT OF CRIMINAL APPEALS
STATE OF OKLAHOMA

JAN - 5 2018

No. F-2017-638

# IN THE COURT OF CRIMINAL APPEALS FOR THE STATE OF OKLAHOMA

JESSE WILLIAM HOLLAND,

        Appellant,

v.

THE STATE OF OKLAHOMA,

        Appellee.

)
)
)
)
)
)
)
)
)
)

Appeal from the District
Court of Tulsa County
Case No. CF-2016-5318

## BRIEF OF APPELLANT

Chad  Johnson
Appellate Defense Counsel
Oklahoma Bar No. 32432

P.O. Box 926
Norman, OK 73070
(405) 801-2727

ATTORNEY FOR APPELLANT

404882/LCF

CLIENT'S COPY

FILED
IN COURT OF CRIMINAL APPEALS
STATE OF OKLAHOMA

APR - 3 2018.

No. F-2017-638

# IN THE COURT OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA

JESSE WILLIAM HOLLAND,

Appellant,

-vs-

THE STATE OF OKLAHOMA,

Appellee.

## BRIEF OF APPELLEE
### FROM TULSA COUNTY DISTRICT COURT
### CASE NO. CF-2016-5318

MIKE HUNTER
ATTORNEY GENERAL OF OKLAHOMA

JAY SCHNIEDERJAN, OBA # 11986
ASSISTANT ATTORNEY GENERAL

313 NE 21st Street
Oklahoma City, Oklahoma 73105
(405) 521-3921
(405) 522-4534 (FAX)

ATTORNEYS FOR APPELLEE

APRIL 3, 2018

RECEIVED

APR 04 2018

FROM: COURT OF
CRIMINAL APPEALS

# TABLE OF CONTENTS

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **PAGE** . . 1

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

PROPOSITION I

      NO PROSECUTORIAL ERROR OCCURRED. . . . . . . . . . . . . . 5

PROPOSITION II

      NO FIFTH AMENDMENT VIOLATION OCCURRED. . . . . . . . 18

PROPOSITION III

      TRIAL COUNSEL WAS NOT INEFFECTIVE. . . . . . . . . . . . . 21

PROPOSITION IV

      THE TRIAL COURT PROPERLY ORDERED THE
      DEFENDANT'S SENTENCES TO RUN
      CONSECUTIVELY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

PROPOSITION V

      THE DEFENDANT SEEKS AN ORDER *NUNC PRO TUNC*
      IN THIS PROPOSITION; HIS CLAIM IS NOT
      PROPERLY BEFORE THIS COURT. . . . . . . . . . . . . . . . . . . 34

PROPOSITION VI

      THERE WAS NO ACCUMULATION OF ERROR. . . . . . . . . . 36

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

<u>**TABLE OF AUTHORITIES**</u>

<u>**CASES**</u>

*Ashton v. State,*
    2017 OK CR 15, 400 P.3d 887 ............................................ 32

*Banks v. State,*
    2002 OK CR 9, 43 P.3d 390 ............................................ 10

*Battenfield v. State,*
    1998 OK CR 8, 953 P.2d 1123 ............................................ 24, 31

*Bell v. Cone,*
    535 U.S. 685, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) ....... 26, 28

*Bosse v. State,*
    2017 OK CR 10, 400 P.3d 834 ............................................ 10, 11

*Chapman v. California,*
    386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) .... 14, 15, 17, 21

*Cheatham v. State,*
    1995 OK CR 32, 900 P.2d 414 ............................................ 18

*Cuesta- Rodriguez v. State,*
    2010 OK CR 23, 241 P.3d 214 ............................................ 6, 7, 17

*Dodd v. State,*
    2004 OK CR 31, 100 P.3d 1017 ............................................ 16

*Donnelly v. DeChristoforo,*
    416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974) ............. 6, 17

*Eizember v. State,*
    2007 OK CR 29, 164 P.3d 208 ............................................ 36

*Frederick v. State,*
    2001 OK CR 34, 37 P.3d 908 ............................................ 7, 24, 31

*Frederick v. State,*
    2017 OK CR 12, 400 P.3d 786 ............................................ 7

ii

*Fulgham v. State,*
2016 OK CR 30, 400 P.3d 775 .......................................................... 29, 31

*Garrison v. State,*
2004 OK CR 35, 103 P.3d 590 .......................................................... 13

*Gilbert v. State,*
1997 OK CR 71, 951 P.2d 98 .......................................................... 19, 20, 21

*Grimes v. State,*
2011 OK CR 16, 251 P.3d 749 .......................................................... 34, 35

*Hammon v. State,*
2000 OK CR 7, 999 P.2d 1082 .......................................................... 36

*Hanson v. State,*
2003 OK CR 12, 72 P.3d 40 .......................................................... 7

*Harrington v. Richter,*
562 U.S. 86, 131 S. Ct. 770,
178 L. Ed. 2d 624 (2011) .......................................................... 23, 24, 29, 31

*Hogan v. State,*
2006 OK CR 19, 139 P.3d 907 .......................................................... 6, 7, 8, 19, 21

*Howell v. State,*
2006 OK CR 28, 138 P.3d 549 .......................................................... 16

*Hunter v. State,*
2009 OK CR 17, 208 P.3d 931 .......................................................... 14

*James v. State,*
2007 OK CR 1, 152 P.3d 255 .......................................................... 14

*Jones v. State,*
1988 OK CR 267, 764 P.2d 914 .......................................................... 17

*Kamees v. State,*
1991 OK CR 91, 815 P.2d 1204 .......................................................... 33, 34

*Lockett v. Trammell,*
711 F.3d 1218 (10th Cir. 2013) .......................................................... 26

iii

*Malone v. State,*
    2013 OK CR 1, 293 P.3d 198 .................................................. 24

*Massingale v. State,*
    1986 OK CR 6, 713 P.2d 15 ............................................. 14, 15

*Mathis v. State,*
    2012 OK CR 1, 271 P.3d 67 .................................................. 12

*Miller v. State,*
    2013 OK CR 11, 313 P.3d 934 ................................. 25, 30, 31

*Miranda v. Arizona,*
    384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966) .......... Passim

*Mitchell v. State,*
    2010 OK CR 14, 235 P.3d 640 ................................... 6, 17

*Myers v. State,*
    2000 OK CR 25, 17 P.3d 1021 ............................... 14, 17, 21

*Osborn v. Shillinger,*
    861 F.2d 612 (10th Cir. 1988) ........................................ 28

*Pavatt v. State,*
    2007 OK CR 19, 159 P.3d 272 ........................................ 7

*Pennsylvania v. Muniz,*
    496 U.S. 582, 110 S. Ct. 2638, 110 L. Ed. 2d 528 (1990) ....... 19, 21

*Pullen v. State,*
    2016 OK CR 18, 387 P.3d 922 ................................... 12

*Riley v. State,*
    1997 OK CR 51, 947 P.2d 530 ................................. 33, 34

*Ryder v. State,*
    2004 OK CR 2, 83 P.3d 856 ..................................... 22

*Strickland v. Washington,*
    466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) ......... Passim

*Taylor v. State,*
    2011 OK CR 8, 248 P.3d 362 ................................................... 6, 13

*United States v. Cronic,*
    466 U.S. 648, 104 S. Ct. 2039,
    80 L. Ed. 2d 657 (1984) ............................................. 25, 26, 27, 28

*Williams v. State,*
    2001 OK CR 9, 22 P.3d 702 ................................................... 26

*Williams v. State,*
    2008 OK CR 19, 188 P.3d 208 ................................................. 10

*Williams v. Trammell,*
    782 F.3d 1184 (10ᵗʰ Cir. 2015) .............................................. 26

*Woods v. State,*
    1984 OK CR 24, 674 P.2d 1150 ............................................. 17

*Young v. State,*
    2000 OK CR 17, 12 P.3d 20 ................................................. 7, 8

## STATUTES

12 O.S.2011, § 2801 ...............................................................

21 O.S.Supp.2015, § 540 ....................................................... 27

21 O.S.2011, § 1531 ............................................................... 1

22 O.S.2011, § 976 ................................................................ 1

63 O.S.Supp.2015, § 2-415 ................................................ 33, 34

63 O.S.2011, § 2-503.1 ........................................................... 1

68 O.S.2011, § 450.8 .............................................................. 1
    ........................................................................................ 1

v

## RULES

Rule 3.11(A) and (B), *Rules of the Oklahoma Court of Criminal Appeals,*
Title 22, Ch. 18 App. (2017) .......................................................... 22

Rule 3.11(B)(3)(b), *Rules of the Oklahoma Court of Criminal Appeals,*
Title 22, Ch. 18 App. (2017) .......................................................... 24

Rule 3.5(A)(5), *Rules of the Oklahoma Court of Criminal Appeals,*
Title 22, Ch. 18 App. (2017) .......................................................... 32

Rule 3.5(C)(3), *Rules of the Oklahoma Court of Criminal Appeals,*
Title 22, Ch. 18 App. (2017) .......................................................... 35

IN THE COURT OF CRIMINAL APPEALS OR THE STATE OF OKLAHOMA

JESSE WILLIAM HOLLAND, )
)
Appellant, )
)
v. )
) Case No. F-2017-638
THE STATE OF OKLAHOMA, )
)
Appellee. )

## BRIEF OF APPELLEE

## STATEMENT OF THE CASE

JESSE WILLIAM HOLLAND, hereinafter referred to as the defendant, was tried by jury and convicted in Case No. CF-2016-5318, in the District Court of Tulsa County, before the Honorable William D. LaFortune, District Judge, on the charges of: Count 1, Trafficking in Illegal Drugs (Methamphetamine), in violation of 63 O.S.Supp.2015, § 2-415; Count 2, Acquiring Proceeds from Drug Activity, in violation of 63 O.S.2011, § 2-503.1; Count 3, Possessing Controlled Drugs Without a Tax Stamp, in violation of 68 O.S.2011, § 450.8; Count 4, Falsely Personating Another to Create Liability, in violation of 21 O.S.2011, § 1531; and Count 5, Obstructing an Officer, a misdemeanor, in violation of 21 O.S.Supp.2015, § 540, all After Former Conviction of Two or More Felonies. The defendant was represented by counsel. The trial court sentenced the defendant in accordance with the jury's recommendation as follows: Count 1, fifty-one years imprisonment and payment of a $25,000.00. fine; Count 2, twelve years imprisonment; Count 3, four years imprisonment and payment of a $1,000.00

fine; Count 4, ten years imprisonment and payment of a $1,000.00 fine; and Count 5, one year imprisonment. The trial court ordered the sentences in Counts 1-4 to run consecutively to one another and ordered the sentence in Count 5 to run concurrently with the sentence in Count 4. From this judgment and sentence the defendant has perfected this appeal.

## STATEMENT OF FACTS

Officer Wesley Anderson, Tulsa Police Department, testified that on September 29, 2016, around 5:13 p.m., he was patrolling in the area of Admiral and North Harvard (Tr. 123).[1] He observed a red Mercury Cougar with a large crack in the windshield traveling southbound on Harvard. The crack obscured the driver's view. The officer saw the car pull into the QuikTrip on the corner of Admiral and Harvard, so Officer Anderson pulled into the parking lot behind the Cougar (Tr. 123-24). When Officer Anderson ran the car tag, it came back to a Ford and not to a Mercury. The officer exited his patrol car and approached the female driver. She had gotten out of the Cougar immediately before Officer Anderson left his car (Tr. 125). He noticed a male sitting in the passenger seat. Officer Anderson identified the defendant as the passenger (Tr. 126).

As the officer spoke with the driver, he noticed the defendant was physically shaking and he kept pinching at his right front pocket as if he was moving something inside the pocket. The defendant reached under the car seat and

---

[1] "Tr." refers to trial transcript. "O.R." refers to original record.

Officer Anderson told him not to do that (Tr. 126-27). The space where the car radio would normally be had wires coming out and the ignition appeared to have been tampered with (Tr. 127). Officer Anderson asked the defendant for his identification, but the defendant had none. He told the officer his name was Jeremy Holland and gave him a date of birth. Officer Anderson told the defendant to keep still and stop fidgeting (Tr. 127-28). Officer Anderson determined that both the driver and the defendant gave him false identification information (Tr. 129).

Other officers arrived at the scene. The defendant and the driver exited the Cougar. The other officers attempted to handcuff the defendant but he was argumentative with them and kept twisting away (Tr. 129-30). Officer Dean Montgomery had to put the defendant on the ground in order to handcuff him. Officer Anderson observed Officer Montgomery search the defendant. In the defendant's left front pocket, Officer Montgomery found a large amount of cash and then in his right front pocket, the officer found a plastic bag which contained a large amount of a crystal-like substance (Tr. 130-31). Officer Anderson weighed the bag when he returned to the police station and its weight exceeded twenty grams (Tr. 135). The officer testified that during the defendant's struggle with police, the driver called the defendant Jesse and Officer Anderson was subsequently able to determine the defendant's true identity (Tr. 135).

Officer Anderson testified that Officer Montgomery performed an inventory search of the vehicle and turned over four cell phones to Officer Anderson (Tr. 136). Based upon his experience, Officer Anderson testified that people who

3

distribute illegal drugs generally have multiple cell phones. This is done to prevent tracing their phone calls (Tr. 137).

Officer Montgomery testified that based upon his experience in the apprehension of drug offenders, a typical dose of methamphetamine is about a quarter of a gram. This amount costs around twenty or twenty-five dollars (Tr. 161-62). Drug users carry small amounts of the drug with them, as well as the tools they use to ingest the drug, such as lighters, glass pipes or syringes (Tr. 164, 161). Drug dealers carry large amounts of the drug and typically have a lot of cash with them (Tr. 167-68). They generally have multiple cell phones (Tr. 169).

Officer Montgomery testified he arrived at the scene at Admiral and North Harvard on September 29, 2016 (Tr. 171). He attempted to subdue the defendant, who would not cooperate with the officers. The officer testified he had to "take Mr. Holland to the ground" (Tr. 176). As he searched the defendant's person, he found a large amount of cash in his left pocket, $1,190.00 (Tr. 178). When Officer Montgomery rolled the defendant to his right side, he saw a baggie sticking out of the defendant's right front pocket. When the officer retrieved the baggie from the defendant, he saw that it contained a crystal substance he believed to be methamphetamine (Tr. 178-79). Officer Montgomery field-tested the substance and it tested positive for methamphetamine (Tr. 181). The officer testified no drug paraphernalia associated with ingesting illegal drugs was found in the defendant's vehicle or on his person (Tr. 182-83). He further testified that in his opinion, the drugs found on the defendant's person were destined for sale to other drug dealers

4

(Tr. 184). Officer Montgomery testified he booked the defendant into jail and during that process asked him basic identification questions. These included name, date of birth, address, social security number, place of employment, *etc.* (Tr. 189-91). The defendant told Officer Montgomery that he was unemployed (Tr. 191). The officer found this significant since the defendant had a large amount of cash on his person at the time of his arrest (Tr. 191-92).

Jared Lieser, forensic chemist with the Tulsa Police Department, testified he examined the drug at issue herein (Tr. 207). He determined the drug was methamphetamine and its weight was fifty-one grams (Tr. 207). In order to weigh the drug, Mr. Lieser testified he removed the drug from its packaging and placed it into a plastic container and weighed it (Tr. 204). Additional facts may be discussed as they become relevant to the propositions herein.

## PROPOSITION I

## NO PROSECUTORIAL ERROR OCCURRED.

The defendant alleges prosecutorial error deprived him of a fair trial. Specifically, he argues the prosecutor: used his military service to enhance his status with the jurors during *voir dire*; elicited improper opinion testimony from Officer Montgomery that the defendant was a drug dealer; disparaged the burden of proof and attempted to shift it to the defendant; improperly argued for a significant sentence; improperly referred to the fact that the defendant had not served all of his prior sentences; and improperly urged the jury not to separately

consider each charge. Because none of the complained of instances constituted prosecutorial error, this claim is without merit and must be denied.

The defense lodged no objection to the complained of comments, with the exception of the one regarding separate consideration for each charge. Therefore, this Court's review is limited to that of plain error. *Taylor v. State*, 2011 OK CR 8, ¶ 56, 248 P.3d 362, 379. In order to be entitled to relief based upon plain error, a defendant must show the existence of an actual error, that the error is plain or obvious, that the error affected his substantial rights, *i.e.*, the outcome of the proceeding and this Court must find that the error seriously impacted the fairness of the judicial proceedings or represented a miscarriage of justice. *Hogan v. State*, 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923. No plain error occurred.

This Court reviews claims of prosecutorial error "within the context of the entire trial, considering not only the propriety of the prosecutor's actions, but also the strength of the evidence against the defendant and the corresponding arguments of defense counsel." *Mitchell v. State*, 2010 OK CR 14, ¶ 97, 235 P.3d 640, 661. In *Donnelly v. DeChristoforo*, 416 U.S. 637, 645, 94 S. Ct. 1868, 1872, 40 L. Ed. 2d 431 (1974), the Supreme Court held that the standard for establishing the appropriateness of a prosecutor's comments during trial is whether the prosecutor's remarks made the defendant's trial so fundamentally unfair as to deny him due process. This Court holds that in order for a claim of prosecutorial error to warrant relief, the error must effectively deprive the defendant of a fair trial or a fair and reliable sentencing proceeding. *Cuesta-*

6

*Rodriguez v. State,* 2010 OK CR 23, ¶ 96, 241 P.3d 214, 243. Moreover, prosecutors have wide latitude in closing argument to discuss the evidence and reasonable inferences therefrom. *Hanson v. State,* 2003 OK CR 12, ¶ 13, 72 P.3d 40, 49. This Court held as follows in *Frederick v. State,* 2001 OK CR 34, ¶ 150, 37 P.3d 908, 946, regarding counsels' arguments:

> Both parties are entitled to argue the evidence from their perspective. We said in a syllabus by the Court in *Brown v. State,* 52 Okl.Cr. 307, 4 P.2d 129, 130 (1931): "The right of argument contemplates a liberal freedom of speech, and the range of discussion, illustration, and argumentation is wide. Counsel for both the state and the defendant have a right to discuss fully from their standpoint the evidence and the inferences and deductions arising from it."

A. **Allegation the prosecutor improperly used his military service to enhance his status with the jurors during *voir dire.***

It is well established that the purpose of *voir dire* is to determine whether there are grounds to challenge prospective jurors for cause and to permit the intelligent use of peremptory challenges. *Frederick v. State,* 2017 OK CR 12, ¶ 23, 400 P.3d 786, 802; *Hogan,* 2006 OK CR 19, ¶ 13, 139 P.3d at 917. This Court has long deferred to the trial court in matters of jury selection. *Pavatt v. State,* 2007 OK CR 19, ¶ 25, 159 P.3d 272, 282. In *Young v. State,* 2000 OK CR 17, ¶ 19, 12 P.3d 20, 31-32, this Court held:

> The manner and extent of *voir dire* is within the discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion. The trial court may properly restrict questions that are repetitive, irrelevant or regard legal issues upon which the trial court will instruct the jury. There is no abuse of

discretion as long as the *voir dire* questioning is broad enough to afford Appellant a jury free of outside influence, bias or personal interest. (internal citations omitted).

As part of the *voir dire* process, attorneys for both sides introduced themselves (Tr. 49, 81). The prosecutor included the fact that he was originally from Mississippi as well as his military service as part of his introductory comments to the jury (Tr. 49). Defense counsel included the fact that she was an Oklahoma native in hers (Tr. 81). The prosecutor also referred to one prospective juror who was retired from the Army as his "soldier buddy" prior to asking him a question (Tr. 63). That person did not sit on the jury (Tr. 104). The prosecutor told a story involving pencils and a pen his son gave him prior to his deployment to Iraq to illustrate how jurors must apply the facts of the instant case to the law provided to them. He sought to prepare the jury to impose punishment as provided by law if the jury determined the defendant was guilty (Tr. 71-73). There was nothing improper about this argument. *Cf. Young v. State,* 2000 OK CR 17, ¶ 96, 12 P.3d 20, 45 ("The prosecutor may make a recommendation as to punishment."). While the defendant complains of these statements, he fails to provide any authority for his claim that they constitute error on the part of the prosecutor. He also fails to cite anything in the record which supports his claim that he suffered prejudice because of these statements. Thus, pursuant to *Hogan,* the defendant has failed to show any error, much less plain error, occurred because of the prosecutor's *voir dire* comments.

8

**B.** **Allegation the prosecutor elicited improper testimony from Officer Montgomery.**

The defendant argues the prosecutor elicited improper testimony from Officer Montgomery when he asked the officer if the defendant was a drug dealer. As will be shown, defense counsel objected and her objection was sustained by the trial court and the jury admonished.

The defendant's defense was that the methamphetamine recovered from his person was for his own personal consumption and not for sale (Tr. 141). In response to this defense, the prosecutor questioned Officer Montgomery about his experience and training in the interdiction of illegal narcotics. Officer Montgomery testified at length about this subject, including average individual dosage, drug user paraphernalia, street dealers versus non-street dealers and use of cell phones in the drug trade, all based upon his experience and training (Tr. 157-70). He specifically testified that street drug dealers typically have illegal drugs in small baggies which contain the individual doses (Tr. 166). Dealers up from street dealers have the drug in a larger package which contains far more than an amount for personal use (Tr. 167). These dealers generally will have large amounts of money with them and several cell phones, but they will not have paraphernalia (Tr. 167-69).

On cross-examination, defense counsel asked the officer about whether every methamphetamine user carried paraphernalia or baggies to divide the drugs. She further asked if the fact that these things were not found on someone meant

9

that the person was not a drug user. The officer responded that it did not (Tr. 195-96). Thereafter, the prosecutor asked Officer Montgomery if the defendant was a drug dealer and the officer responded that he was. Defense counsel objected and the trial court sustained the objection and admonished the jury to disregard the answer (Tr. 199). Thus, any error was cured. *See Bosse v. State*, 2017 OK CR 10, ¶ 86, 400 P.3d 834, 864 ("[the appellant's] objection was sustained and jurors admonished to disregard [the complained of comment]. This cured any error.").

C.   **Allegation that the prosecutor disparaged the presumption of innocence and attempted to shift the burden of proof.**

The defendant argues the prosecutor disparaged the presumption of innocence when he told the jury that its decision on guilt or innocence should not take too long. When the statement is viewed in the context of the entire argument and after the prosecutor recounted for the jury the evidence presented (Tr. 255-58), it is clear the prosecutor was telling the jury that the evidence presented supported a guilty verdict. This is not improper. *See Williams v. State*, 2008 OK CR 19, ¶¶ 106-07, 188 P.3d 208, 228 (finding prosecutor's statement in closing, "this defendant is guilty of murder . . . he's guilty" a proper argument reasonably based on the evidence which supports a guilty verdict); *Banks v. State*, 2002 OK CR 9, ¶ 43, 43 P.3d 390, 402 (no misconduct where prosecutor did not tell the jury to abandon its duty and convict based upon the prosecutor's opinion, but simply told the jury that the evidence supported a guilty verdict).

The defendant also complains that the prosecutor attempted to shift the State's burden of proof. The statements at issue must be examined in the context of the entire argument. The prosecutor told the jury that it would want to consider the defendant's defense and determine if it was possible that he had a lot of cash in his pocket and a lot of drugs in the other pocket but he was not selling drugs. He then asked the jury to consider if it was reasonable to think the money came from another source and reminded the jury that the defendant's guilt must be proven beyond a reasonable doubt. The prosecutor continued and told the jury defense counsel did not have much to work with (Tr. 251-52). Thereafter, the prosecutor reminded the jury of defense counsel's cross-examination of Officer Montgomery where he admitted the drugs found on the defendant were not packaged for individual sale (Tr. 252-53). The prosecutor pointed out that the defendant had no job, no identification, but he had lots of money and methamphetamine (Tr. 253). He reminded the jury that the police witnesses did not believe the defendant was high on drugs at the time of his arrest (Tr. 253-54). He also reiterated for the jury the testimony about how long methamphetamine highs last, about an hour and then there is a rebound period of several hours (Tr. 256). These statements were made in response to the defense characterization of the defendant as a drug addict who had the large amount of methamphetamine for his personal use. The prosecutor's statements were proper. It is permissible for the prosecutor to argue that the defense theory is unsupported by the evidence. *Cf. Bosse*, 2017 OK CR 10, ¶ 85, 400 P.3d 834, 863 (the prosecutor properly

11

argued to the jury that the appellant's alibi was unsupported by the evidence and no burden shifting occurred).

**D.    Allegation that the prosecutor made inflammatory comments during the sentencing phase closing argument.**

The defendant argues the prosecutor improperly asked the jury for a lengthy sentence. The record reflects that the prosecutor reminded the jury of the defendant's prior convictions and asked the jury to send the defendant a message that he deserved significant punishment (Tr. 277). It is not improper for a prosecutor to argue for the jury to impose a harsh sentence. *See Pullen v. State,* 2016 OK CR 18, ¶ 14, 387 P.3d 922, 927-28 (it is proper for the prosecutor to make a sentencing recommendation during closing argument which is based upon the evidence presented). *Cf. Mathis v. State,* 2012 OK CR 1, ¶ 27, 271 P.3d 67, 77 (where prosecutor asked the jury to tell the appellant it was tired of seeing him, that he should not have a gun, that he was a multiple time felon and that this should be the last time the appellant was seen in court, there was no error; the argument was based upon the evidence presented against the appellant and did not suggest he should be punished based upon societal problems).

The defendant also contends that the prosecutor improperly sought sympathy for potential victims of the defendant's drug sales. The prosecutor argued for a lengthy sentence based upon the defendant's possession of such a large quantity of methamphetamine and upon his criminal record, after specifically reminding the jury of the instruction which precludes sympathy and

12

sentiment from forming the basis of its decision (Tr. 286-87). This was not improper. *See Taylor*, 2011 OK CR 8, ¶ 55, 248 P.3d at 379 (where prosecutor's sentencing request was based upon the record, it was not an appeal for sympathy). As the prosecutor reminded it, the jury was instructed to base its decision upon the evidence presented, not sympathy or sentiment (O.R. 84). It is reasonable to presume the jury followed its instruction and did not base its verdict upon sympathy. *See Garrison v. State*, 2004 OK CR 35, ¶ 119, 103 P.3d 590, 611 ("The jury was instructed not to allow sympathy, sentiment or prejudice to enter into their deliberations. We presume they followed that instruction.").

E.    **Allegation that the prosecutor's reference to pardon and parole led to an excessive sentence.**

The defendant maintains that the prosecutor made improper reference to the fact that he had received prior suspended sentences. Specifically, he takes issue with the prosecutor's comments that the defendant had six prior felony convictions which carried forty-nine years imprisonment and "he's still here" (Tr. 276) and that the defendant had "already had a couple of 20 year terms back in 2010. He's right there" (Tr. 284). Additionally, the defendant points out that his pen pack showed that he received partially suspended sentences in three of his six prior convictions (State's Exhibit 4).

Although somewhat clumsily phrased, the record shows that what the prosecutor was trying to convey to the jury was that the defendant was deserving of significant punishment based upon the evidence presented in the case (Tr. 276)

and the fact of his prior convictions (Tr. 276-77). The prosecutor did not explicitly state to the jury that the defendant had received suspended sentences as condemned in *Hunter v. State*, 2009 OK CR 17, ¶¶ 9-10, 208 P.3d 931, 933-34.

Should this Court find error in the prosecutor's argument, any error is harmless since the defendant suffered no prejudice therefrom. An error is harmless, and thus not a proper basis for reversal, when the court finds beyond a reasonable doubt that there is no reasonable probability that the error might have contributed to the verdict. *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 828, 17 L. Ed. 2d 705 (1967); *Myers v. State*, 2000 OK CR 25, ¶ 59, 17 P.3d 1021, 1035, *overruled on other grounds*, *James v. State*, 2007 OK CR 1, 152 P.3d 255. Clearly, the defendant was not in prison at the time he committed the instant trafficking crime. Even if the prosecutor had not mentioned that the defendant had received lengthy sentences in the past, because his last offense occurred in 2010 (State's Exhibit 4) and he received a twenty year sentence, the jury knew the defendant had not served the full twenty years in prison. The defendant committed the crime herein on September 29, 2016. These circumstances are similar to those of *Massingale v. State*, 1986 OK CR 6, ¶ 5, 713 P.2d 15, 16.

In *Massingale*, the defendant raised a comparable argument. The State introduced four judgments and sentences in the second stage indicating the appellant had been sentenced to twenty-five years for four armed robberies. A simple matter of math showed the appellant had served at most twelve years on the previous sentence of twenty-five years before he committed the armed robbery

14

for which he was on trial. The jury sentenced him to 513 years imprisonment for his latest armed robbery. On appeal, the appellant argued he was prejudiced since the jury saw the length of his first sentence and was able to determine he served less than half of it. He argued it amounted to comment on the amount of time he served and indirectly referred to pardon and parole practices. This Court found that it was entirely proper to admit the judgments and sentences of the former convictions in the second stage and found the assignment of error to be without merit. *Massingale*, 1986 OK CR 6, ¶ 9, 713 P.2d at 16.

As in *Massingale*, the defendant's jury knew he was not in prison when he committed the crimes charged. Given the overwhelming evidence presented of the defendant's guilt of the trafficking crime, the jury found the defendant to be deserving of significant punishment. Pursuant to *Chapman*, there is no reasonable probability that any error in the prosecutor's argument might have contributed to the jury's sentencing determination.

**F.   Allegation that the prosecutor misstated the law and ridiculed defense counsel.**

Lastly, the defendant contends the prosecutor misstated the law by telling the jury that if it found the defendant guilty after two prior convictions on one count, it was bound to find him guilty on each count after two prior convictions. A review of the record shows that is not what the prosecutor told the jury.

Defense counsel urged the jury to consider the prior convictions for each count (Tr. 277-78). She told the jury it could find two prior convictions for Count

15

1 and only one prior conviction on Count 2 (Tr. 278). In response, the prosecutor reminded the jury of the proof it presented of the defendant's prior convictions, i.e., State's Exhibit 4. The prosecutor then posed the rhetorical question of how asinine was it for the State to have presented the evidence of the defendant's prior convictions, but for the jury to ignore that evidence (Tr. 283). Defense counsel objected and the trial court sustained the objection (Tr. 283). The prosecutor then told the jury that if the jury believed the evidence presented that the defendant had two prior convictions, then the top line of the verdict form should be filled out on every form, except for the misdemeanor (Tr. 284). To the extent the prosecutor's statement to which defense counsel lodged an objection was erroneous, any error was cured when the trial court sustained the objection and the prosecutor moved on in his argument. *See Dodd v. State*, 2004 OK CR 31, ¶ 93, 100 P.3d 1017, 1044 (where the objection was sustained and the prosecutor said no more about the objected to subject, any error was cured). However, there was nothing improper about the prosecutor's argument as the prosecutor was clearly arguing that the evidence presented showed that the State proved the defendant's prior convictions. *See Howell v. State*, 2006 OK CR 28, ¶ 16, 138 P.3d 549, 557 (it is appropriate for the State to refer to evidence admitted at trial during closing argument and to argue to the jury how the evidence supports the State's burden of proof).

Furthermore, the jury was properly instructed regarding the definition of evidence (O.R. 52), that it must give separate consideration to each charge in the

16

case (O.R. 60) and that it could only find that the defendant had prior convictions if the State proved the fact of the convictions and that the defendant was the person previously convicted beyond a reasonable doubt (O.R. 93-94). This Court holds that jurors are presumed to follow the instructions given to them. *Jones v. State*, 1988 OK CR 267, ¶ 10, 764 P.2d 914, 917. The fact that the defendant received the minimum punishment on Count 3 demonstrates that the defendant suffered no prejudice from the prosecutor's comments. *Cf. Woods v. State*, 1984 OK CR 24, ¶ 9, 674 P.2d 1150, 1153 (where the defendant received a sentence which was almost the minimum sentence he could receive for his crime and evidence of his guilt was great, the prosecutor's comments did not prejudice him).

Pursuant to *Donnelly*, *Cuesta-Rodriguez* and *Mitchell*, the defendant has failed to show entitlement to relief based upon prosecutorial error.

Should this Court find the prosecutor's arguments were erroneous, any such error was harmless. An error is harmless, and thus not a proper basis for reversal, when the court finds beyond a reasonable doubt that there is no reasonable probability that the error might have contributed to the verdict. *Chapman*, 386 U.S. at 24; *Myers*, 2000 OK CR 25, ¶ 59, 17 P.3d at 1035. As fully shown in the Statement of Facts, the defendant had fifty-one grams of methamphetamine in his pocket at the time of his arrest. He also had two or more prior convictions as shown on State's Exhibit 4. Based upon this overwhelming evidence, nothing the prosecutor said could have possibly affected the verdict in this case.

For the foregoing reasons, this proposition must be denied.

## PROPOSITION II

## NO FIFTH AMENDMENT VIOLATION OCCURRED.

The defendant alleges a statement he made was improperly admitted in violation of his Fifth Amendment right to remain silent, without the receipt of the *Miranda*[2] warning. Specifically, he argues his statement that he was unemployed, made to Officer Montgomery during booking procedures, was used against him at trial in violation of his right to remain silent. Because the defendant's statement was made during law enforcement's investigatory role and not in an attempt to elicit incriminating admissions, no *Miranda* warning was necessary. Therefore, this claim is without merit and must be denied.

The defendant made no objection, either prior to or at trial, to the use of his statements made during his booking procedure with police. Consequently, this Court will review for plain error only. *Cheatham v. State*, 1995 OK CR 32, ¶ 48, 900 P.2d 414, 427. In order to be entitled to relief based upon plain error, a defendant must show the existence of an actual error, that the error is plain or obvious and that the error affected his substantial rights, *i.e.*, the outcome of the proceeding and this Court must find that the error seriously impacted the fairness of the judicial proceedings or represented a miscarriage of justice before the error

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

18

requires correction. *Hogan*, 2006 OK CR 19, ¶ 38, 139 P.3d at 923. No plain error occurred.

In *Miranda*, 384 U.S. at 478-79, the Supreme Court held that prior to questioning by police officials, a defendant, who is in custody or otherwise deprived of his freedom of action in any significant way, must be advised of his constitutional rights, specifically, his right to remain silent and his right to counsel. However, questions regarding normal biographical data that are routine to the police booking procedure do not trigger the protections of *Miranda. See Pennsylvania v. Muniz*, 496 U.S. 582, 601-02, 110 S. Ct. 2638, 2650, 110 L. Ed. 2d 528 (1990) (recognizing an exception to *Miranda* requirements for routine booking questions which are necessary to complete booking or pretrial procedures). This Court follows the reasoning of *Muniz. See Gilbert v. State*, 1997 OK CR 71, ¶ 46, 951 P.2d 98, 112 (finding police booking questions regarding place of birth, marital status, employment and education to be merely investigatory and not accusatory; therefore, no *Miranda* warning was necessary).

During direct examination of Officer Montgomery, the prosecutor asked him what information he sought from the defendant during the booking process. Officer Montgomery refreshed his memory by reviewing the defendant's booking sheet filled out at the time he was booked into the Tulsa County Jail (Tr. 188-90). Officer Montgomery testified he asked him his name, social security number, date of birth and place of employment and the officer testified what the defendant told

19

him in response to those questions, including that he was unemployed (Tr. 190-91).

While the defendant was apprehended with almost $1,200.00 in his pocket, and later told police he was unemployed, nothing about his unemployment was incriminating in and of itself. At the time of the defendant's booking into jail, Officer Montgomery was simply filling out the standard booking form for the Tulsa County Jail. Although a person's employment status might possibly be relevant to a criminal charge in the future, at the time of booking into jail that status is simply biographical information. A person could be dealing in illegal drugs, but be gainfully employed outside of the drug trade and carry $1,200.00 in cash. Likewise, a person could be unemployed, not dealing in illegal drugs and carry $1,200.00 cash. Employment is simply a standard biographical question asked of criminal defendants at the time they are booked into jail as found in *Gilbert. Cf. Bushyhead v. Wade*, No. 10-CV-0797-CVE-FHM, 2014 WL585355 at *21 (N.D. Okla. Feb. 13, 2014) (unpublished)[3] (finding on habeas review that employment inquiry during booking into Tulsa County Jail was elicited for the purpose of completing police paperwork and not for purposes of incrimination; therefore, no *Miranda* warning was necessary).

Employment status is not an element of the crime of acquiring proceeds from drug activity. The elements are: knowingly or intentionally, receiving or acquiring, proceeds known to be derived from any violation of the Uniform

---

[3] Unpublished decision cited for persuasive value only, pursuant to Fed. R. App. P.32.1 and 10th Cir. R. 32.1.

20

Controlled Dangerous Substances Act (O.R. 70). Again, while one's lack of employment might serve as circumstantial evidence of the inability to have a large sum of cash, it is certainly not dispositive of it. Pursuant to *Muniz* and *Gilbert*, no *Miranda* warning was necessary prior to obtaining routine booking information from the defendant. Accordingly, pursuant to *Hogan*, no plain error occurred.

Should this Court determine the defendant's statement regarding his employment was admitted in error, any such error is harmless. An error is harmless, and thus not a proper basis for reversal, when the court finds beyond a reasonable doubt that there is no reasonable probability that the error might have contributed to the verdict. *Chapman*, 386 U.S. at 24 ; *Myers*, 2000 OK CR 25, ¶ 59, 17 P.3d at 1035. As set forth in the Statement of Facts, the defendant had fifty-one grams of methamphetamine in his pocket at the time of his arrest. He gave a false name to police (Tr. 129, 173). He also had two or more prior convictions as shown on State's Exhibit 4. Based upon this overwhelming evidence, the defendant's employment information could not have possibly affected the verdict in this case.

For the foregoing reasons, this proposition must be denied.

## PROPOSITION III

### TRIAL COUNSEL WAS NOT INEFFECTIVE.

### (In Response to the defendant's Propositions III and IV).

The defendant alleges his trial counsel was ineffective. Specifically, he argues trial counsel was ineffective for: failing to subject the State's case to

meaningful adversarial testing, such that prejudice should be presumed (Proposition III) and failing to challenge the discrepancy between the weight of the methamphetamine recovered from the defendant as indicated on the probable cause affidavit and on the police property receipt and the discrepancy between those weights and the weight testified to by Jared Lieser, failing to object to the admission of the defendant's booking statement about his employment addressed in Proposition II and failing to object to the alleged prosecutorial error addressed in Proposition I (Proposition IV). These allegations also form the basis for the defendant's motion filed herewith pursuant to Rule 3.11(A) and (B), *Rules of the Oklahoma Court of Criminal Appeals*, Ch. 18, App. (2017). Because the record fails to show that trial counsel was ineffective, this claim is without merit and must be denied as must the defendant's motion.

In order to prevail on an ineffective assistance of counsel claim, the defendant must show that his counsel's actions were deficient and that the deficiencies prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); *Ryder v. State*, 2004 OK CR 2, ¶ 85, 83 P.3d 856, 875-876. The *Strickland* Court also held that to establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 687. The Court recognized the danger that "intrusive post-trial inquiry into attorney performance" could

22

"encourage the proliferation of ineffectiveness challenges. Criminal trials resolved unfavorably to the defendant would increasingly come to be followed by a second trial, this one of counsel's unsuccessful defense." *Strickland*, 466 U.S. at 690.

The Supreme Court has emphasized that:

> Surmounting *Strickland*'s high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

*Harrington v. Richter*, 562 U.S. 86, 105, 131 S. Ct. 770, 788, 178 L. Ed. 2d 624 (2011) (internal citations and quotation marks omitted).

Further, "while in some instances even an isolated error can support an ineffective-assistance claim if it is sufficiently egregious and prejudicial, it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Harrington*, 562 U.S. at 111 (internal citations and quotation marks omitted).

23

Finally, with respect to the prejudice prong of *Strickland*, the Court clarified that:

> In assessing prejudice under *Strickland*, *the question is not* whether a court can be certain counsel's performance had no effect on the outcome or *whether it is possible a reasonable doubt might have been established if counsel acted differently.* Instead, *Strickland* asks whether it is *reasonably likely* the result would have been different. *This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable.*

*Harrington*, 562 U.S. at 111-12 (internal citations and quotation marks omitted) (emphasis added). "When a claim of ineffectiveness of counsel can be disposed of on the ground of lack of prejudice, that course should be followed." *Malone v. State*, 2013 OK CR 1, ¶ 16, 293 P.3d 198, 207.

In *Frederick v. State*, 2001 OK CR 34, ¶ 189, 37 P.3d 908, 955, this Court held, "Where there is no error, one cannot predicate a claim of ineffective assistance of counsel upon counsel's failure to object." Similarly, counsel cannot be deemed ineffective for refusing or failing to raise a baseless claim. *Battenfield v. State*, 1998 OK CR 8, ¶ 15, 953 P.2d 1123, 1128.

In order to show entitlement to an evidentiary hearing pursuant to Rule 3.11(B)(3)(b), the defendant's application and attached documents must "contain sufficient information to show this Court by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify

24

the complained-of evidence." *Miller v. State*, 2013 OK CR 11, ¶ 231, 313 P.3d 934, 1002 (footnote omitted).

The defendant relies upon *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984), in support of his contention that he has no obligation to affirmatively prove he suffered prejudice in order to establish ineffective assistance of counsel (Appellant's Brief, pp. 23-24). His reliance is misplaced. In *Cronic*, the Court identified four circumstances in which prejudice could be presumed in the ineffective assistance of counsel realm, *i.e.*, complete denial of counsel, complete failure of counsel to subject the prosecution's case to meaningful adversarial testing such that there is a complete breakdown in the adversarial process, where the circumstances surrounding the representation are such that no attorney could provide effective assistance and where counsel has an actual conflict of interest. *Id.* at 659-61 n.28. In all other cases, the defendant must establish his claim pursuant to *Strickland*. *Id.* at 666 n.41.

The defendant maintains that his counsel failed to subject the State's case to meaningful adversarial testing, resulting in the complete breakdown of the adversarial process. However, he points out specific areas where he believes counsel failed to oppose the prosecution. These are that counsel filed no motions, waived opening statement, presented no witnesses or evidence, interposed few objections, conducted token cross-examination and utilized an absurd defense (Appellant's Brief, p. 24). Thus, the defendant's argument is not that his counsel failed to contest the State's case throughout the trial as a whole, but that she

25

failed to do so in specific areas. Such an argument falls under the *Strickland* performance and prejudice analysis, not *Cronic*. *See Bell v. Cone*, 535 U.S. 685, 696-98, 122 S. Ct. 1843, 1851, 152 L. Ed. 2d 914 (2002) (where specific instances of counsel's conduct are challenged, such as waiving closing argument and failure to present mitigating evidence, the challenge falls under *Strickland* and not *Cronic*; counsel must entirely fail to subject the prosecution's case to meaningful adversarial testing before *Cronic* applies).

The Tenth Circuit holds similarly and defines a complete breakdown in the adversarial process as the situation where the attorney's performance is "so inadequate that, in effect, no assistance of counsel is provided." *Williams v. Trammell*, 782 F.3d 1184, 1201 (10th Cir. 2015) (quoting *Cronic*, 466 U.S. at 654 n.11) (internal quotation marks omitted)). *See also Lockett v. Trammell*, 711 F.3d 1218, 1248 (10th Cir. 2013) (where defense counsel participated in every aspect of trial, made objections, and conducted cross-examinations, there was no complete breakdown in the adversarial process as contemplated by *Cronic*). This Court holds similarly. In *Williams v. State*, 2001 OK CR 9, ¶¶ 110-11, 22 P.3d 702, 728, where the appellant argued for the *Cronic* presumption, pointing out that counsel implied in opening statement that there would be a second stage decision and that more evidence would be before the jury after the guilt stage, used the word "murder" to describe what happened in the case; failed to request lesser included instructions and failed to raise any defense in closing argument, this Court found the *Cronic* presumption of prejudice was inappropriate for

26

analyzing the ineffective assistance of counsel claim and utilized the *Strickland* analysis.

The defendant points to an affidavit attached as Exhibit A to his Rule 3.11 motion as evidence which supports his *Cronic* claim. This affidavit is executed by an attorney named Toni Beach. It consists of Ms. Beach's description of things she purports to have observed and overheard out in the hallway after the defendant's trial concluded. Ms. Beach was not a party to the conversation which is the subject of her affidavit. The conversation allegedly occurred between defense counsel, Beverly Atteberry, and the prosecutors in the defendant's case. Interestingly, although Ms. Beach refers to Ms. Atteberry by name, she does not name the prosecutors. The gist of the affidavit is that Ms. Atteberry spoke of the defendant in a derogatory manner, "appeared" pleased with the outcome of the case and stated that she just made the worst closing argument of her legal career and laughed.

As set forth above, Ms. Beach was not a party to the alleged conversation; therefore, everything she purports to have overheard is hearsay. Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial, offered in evidence to prove the truth of the matter asserted. 12 O.S.2011, § 2801(A). More importantly, the affidavit contains zero information about what transpired during the defendant's trial with regard to Ms. Atteberry's conduct of the trial. The defendant provides nothing contending that his counsel disparaged him or mistreated him in any way during the trial and that such

27

actions affected the fairness of his trial. In *Cronic*, the Court prefaced its evaluation of the lower court's conclusion that an actual breakdown of the adversarial process during trial occurred with the following statements:

> [T]he right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.

*Cronic*, 466 U.S. at 658. Thus, the complained of conduct must affect the trial itself. The record belies any such conduct during trial on Ms. Atteberry's part and nothing in Ms. Beach's affidavit shows otherwise. Accordingly, Ms. Beach's affidavit fails to support the defendant's *Cronic* claim. *Cf. Bell*, 535 U.S. at 697 n. 4 (where the respondent failed to argue that his attorney suffered mental health problems at the time of his trial, evidence that the attorney subsequently suffered mental health problems was not relevant to the Court's determination that his claim should be addressed pursuant to *Strickland* and not *Cronic*).[4]

---

[4] The defendant relies upon *Osborn v. Shillinger*, 861 F.2d 612 (10th Cir. 1988), for his sweeping averment that post-trial disparagement of his client after trial is relevant to a *Cronic* ineffective assistance of counsel claim. His reliance is misplaced. The defense attorney in *Osborn* wrote a letter to the trial judge after his client pled guilty to first degree murder and received the death penalty and while he was drafting his client's appeal, where he told the court that his client deserved the death penalty and brought the punishment on himself. The attorney also gave statements to the press after his client entered a guilty plea clearly informing the press that in his opinion, any attempt by his client to withdraw his guilty plea was meritless. Based upon these and other equally egregious actions, the Tenth Circuit affirmed the grant of habeas relief to the petitioner based upon *Cronic*. *Id.* at 629-30. Nothing remotely like those actions occurred in the defendant's case, even assuming the truth of Ms. Beach's affidavit.

Having shown that the defendant's claims must be analyzed pursuant to *Strickland*, the defendant bears the burden of showing defective performance and prejudice. *Strickland*, 466 U.S. at 687. He fails to show either. He fails to state what motions counsel should have filed, he fails to state how giving an opening statement would have affected his case, he fails to state what evidence should have been presented in his defense, he fails to state what additional cross-examination counsel should have undertaken and he fails to state what other defense was available. As shown in the Statement of Facts, the evidence in this case was overwhelming. The defendant asks this Court to speculate that had counsel taken other, unspecified actions in his case, her actions would have resulted in a reasonable probability that the result of his trial would have been different. This Court cannot "make the leap necessary to find prejudice in this case based on speculation alone." *Fulgham v. State*, 2016 OK CR 30, ¶ 17, 400 P.3d 775, 780. "[T]his Court cannot find *Strickland* prejudice resulted through assumptions and speculation. Appellant has failed to present any evidence demonstrating the reasonable probability of a different result in the proceedings. Appellant's ineffective assistance of counsel claim is therefore conclusory and speculative." *Fulgham*, 2016 OK CR 30, ¶ 18, 400 P.3d at 780-81. Accordingly, this Court denied the appellant's ineffective assistance of counsel claim. *Fulgham*, 2016 OK CR 30, ¶ 20, 400 P.3d at 781.

Pursuant to *Harrington, Strickland* and *Fulgham*, the claim based upon the above allegations is without merit and must be denied. Based upon the record

29

herein, the defendant has failed to show by clear and convincing evidence that there is a strong possibility that trial counsel was ineffective for the alleged failings as required by Rule 3.11 and *Miller*.

The defendant claims in Proposition IV that counsel's performance was deficient because she failed to question the discrepancy between the weight of the package found on the defendant's person at the time of his arrest, shown on the probable cause affidavit and the weight of the drugs testified to by Mr. Lieser (Appellant's Brief, pp. 27-28). He refers to Exhibit B attached to his Rule 3.11 motion in support of his claim. This exhibit appears to be a Tulsa Police Department Property Receipt, No. BL4631. The exhibit references a bag of crystal substance, which field-tested presumptively positive for methamphetamine, with a weight of seventy-one point four grams and a drug pre-weight of sixty-five point six grams. Mr. Lieser testified that the weight of the methamphetamine in the bag with the above property receipt number (State's Exhibit 1) was fifty-one grams (Tr. 206-07).

While there is a discrepancy between the weight shown on the property receipt and Mr. Lieser's testimony, common sense dictates that this is due to the fact that Mr. Lieser testified he weighed only the drug itself and not the drug with the packaging (Tr. 204). Similarly, the police weighed the entire package, not just the drugs inside (Tr. 135). At any rate, the discrepancy made no difference to the defendant's trafficking charge. As clearly shown in the jury instructions, the jury only had to find beyond a reasonable doubt that the defendant knowingly

30

possessed twenty or more grams of methamphetamine in order to find him guilty of trafficking in illegal drugs (O.R. 64). The defendant's averment that had this discrepancy been pointed out, the jury would have had reasonable doubt as to whether State's Exhibit 1 was recovered from the defendant is nothing more than pure speculation. Such speculation is insufficient to support a finding of prejudice as held by this Court in *Fulgham*. Pursuant to *Harrington, Strickland* and *Battenfield,* counsel was not ineffective for failing to question any discrepancy in the weights pertaining to State's Exhibit 1. Based upon the record herein, the defendant has failed to show by clear and convincing evidence that there is a strong possibility that trial counsel was ineffective for failing to question any discrepancy in the weights pertaining to State's Exhibit 1 as required by Rule 3.11 and *Miller*.

The defendant also argues counsel was ineffective for failing to object to the alleged *Miranda* violation addressed in Proposition II. As shown within that proposition, no *Miranda* violation occurred or any error was harmless beyond a reasonable doubt. As a result, pursuant to *Harrington, Strickland, Frederick* and *Battenfield,* counsel was not ineffective for failing to object. The defendant further argues counsel was ineffective for failing to object to the allegations of prosecutorial error as addressed in Proposition I. As completely shown therein, no prosecutorial error occurred or any error was harmless. Pursuant to *Harrington, Strickland* and *Frederick,* counsel was not ineffective for failing to object.

31

To the extent the defendant argues he received an excessive sentence, his claim is not properly before this Court. This Court's Rules set forth what an appellant must include in his brief in order for this Court to review his contention on appeal. Rule 3.5(A)(5), *Rules of the Court of Criminal Appeals*, Title 22, Ch. 18 App. (2017), provides an Appellant's brief must contain the following:

> An argument, containing the contentions of the appellant, which sets forth all assignments of error, supported by citations to the authorities, statutes and parts of the record. Each proposition of error shall be set out separately in the brief. Merely mentioning a possible issue in an argument or citation to authority does not constitute the raising of a proposition of error on appeal. Failure to list an issue pursuant to these requirements constitutes waiver of alleged error.

In accordance with this Rule, this Court holds that it will not review allegations of error that are not separately raised as independent propositions of error. *See Ashton v. State*, 2017 OK CR 15, ¶ 25, 400 P.3d 887, 895 ("As Appellant failed to set out this claim as a separate proposition of error in his brief, we find the issue is waived [pursuant to Rule 3.5]."

For the foregoing reasons, these propositions must be denied.

## PROPOSITION IV

**THE TRIAL COURT PROPERLY ORDERED THE DEFENDANT'S SENTENCES TO RUN CONSECUTIVELY.**

**(In Response to the defendant's Proposition V).**

The defendant alleges the trial court abused its discretion by ordering his sentences to run consecutively to one another. Because the trial court's

32

sentencing decision was supported by the record and was in accordance with state statutes concerning sentencing, this claim is without merit and must be denied.

By statute, 22 O.S.2011, § 976, sentences run consecutively unless otherwise ordered by the trial court. Section 976 provides as follows:

> If the defendant has been convicted of two or more offenses, before judgment on either, the judgment may be that the imprisonment upon any one may commence at the expiration of the imprisonment upon any other of the offenses. Provided, that the sentencing judge shall, at all times, have the discretion to enter a sentence concurrent with any other sentence.

There is no absolute constitutional or statutory right to concurrent sentences. *Riley v. State*, 1997 OK CR 51, ¶ 20, 947 P.2d 530, 534. The decision whether to order sentences to run concurrently or consecutively rests in the sound discretion of the trial court. *Id.* In the context of a sentencing decision of whether to run sentences consecutively or concurrently, an abuse of discretion "can be found where the trial court's decision is not supported by the facts or law of the case." *Kamees v. State*, 1991 OK CR 91, ¶ 21, 815 P.2d 1204, 1208-09. One fact which can support a trial court's decision not to run sentences concurrently is the defendant's prior criminal record. *Kamees*, 1991 OK CR 91, ¶ 22, 815 P.2d at 1209.

As shown in the record, the defendant had six prior felony convictions and the evidence adduced against him at trial was simply overwhelming. The jury clearly found the defendant to be deserving of significant punishment.

33

As fully demonstrated by the previous propositions, the trial court's sentencing decision is overwhelmingly supported by the record. Thus, pursuant to Section 976, *Riley* and *Kamees*, the trial court properly sentenced the defendant and ran some of his sentences consecutively to one another.

For the foregoing reasons, this proposition must be denied.

## PROPOSITION V

### THE DEFENDANT SEEKS AN ORDER *NUNC PRO TUNC* IN THIS PROPOSITION; HIS CLAIM IS NOT PROPERLY BEFORE THIS COURT.

### (In Response to the defendant's Proposition VI)

The defendant contends that because there are errors on his Judgments and Sentences, if these documents are not amended, his sentences on certain counts must be modified. However, he admits the jury was correctly instructed regarding the offenses for which he was convicted and makes no claim he received inadequate notice of the crimes for which he was convicted (Appellant's Brief, p. 35). Although he couches this claim as jurisdictional, in fact he admits his jury was properly instructed on all the offenses charged (Appellant's Brief, p. 35) and seeks correction of the Judgments and Sentences by order *nunc pro tunc* (Appellant's Brief, p. 36). His request is not properly before this Court and must be denied.

The defendant's request for an order *nunc pro tunc* constitutes a request for extraordinary relief. *Grimes v. State*, 2011 OK CR 16, ¶ 21, 251 P.3d 749, 751. If the defendant believes "[h]e is entitled to issuance of an order *nunc pro tunc*, a

34

proper request for such an order should be made directly to the District Court, prior to seeking any redress through this Court. This Court will entertain extraordinary requests for relief only when a petitioner has sought and been denied relief in the District Court." *Id.*

As this Court held in *Rivera v. State*, No. F-2012-1048 (Okl. Cr. July 3, 2014) (unpublished and attached as Exhibit A),[5] the defendant must make his request for an order *nunc pro tunc* to the trial court to give that court a chance to correct any error:

> Rivera's request for an order *nunc pro tunc* to correct the district court's Journal Entry concerning the court's pronouncement of sentence constitutes a request for extraordinary relief. See Rule 10.1(A), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2014). If Rivera believes he is entitled to issuance of an order *nunc pro tunc*, a proper request for such an order should be made directly to the District Court, prior to seeking any redress through this Court. *See Grimes v. State*, 2011 OK CR 16, ¶ 21, 251 P.3d 749, 755. "This Court will entertain extraordinary requests for relief only when a petitioner has sought and been denied relief in the District Court." *Id.* Absent a determination by the District Court, we will not assume jurisdiction of an extraordinary writ. The request for issuance of an order *nunc pro tunc* is DENIED.

Accordingly, the defendant should file his request for an order *nunc pro tunc* with the trial court, and it is not properly before this Court at this time.

---

[5]Unpublished decision cited here under Rule 3.5(C)(3), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2017) as no published case would serve as well the purpose for which counsel cites it.

For the foregoing reasons, this proposition must be denied.

## PROPOSITION VI

### THERE WAS NO ACCUMULATION OF ERROR.

### (In Response to the defendant's Proposition VII)

In his final proposition, the defendant alleges the accumulation of errors herein deprived him of a fair trial and warrants a reversal of his convictions. Because no error occurred herein which warrants relief, there can be no accumulation of error.

In *Eizember v. State*, 2007 OK CR 29, ¶ 158, 164 P.3d 208, 245, this Court held that "[a] cumulative error argument has no merit when this Court fails to sustain any of the other errors raised by Appellant." This Court holds that if no errors occurred which would singly or in the aggregate require reversal or modification, then there can be no accumulation of error. *Hammon v. State*, 2000 OK CR 7, ¶ 96, 999 P.2d 1082, 1101-1102.

In the instant case, as shown in the responses to the six previous propositions, no error occurred or any error was harmless. Therefore, pursuant to *Eizember* and *Hammon* there can be no accumulation of error.

## CONCLUSION

The defendant's contentions have been answered by both argument and citations of authority. The State contends that no error occurred which would require reversal or modification and therefore, respectfully requests that the Judgment and Sentence be affirmed.

Respectfully submitted,

**MIKE HUNTER**
**ATTORNEY GENERAL**

**JAY SCHNIEDERJAN, OBA #11986**
**ASSISTANT ATTORNEY GENERAL**
313 N.E. 21st
Oklahoma City, OK 73105
(405) 521-3921
(405) 522-4534 (FAX)
**ATTORNEYS FOR APPELLEE**

## CERTIFICATE OF MAILING

On this 3rd day of April, 2018, a true and correct copy of the foregoing was mailed to:

Chad Johnson
Box 926
Norman, OK 73070
Attorney for Appellant

Jay Schniederjan

IN THE COURT OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA

CRYSTIAN RIVERA,          )
                          )
          Appellant,      )          NOT FOR PUBLICATION
                          )
v.                        )          Case No. F-2012-1048
                          )
THE STATE OF OKLAHOMA,    )
                          )                    **FILED**
          Appellee.       )          IN COURT OF CRIMINAL APPEALS
                                          STATE OF OKLAHOMA

                    SUMMARY OPINION                JUL - 3 2014

A. JOHNSON, JUDGE:                             MICHAEL S. RICHIE
                                                    CLERK

    Appellant Crystian Rivera was charged in the District Court of Oklahoma County, Case No. CF-2011-4904, with one count of First Degree Murder by Child Abuse, in violation of 21 O.S.Supp.2011, § 707.7(C). Rivera, who was thirteen years old at the time of the offense, was tried as a youthful offender before the Honorable Richard W. Kirby, Associate District Judge, and a jury found him guilty as charged. Following trial, Judge Kirby held a dispositional hearing at which neither Rivera nor the State objected to the rehabilitation plan proposed by the Office of Juvenile Affairs (OJA). Judge Kirby announced that he would be reviewing the case every six months pending completion of the rehabilitation plan and that non-compliance with the plan could result in the State seeking to "bridge" Rivera to the Department of Corrections to serve a life sentence. Judge Kirby placed Rivera in the custody of the Office of Juvenile Affairs for a period not to exceed life imprisonment. From this Judgment and Sentence Rivera appeals, raising the following issues:



(1)   whether the trial evidence was sufficient to support his conviction for First Degree Murder by Child Abuse;

(2)   whether the district court erred by failing to submit an instruction *sua sponte* on second degree manslaughter;

(3)   whether he was denied his right to conflict-free counsel at trial because another lawyer in trial counsel's law firm represented his mother;

(4)   whether his statement made during custodial interrogation should have been suppressed because his waiver of constitutional rights was not voluntary;

(5)   whether admission of other bad acts deprived him of a fair trial;

(6)   whether he was denied effective assistance of trial counsel;

(7)   whether he was unduly prejudiced by the admission of five autopsy photographs of the victim; and

(8)   whether this matter should be remanded to the District Court with instructions to correct the Journal Entry on sentencing by an Order *Nunc Pro Tunc.*

We find reversal is not required and affirm the judgment and sentence of the district court.

## 1.

After reviewing the evidence in the light most favorable to the State, we find that any rational trier of fact could find beyond a reasonable doubt that Rivera committed First Degree Murder by Child Abuse.  *See Logsdon v. State*, 2010 OK CR 7, ¶ 5, 231 P.3d 1156, 1161; *Spuehler v. State*, 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203-204. The direct and circumstantial evidence concerning the nature and timing of the fatal injuries coupled with the opinions of the

medical experts was sufficient to prove that Rivera willfully inflicted the injuries that caused his sister's death.

## 2.

Reviewing for plain error only, we find no error in the omission of an instruction on second degree manslaughter because the instruction was not warranted by the evidence. *See Hogan v. State,* 2006 OK CR 19, ¶ 39, 139 P.3d 907, 923 ("[t]he first step in plain error analysis is to determine whether error occurred"); *Ball v. State,* 2007 OK CR 42, ¶ 32, 173 P.3d 81, 90 (instructions on lesser-included offenses need be given only when there is prima facie evidence to support the instruction).

## 3.

We reject Rivera's claim that he was denied his right to conflict-free counsel at trial.  He has not shown the existence of an actual conflict of interest that adversely affected his attorney's performance.   *See Harmon v. State,* 2005 OK CR 19, ¶ 4, 122 P.3d 861, 863.

## 4.

Where a proper *Jackson v. Denno*[1] hearing has been held to determine whether a custodial statement was made voluntarily, this Court will not disturb the district court's ruling provided the decision to admit the statement

---

[1] 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

is supported by sufficient evidence that the statement was made voluntarily. *See Al-Mosawi v. State,* 1996 OK CR 59, ¶ 17, 929 P.2d 270, 277. The district court held the required hearing and its decision concerning the voluntariness of Rivera's statement is supported by sufficient evidence. We find the district court did not err in admitting Rivera's statement at trial.

**5.**

The district court did not err in admitting evidence regarding Rivera's statements to Dr. Debby Doughty who evaluated Rivera as part of the youthful offender process. The statements were not confidential and privileged. 10A O.S.2011, § 2-6-102(C)(1). Nor were the statements inadmissible other crimes or bad acts evidence. The evidence was relevant to show absence of mistake or accident and was necessary to support the State's burden of proof to rebut Rivera's defense that the child's death was a tragic accident rather than the result of Rivera's willful actions. 12 O.S.2011, § 2404(B). Also, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. *See Postelle v. State,* 2011 OK CR 30, ¶ 31, 267 P.3d 114, 131; *Harmon v. State,* 2011 OK CR 6, ¶ 48, 248 P.3d 918, 936-37. This claim is denied.

**6.**

Rivera's claim that he received ineffective assistance of trial counsel is without merit. In Parts 2, 3, 4, *supra,* and 7, *infra,* we address and reject

4

claims that Rivera was entitled to a lesser included offense instruction, that Rivera was denied his right to conflict-free counsel, that Rivera's statement should have been suppressed, and that Rivera was prejudiced by the admission of gruesome photographs.

Rivera's claim of ineffective assistance of counsel based on trial counsel's failure to raise these same issues below through timely objections and requests must also fail because he has not shown that there is a reasonable probability that the outcome of his trial would have been different had trial counsel done so. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Malone v. State*, 2013 OK CR 1, ¶ 14, 293 P.3d 198, 206, *cert. denied,* ___U.S.___, 134 S.Ct. 172, 187 L.Ed.2d 119 (2013); *Head v. State*, 2006 OK CR 44, ¶ 23, 146 P.3d 1141, 1148. Rivera's further claim that trial counsel was ineffective for failing to obtain defense experts is likewise without merit because he identifies no experts and makes no effort to show there is a reasonable probability that expert testimony would have made a difference to the outcome of his case.

## 7.

Reviewing the admission of post-autopsy photographs in State's Exhibits 43, 45, and 48 for plain error only, we find no error. *See Hogan*, 2006 OK CR 19, ¶ 38, 139 P.3d at 923 (explaining elements of plain error). These photographs focused on close up shots of the victim's fatal brain injuries and the photos were more probative than prejudicial in showing these injuries that

were primarily visible only inside the child's skull. The photographs corroborated the medical experts' testimony and refuted Rivera's claim of accident.

While the probative value of the post-autopsy photographs in State's Exhibits 41 and 52 was substantially outweighed by the danger of unfair prejudice due to their shocking nature and tendency to focus on the handiwork of the medical examiner, rather than the defendant, we find the properly admitted evidence against Rivera was so convincing that it cannot be said any error stemming from the admission of these photos affected the guilty verdict in this case. *See Harmon,* 2011 OK CR 6, ¶¶ 32-33, 248 P.3d at 933-34. Thus, any error was harmless beyond a reasonable doubt and requires no relief.

### 8.

Rivera's request for an order *nunc pro tunc* to correct the district court's Journal Entry concerning the court's pronouncement of sentence constitutes a request for extraordinary relief. *See* Rule 10.1(A), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2014). If Rivera believes he is entitled to issuance of an order *nunc pro tunc,* a proper request for such an order should be made directly to the District Court, prior to seeking any redress through this Court. *See Grimes v. State,* 2011 OK CR 16, ¶ 21, 251 P.3d 749, 755. "This Court will entertain extraordinary requests for relief only when a petitioner has sought and been denied relief in the District Court." *Id.* Absent a determination by the District Court, we will not assume jurisdiction of

an extraordinary writ. The request for issuance of an order *nunc pro tunc* is **DENIED**.

### DECISION

The Judgment and Sentence of the district court is **AFFIRMED**. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2014), the **MANDATE** is **ORDERED** issued upon delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY
THE HONORABLE RICHARD W. KIRBY, ASSOCIATE DISTRICT JUDGE

**APPEARANCES AT TRIAL**
MICHAEL JOHNSON
CESAR ARMENTA
4101 N. CLASSEN, SUITE A
OKLAHOMA CITY, OK 73118
ATTORNEYS FOR DEFENDANT

SUANNE CARLSON
JULIA HARTNELL
ASSISTANT DISTRICT ATTORNEYS
5905 N. CLASSEN COURT
OKLAHOMA CITY, OK 73118
ATTORNEYS FOR STATE

**APPEARANCES ON APPEAL**
KATRINA CONRAD-LEGLER
P. O. BOX 926
NORMAN, OK 73070
ATTORNEY FOR APPELLANT

E. SCOTT PRUITT
OKLAHOMA ATTORNEY GENERAL
DONALD D. SELF
ASSISTANT ATTORNEY GENERAL
313 N.E. 21ST STREET
OKLAHOMA CITY, OK 73105
ATTORNEYS FOR APPELLEE

OPINION BY: A. JOHNSON, J.
LEWIS, P.J.: Concur in Results
SMITH, V.P.J.: Concur
LUMPKIN, J.: Concur
C. JOHNSON, J.: Concur

RA

7

