IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JESSE WILLIAM HOLLAND, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 19-CV-0246-GKF-FHM |
| | ) | |
| SCOTT CROW,[1] | ) | |
| | ) | |
| Respondent. | ) | |

**RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS**

The Attorney General of the State of Oklahoma, Mike Hunter, appearing on behalf of the above-named Respondent, in response to the Petition for Writ of Habeas Corpus on file herein shows the Court as follows:

1.     Petitioner, Jesse William Holland, an inmate in the custody of Lawton Correctional Facility, appearing *pro se*, has filed with this Court an Amended Petition and Brief in Support seeking federal habeas corpus relief. Docs. 9, 10.[2]

2.     Petitioner is currently incarcerated pursuant to a judgment and sentence entered in the District Court of Tulsa County, Case No. CF-2016-5318, for the crimes of Trafficking in Illegal Drugs (Methamphetamine) (Count I), Acquiring Proceeds from Drug Activity (Count II), Possession of Controlled Drugs Without Tax Stamp (Count III), Falsely Personating Another to Create Liability (Count IV), and Obstructing An Officer (Count V). Exhibit "1," Summary

---

[1] Upon former Director Joe Allbaugh's resignation as effective June 12, 2019, Scott Crow was appointed as Interim Director and should be substituted as Respondent pursuant to Fed. R. Civ. P. 25(d).

[2] Petitioner's original Petition was found deficient, and Petitioner was directed by this Court to file an Amended Petition. Doc. 8. The Amended Petition superseded the original Petition, which was declared moot by this Court.

Opinion. Petitioner was convicted after two or more prior felony convictions. Ex. 1, at 1. Petitioner was sentenced to fifty-one (51) years imprisonment and a $25,000 fine on Count I, twelve (12) years imprisonment on Count II, four (4) years imprisonment and a $1,000 fine on Count III, ten (10) years imprisonment and a $1,000 fine on Count IV, and one (1) year in county jail on Count V. Ex. 1, at 1-2. The trial court ordered Petitioner's sentences in Counts I-IV to run consecutively, and ordered Count V to run concurrently with Count IV. Ex. 1, at 2.

3.      Petitioner filed a direct appeal of his convictions and sentences in Oklahoma Court of Criminal Appeals Case No. F-2017-638. Ex. 1; Exhibit "2," Brief of Appellant; Exhibit "3," Brief of Appellee. Contemporaneous with his direct appeal brief, Petitioner filed an Application to Supplement Appeal Record or in the Alternative Remand for Evidentiary Hearing on Sixth Amendment Claims, which will be referred to as Exhibit "4." The Oklahoma Court of Criminal Appeals (hereinafter "OCCA") affirmed the judgment and sentence in a Summary Opinion on September 27, 2018. Ex. 1.

4.      Petitioner did not file an application for post-conviction relief.

5.      The instant habeas Petition is timely filed.

6.      Petitioner has exhausted his state court remedies in each of the grounds raised in the instant habeas Petition.

7.      The state court addressed the merits of Petitioner's claims. Pursuant to *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011), when a claim is considered on the merits, review under 28 U.S.C. § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181-86. This holding is driven by the purpose of Section 2254, which is to leave primary responsibility for review of state court convictions with the state courts. *Id.* at 182. Furthermore, as will be shown, Petitioner fails to show that the OCCA's

adjudication of his claims resulted in unreasonable determinations of law or fact under 28 U.S.C.

§ 2254(d), and thus, he is not entitled to an evidentiary hearing or any other relief. *See id.* at 181-

86; *Jones v. Warrior*, 805 F.3d 1213, 1222 (10th Cir. 2015).

8.      Respondent has attached as exhibits the relevant documents necessary for an

adjudication of this matter. The one (1) volume Original record for Tulsa County Case No. CF-

2016-5318, the transcript of the preliminary hearing held on October 31, 2016, the two (2) volume

transcript of the jury trial held on June 6-7, 2017, the transcript of the sentencing proceeding held

on June 16, 2017, and the trial exhibits, are all available, and Respondent is filing these records

simultaneously with this Response. Relevant citations to pages of the trial transcript will be

referred to as Exhibit "5." Relevant citations to portions of the original record will be referred to

as Exhibit "6."

## STATEMENT OF THE FACTS

This case arose from a routine traffic stop of a vehicle in which Petitioner was a passenger.

On September 29, 2016, Officer Wesley Anderson with the Tulsa Police Department was

patrolling in the area of Admiral and North Harvard in Tulsa, Oklahoma. Ex. 5, Trial Transcript

Vol. I, pages 122-23. At approximately 5:13 P.M. on that evening, Officer Anderson observed a

red Mercury Cougar with a large crack in the windshield traveling southbound on Harvard. Ex. 5,

Trial Transcript Vol. I, pages 123-24. The windshield crack obscured the driver's view. The

vehicle pulled into a QuikTrip gas station at the corner of Admiral and Harvard, and Officer

Anderson pulled into the parking lot behind that vehicle. Ex. 5, Trial Transcript Vol. I, pages 123-

24. As he did so, Officer Anderson ran the vehicle's tag, and discovered that the tag checked to

3

another vehicle, a Ford. Ex. 5, Trial Transcript Vol. I, pages 124-25.[3] The vehicle's female driver immediately hopped out of the vehicle, and Officer Anderson exited his patrol vehicle to approach her. Ex. 5, Trial Transcript Vol. I, page 125. Officer Anderson began asking her a few basic questions, and escorted her back to her car, which he had her sit back inside. Ex. 5, Trial Transcript Vol. I, page 126. As he did so, Officer Anderson noticed Petitioner was sitting in the passenger seat, and appeared to be "very nervous." Ex. 5, Trial Transcript Vol. I, page 126. Petitioner was physically shaking, and was pinching at his right front pocket, attempting to move something around. Ex. 5, Trial Transcript Vol. I, page 127. Petitioner also attempted to reach under the seat, and Officer Anderson ordered him not to do so. Ex. 5, Trial Transcript Vol. I, page 127. Officer Anderson observed the car's radio had wires hanging out, and the ignition appeared to have been tampered with. Ex. 5, Trial Transcript Vol. I, page 127. Neither the driver nor Petitioner had any form of identification. Petitioner provided the name "Jeremy Holland" and a date of birth. Ex. 5, Trial Transcript Vol. I, pages 127, 138. Officer Anderson returned to his patrol vehicle to check on the names Petitioner and the driver provided.

Meanwhile, other officers began to arrive on scene. When neither provided name checked out, both the driver and Petitioner were asked to step out of the vehicle. Ex. 5, Trial Transcript Vol. I, page 129. Officer Dean Montgomery and Corporal Wyatt Poth with the Tulsa Police Department approached Petitioner's window, and observed Petitioner moving around and fidgeting inside the vehicle. Ex. 5, Trial Transcript Vol. I, pages 147-48, 174. As they opened the car door, Petitioner's hand dropped to the bottom of the door frame, where a large metal pipe was hidden. Ex. 5, Trial Transcript Vol. I, pages 149, 175. Petitioner stepped out of the vehicle, but

---

[3] Officer Anderson later discovered that he had entered the tag incorrectly, and the vehicle's tag was, in fact, properly registered to the vehicle stopped. Ex. 5, Trial Transcript Vol. I, pages 124-25.

was argumentative and began to tense up, resisting the officer's directives. Ex. 5, Trial Transcript Vol. I, pages 130, 150, 175. In fact, Petitioner was moving and twisting so much that he was unable to be patted down, even after the officers cuffed him. Ex. 5, Trial Transcript Vol. I, pages 150-51, 176. Eventually, Officer Montgomery brought Petitioner to the ground, and Petitioner finally calmed down after Corporal Poth threatened to subdue Petitioner with a taser. Ex. 5, Trial Transcript Vol. I, pages 131, 151, 177. At that point, Officer Montgomery placed Petitioner in custody for obstruction, and began to pat down Petitioner incident to arrest for weapons and contraband. Ex. 5, Trial Transcript Vol. I, page 177.

In Petitioner's front left pocket, Officer Montgomery found a large sum of cash, and in Petitioner's front right pocket was found a plastic bag with a large amount of crystal-like substance. Ex. 5, Trial Transcript Vol. I, pages 131, 178-79. The cash totaled approximately $1,190. Ex. 5, Trial Transcript Vol. I, page 178. The crystalline substance field tested positive for methamphetamine. Ex. 5, Trial Transcript Vol. I, page 181. That substance had a weight exceeding twenty (20) grams, and had no tax stamp on the bag. Ex. 5, Trial Transcript Vol. I, pages 134-35, 187-88. Officer Montgomery noted that methamphetamine of that quantity was likely meant for distribution, and was valued at "over $4,000." Ex. 5, Trial Transcript Vol. I, pages 183-84, 197.

During Petitioner's struggle with the officers, the driver called Petitioner "Jesse," and Officer Anderson was able to ascertain Petitioner's true identity. Ex. 5, Trial Transcript Vol. I, page 135. Petitioner's true name and date of birth were different than the ones Petitioner originally provided to the officer. Ex. 5, Trial Transcript Vol. I, page 138. The officers searched the vehicle, and found no drug paraphernalia; no spoon, smoking device, syringes, or baggies were ever recovered. Ex. 5, Trial Transcript Vol. I, pages 182-83. The officers did, however, locate a total of four (4) cell phones from inside the car, which Officer Montgomery noted was consistent with the

distribution of illegal drugs. Ex. 5, Trial Transcript Vol. I, pages 136-37, 188. Officer Montgomery transported and booked Petitioner into the jail. During the booking process, Officer Montgomery asked Petitioner a series of basic, routine identification questions, including his name, date of birth, address, Social Security Number, and place of employment. Ex. 5, Trial Transcript Vol. I, pages 189-91. Petitioner informed Officer Montgomery that he was unemployed, which Officer Montgomery found significant given the large sum of cash Petitioner was found with at the time of arrest. Ex. 5, Trial Transcript Vol. I, pages 191-92.

Jared Lieser, the forensic technical leader of chemistry at the Tulsa Police Department forensic laboratory, testified at trial that he received and analyzed the crystalline substance submitted in this case. Ex. 5, Trial Transcript Vol. I, pages 206-07. Lab analysis confirmed that the substance was methamphetamine, and weighed a total of 51.00 grams. Ex. 5, Trial Transcript Vol. I, page 207.

Additional facts will be presented below as they become relevant.

## **STANDARD OF REVIEW**

Petitioner raises seven (7) grounds for relief in the instant habeas petition.[4] Each of these issues were raised on direct appeal, and are as follows:

> Ground One: Prosecutorial misconduct deprived appellant of his due process to a fair trial.
>
> Ground Two: The court plainly erred by allowing officer testimony about appellant's unwarned, incriminating custodial statement. The statement was key to Mr. Holland's Count 2 conviction.

---

[4] As a threshold matter, it should be noted that Petitioner's Brief in Support of his Petition for Writ of Habeas Corpus appears to be a copy of the Brief of Appellant previously filed on direct appeal. Doc. 10; Ex. 2. Therefore, Respondent will construe Petitioner's brief as having re-urged the same propositions and arguments already brought forth on direct appeal, and will respond as such. *See Hall v. Bellmon*, 953 F.2d 1106, 1110 (10th Cir. 1991) ("A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.").

Ground Three: Trial counsel failed to subject the state's case to meaningful adversarial testing. Appellant's constitutional right to counsel was compromised to the extent that prejudice should be presumed.

Ground Four: Alternatively, trial counsel's unreasonable errors prejudiced appellant and precluded effective assistance.

Ground Five: The trial court abused its discretion when it ordered appellant's sentences to be served consecutively.

Ground Six: The court lacked jurisdiction to impose the Count 2-4 sentences based on the convictions reflected [in the] judgment and sentence documents.

Ground Seven: Cumulative errors deprived appellant of a fair proceeding and a reliable outcome.

Because each of these seven claims were raised on direct appeal and decided on the merits by the OCCA, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides the governing standard of review. *Mitchell v. Gibson*, 262 F.3d 1036, 1045 (10th Cir. 2001). Under the AEDPA, a federal court may grant habeas relief with respect to a claim adjudicated on the merits by a state court only if the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For a state court to adjudicate a claim on the merits and receive deference, it is not necessary that the court provide an opinion explaining its reasoning. *Harrington v. Richter*, 562 U.S. 86, 98 (2011). Rather, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the

merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99. Further, "a state court need not cite or even be aware of [the Supreme Court's] cases under § 2254(d)." *Id.* at 98. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* This same *Richter* presumption applies when a state court opinion addresses some but not all of a defendant's claims. *Johnson v. Williams*, 568 U.S. 289, 298 (2013). Thus, in such a case, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits . . . ." *Id.* at 301; *see also Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (reasoning that the AEDPA's deferential standard of review applies when the OCCA denies a claim on the merits, noting that "a state court reaches a decision 'on the merits' even when it fails either to mention the federal basis for the claim or cite any state or federal law in support of its conclusion").

The threshold question for this Court on habeas review is whether Petitioner seeks to apply a rule of law that was "clearly established" by the Supreme Court at the time his conviction became final. *See House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008). "[C]learly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*." *Id.* Where there is no clearly established federal law, that ends this Court's inquiry under § 2254(d)(1). *See id.* ("The absence of clearly established federal law is dispositive under § 2254(d)(1).").

If a clearly established rule of federal law is implicated, however, then this Court must decide whether the state court's decision was contrary to, or an unreasonable application of, that clearly established rule of federal law. *See id.* A state court decision is contrary to clearly established federal law as determined by the Supreme Court when it applies a rule that contradicts

the governing law set forth in the Supreme Court's cases or decides a case differently than the Supreme Court has on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Mitchell*, 262 F.3d at 1045.

A state court decision involves an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States when the state court correctly identifies the governing legal principle but applies it to the facts of the particular case in an unreasonable manner. *Valdez v. Bravo*, 373 F.3d 1093, 1096 (10th Cir. 2004); *Gilbert v. Mullin*, 302 F.3d 1166, 1171 (10th Cir. 2002). The Supreme Court has explained as follows regarding the "unreasonable application" clause:

> In § 2254(d)(1), Congress specifically used the word "unreasonable," and not a term like "erroneous" or "incorrect." Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Williams*, 529 U.S. at 411.

The Supreme Court has further held that "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103; *see also Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunctio[n]' for which federal habeas relief is the remedy."). In other words, "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). The Tenth Circuit has stated that federal courts

> may issue the writ only when the petitioner shows there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with the Supreme Court's precedents. Thus, even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable. If this standard is difficult to meet—and it is—that is because it was meant to be. Indeed, AEDPA stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Accordingly, we will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy.

*Frost v. Pryor*, 749 F.3d 1212, 1223 (10th Cir. 2014) (internal quotation marks and citations omitted, alterations adopted). The *Richter* standard applies to all three AEDPA inquiries. *See Dunn v. Madison*, 138 S. Ct. 9, 12 (2017) ("[T]he state court's determinations of law and fact were not 'so lacking in justification' as to give rise to error 'beyond any possibility for fairminded disagreement.'"); *White v. Woodall*, 572 U.S. 415, 427 (2014) ("[R]elief is available under . . . no 'fairminded disagreement' on the question."). And Section 2254 of the AEDPA applies even when there has been a summary denial. *Richter*, 562 U.S. at 99; *see also Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999) (holding that a summary decision is an "adjudication on the merits" for purposes of Section 2254(d) where the decision was reached on substantive grounds).

In addition, state court determinations of fact "shall be presumed correct" unless Petitioner rebuts the presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Thus, a state court's decision cannot be said to be based on an unreasonable determination of the facts until a petitioner has shown by clear and convincing evidence that the state court's factual determination was incorrect. *Black v. Workman*, 682 F.3d 880, 896-97 (10th Cir. 2012) (refusing to grant relief under § 2254(d)(2) because the petitioner had failed to present clear and convincing evidence to rebut the state court's factual finding); *accord Ben-Yisrayl v. Buss*, 540 F.3d 542, 549 (7th Cir. 2008) (holding § 2254(e)(1) "provides the mechanism for proving unreasonableness" under 2254(d)(2)); *Trussell v. Bowersox*, 447 F.3d 588, 591 (8th Cir. 2006) (requiring the petitioner to

satisfy § 2254(e)(1) in order to obtain relief under § 2254(d)(2)); *but see Wood v. Allen*, 558 U.S. 290, 300-01 (2010) (declining to decide the relationship between § 2254(d)(2) and § 2254(e)(1)); *Grant v. Trammell*, 727 F.3d 1006, 1024 n. 6 (10th Cir. 2013) (same); *Taylor v. Maddox*, 366 F.3d 992, 999-1000 (9th Cir. 2004) (holding that § 2254(d)(2) applies to challenges based solely on the state court record whereas § 2254(e)(1) applies when the petitioner relies upon new evidence).

Bearing in mind the applicable standard of review derived from the AEDPA, Respondent addresses Petitioner's seven (7) grounds for relief below.

## ARGUMENT AND AUTHORITY

### GROUND I

**THE OCCA'S REJECTION OF PETITIONER'S PROSECUTORIAL ERROR CLAIM WAS NEITHER CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, NOR BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS IN LIGHT OF THE STATE COURT RECORD.**

In his first ground for relief, Petitioner complains of various instances of alleged prosecutorial error, contending that such errors violated his right to due process and a fair trial. Doc. 9, at 6-7; Doc. 10, at 13-24. The OCCA reasonably rejected this claim. Accordingly, Petitioner's request for a writ of habeas corpus must be denied.

### A.    Background

Petitioner raised this claim on direct appeal, citing six instances of alleged prosecutorial error, Ex. 2, pages 7-18, and the OCCA denied relief on the merits:

> In Proposition One, Appellant alleges various instances of prosecutorial misconduct deprived him of a fair trial. This Court's review is well established. "Prosecutorial comments, like jury instructions, are not reviewed in artificial isolation, but must be judged in the context of the entire record." *Romano v. State*, 1995 OK CR 74, ¶ 54, 909 P.2d 92, 116. "Allegations of prosecutorial misconduct do not warrant reversal of a conviction unless the cumulative effect was such [as]

to deprive the defendant of a fair trial." *Daniels v. State*, 2016 OK CR 2, ¶ 13, 369 P.3d 381, 385 (quotations and citations omitted).

Appellant argues that the prosecutor improperly emphasized his own military background and endeared himself to the potential jurors during *voir dire*. Appellant did not challenge the prosecutor's remarks at the time of trial. Therefore, we find that he has waived appellate review of his claim for all but plain error. *Malone v. State*, 2013 OK CR 1, ¶ 40, 293 P.3d 198, 211-212. We review Appellant's claim pursuant to the test set forth in *Simpson v. State*, 1994 OK CR 40, 876 P.2d 690 and determine whether he has shown an actual error, which is plain or obvious, and which affects his substantial rights. *Id.*, 2013 OK CR 1, ¶ 41, 293 P.3d 198, 211-212. This Court will only correct plain error if the error seriously affects the fairness, integrity or public reputation of the judicial proceedings or otherwise represents a miscarriage of justice. *Id.*; *Hogan v. State*, 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923.

While the prosecutor's references to his own military service and acknowledgement of a fellow service member in the present case may have endeared the prosecutor to the jury to a certain extent, the references were not the type of comments which this Court has identified as flagrant attempts by the prosecutor to align himself with the jury. *Davis v. State*, 1999 OK CR 16, ¶ 35, 980 P.2d 1111, 1120; *Massingale v. State*, 1986 OK CR 6, ¶ 12, 713 P.2d 15, 17. Therefore, we conclude that Appellant has not shown that error, plain or otherwise, occurred. *See Mitchell v. State*, 2010 OK CR 14, ¶ 11, 235 P.3d 640, 646 ("The purpose of *voir dire* examination is to ascertain whether there are grounds to challenge prospective jurors for either actual or implied bias and to facilitate the intelligent exercise of peremptory challenges.").

Appellant further argues that the prosecutor deprived him of a fair trial when he sought to introduce an officer's opinion that Appellant was a drug dealer. However, the trial court sustained Appellant's objection to this question and the officer's answer curing any error. *Pullen v. State*, 2016 OK CR 18, ¶ 13, 387 P.3d 922, 927; *Slaughter v. State*, 1997 OK CR 78, ¶ 110, 950 P.2d 839, 869.

Appellant argues that the prosecutor disparaged or undermined the presumption of innocence. This Court has recognized that comments suggesting that the presumption of innocence was inapplicable or had been destroyed are inappropriate. *Underwood v. State*, 2011 OK CR 12, ¶ 74, 252 P.3d 221, 249; *Miller v. State*, 1992 OK CR 77, ¶¶ 3-5, 843 P.2d 389, 390. The record in the present case reveals that the prosecutor gave short shrift to the first stage of the trial, contended that the case was really about sentencing and told the jury that their decision should not take long. The trial court sustained Appellant's objection and admonished the jurors: "Ladies and gentlemen, as I told you yesterday, the amount of time you deliberate is entirely up to you. You may take as long as you [ ] like." This cured any error. *Pullen*, 2016 OK CR 18, ¶ 13, 387 P.3d at 927; *Williams v. State*, 2001 OK CR 9, ¶ 20, 22 P.3d 702, 711.

Appellant further asserts that the prosecutor's statement that defense counsel "doesn't have much to work with" implied that Appellant had to prove his innocence and impermissibly shifted the burden of proof. Prosecutorial comments which suggest that a criminal defendant must prove his innocence are undoubtedly improper. *See Jordan v. State*, 1988 OK CR 115, ¶ 88, 756 P.2d 8, 9. In contrast, "this Court has routinely held it to be proper comment for the prosecutor to note that the State's evidence was not controverted." *Robinson v. State*, 1995 OK CR 25, ¶ 22, 900 P.2d 389, 398. Since the prosecutor in the present case never argued that Appellant had failed to produce evidence or to prove something that he was required to prove, we find that the prosecutor's comment did not constitute an attempt to shift the burden of proof. *Roy v. State*, 2006 OK CR 47, ¶ 44, 152 P.3d 217, 232.

Appellant further argues that the prosecutor's request that the jury send Appellant a message and assess him either the maximum punishment of life or 1,000 years improperly inflamed the jury. He further asserts that the prosecutor improperly sought sympathy for the potential victims of his drug sales. Appellant concedes that he waived appellate review of these claims for all but plain error when he failed to object to the prosecutor's comments at trial. Therefore, we review the claims for plain error under the test set forth above and determine whether he has shown an actual error, which is plain or obvious, and which affects his substantial rights. *Malone*, 2013 OK CR 1, ¶ 41, 293 P.3d 198, 212-212.

Appellant has not shown that the prosecutor's request that the jury "send a message" to Appellant constituted error. This Court has clearly recognized that the prosecutor is permitted to make a sentencing recommendation to the jury based upon the facts of the case. *Terrell v. State*, 2018 OK CR 22, ¶¶ 7-8, __ P.3d __; *Pullen*, 2016 OK CR 18, ¶ 14, 387 P.3d at 927. The prosecutor's remarks in the present case were properly focused on the specific facts of the case. The prosecutor did not suggest that the jury should either punish Appellant for larger societal problems or "send a message to the broader public about the case." *Mathis v. State*, 2012 OK CR 1, ¶ 27, 271 P.3d 67, 77 (prosecutor's suggestion that jury tell defendant "we are tired of seeing him here" did not constitute impermissible "send a message to the broader public" argument.); *Logsdon v. State*, 2010 OK CR 7, ¶ 38, 231 P.3d 1156, 1169 (comments about deterring other persons who may commit crime, speaking about the crime rate or urging the jury to make an example out of the defendant are improper); *McElmurry v. State*, 2002 OK CR 40, ¶ 151, 60 P.3d 4, 34 (recognizing impermissible "societal alarm" argument implies that the jury should "make an example" out of the defendant on trial to deter other potential criminals). Thus, we find that Appellant has not shown that error, plain or otherwise, occurred.

We reach a different conclusion as to Appellant's claim that the prosecutor improperly sought sympathy for his hypothetical victims. This Court has previously determined that it is error to comment on the possibility that a noncapital defendant may commit crimes in the future. *Brewer v. State*, 1982 OK CR 128, ¶ 8, 650 P.2d

13

54, 58. We have explicitly disapproved of the rank and inflammatory speculation that a criminal defendant intended to sell a controlled dangerous substance to high school students. *Skelly v. State*, 1994 OK CR 55, ¶¶ 30-31, 880 P.2d 401, 407. As there was not any evidence supporting the inference, we conclude that the prosecutor's suggestion in the present case that the lives of 204 people would have been destroyed if the officer had not caught Appellant that day was inappropriate. Therefore, we conclude that Appellant has shown an actual error that is plain or obvious.

However, we find that Appellant has not shown that this error affected his substantial rights. *Simpson*, 1994 OK CR 40, ¶ 12, 876 P.2d at 695 (Errors that affect substantial rights are those which go to the foundation of the case, or which take from a defendant a right which was essential to his defense.). It is apparent that the prosecutor's argument did not affect the jury's assessment of punishment. The jury refused to follow the prosecutor's recommendation and assessed reasonable punishments for the charged offenses. The evidence readily supported the jury's determination. Based upon the record, we find that the prosecutor's improper comments did not render the sentencing stage of Appellant's trial fundamentally unfair. *Malone*, 2013 OK CR 1, ¶ 43, 293 P.3d at 212 (Improper comments by prosecutor affect defendant's substantial rights where comments so infected the trial that it was rendered fundamentally unfair." *Malone*, 2013 OK CR 1, ¶ 43, 293 P.3d at 212. [sic]

Appellant further argues that the prosecutor made unmistakable references to pardon, parole and suspended sentences during the second stage of the trial. He concedes that he waived appellate review of this claim for all but plain error when he failed to raise this objection at the time of trial. Therefore, we review his claim for plain error under the test set forth above and determine whether he has shown an actual error, which is plain or obvious, and which affects his substantial rights. *Malone*, 2013 OK CR 1, ¶ 41, 293 P.3d 198, 211-212.

The longstanding rule is that evidence, argument or instructions which encourage jurors to speculate about pardon or parole are improper. *Terrell*, 2018 OK CR 22, ¶ 5, __ P.3d at __; *Stewart v. State*, 2016 OK CR 9, ¶ 14, 372 P.3d 508, 511. We review to determine whether, in light of the totality of the circumstances, the evidence, argument or instructions made such an unmistakable reference to pardon or parole or earned credits as to result in prejudice to the defendant. *Stewart*, 2016 OK CR 9, ¶ 14, 372 P.3d at 511.

The prosecution introduced a Department of Correction's [sic] Pen Pack reflecting that Appellant had six prior felony convictions in the present case. The exhibit established that Appellant was sentenced on December 2, 2010, to two separate terms of imprisonment for twenty years with all but the first eight years suspended in District Court of Ottawa County Case Number CF-2010-348. On August 23, 2003, he was sentenced to imprisonment for two years in District Court of Pottawatomie County Case Number CF-2003-125. On January 2, 2002, he received

three concurrent terms of imprisonment. He was sentenced to three years in District Court of Pottawatomie County Case Number CF-2001-331, three years in District Court of Pottawatomie County Case Number CF-2001-268, and one year in District Court of Pottawatomie County Case Number CF-2001-266. In closing argument, the prosecution advised the jury that they "need[ed] to consider" that Appellant's "prior six felony convictions . . . carry 49 years of punishment handed down to him and he's still here." In the rebuttal portion of closing argument, the prosecution argued that there were no "extra freebies" after the age of 18. He further commented: "Well, you notice he has already had a couple of 20 years terms back in 2010. He's right there."

We find that the prosecutor's comments were improper in the present case. The prosecution is permitted to discuss the relevant proof of prior conviction in closing argument including any evidence that a defendant previously received probation, suspension, or deferral of a sentence and any acceleration or revocation of such a sentence. *Terrell*, 2018 OK CR 22, ¶ 5, __ P.3d at __. This Court has found that no error occurred where the State merely mentions the sentences given in the prior convictions. *Massingale v. State*, 1986 OK CR 6, ¶ 8, 713 P.2d 15, 16. However, evidence or argument concerning the actual length of time served for a prior conviction constitutes an unmistakable reference to the pardon and parole system. *Harney v. State*, 2011 OK CR 10, ¶ 24, 256 P.3d 1002, 1007. Similarly, argument invoking sympathy, sentiment, or prejudice is improper. *Terrell*, 2018 OK CR 22, ¶ 8, __ P.3d at __.

The prosecutor's statements in the present case were misleading. Appellant had neither been sentenced to serve two separate twenty year terms of imprisonment nor forty-nine years of time to do but had only received 21 years to serve based upon the concurrent sentences and suspended portions. Because the prosecutors' comments, "he's still here" and "He's right here," specifically drew attention to the actual length of time Appellant had served on the sentences, we find that the prosecutors made unmistakable references to pardon and parole. Therefore, we find that Appellant has shown the existence of an actual error that is plain or obvious.

However, we, again, conclude that Appellant has not shown that this error affected his substantial rights. *Simpson*, 1994 OK CR 40, ¶ 12, 876 P.2d at 695. As discussed above, the evidence readily supported the jury's assessment of punishment. Based upon the record, we find that the prosecutors' improper comments did not affect Appellant's substantial rights because they did not render his sentencing trial fundamentally unfair.[] *Malone*, 2013 OK CR 1, ¶ 43, 293 P.3d at 212.

Appellant further argues that the prosecutor committed misconduct when he informed the jury that if they found that Appellant had two or more felony convictions on one charge then it would be "asinine" to render a different verdict on the other felony counts and intimated that the jury should be offended at the suggestion that they pretend to not know what they did on the other counts. We note that this was in response to defense counsel's argument suggesting that the

jury could render different verdicts on each of the counts as to the existence and number of prior felony convictions. We further note that the trial court sustained Appellant's objection to the prosecutor's comments. The trial court's action cured any error arising from the prosecutor's comment. *Pullen*, 2016 OK CR 18, ¶ 13, 387 P.3d at 927; *Slaughter*, 1997 OK CR 78, ¶ 110, 950 P.2d at 869.

Appellant similarly challenges the prosecutor's comments suggesting that there was no luxury for the jurors to pretend that evidence does not exist because their verdict has to speak the truth. Appellant concedes that he waived appellate review of this claim for all but plain error when he failed to raise this objection at the time of trial. Therefore, we review his claim for plain error under the test set forth above and determine whether he has shown an actual error, which is plain or obvious, and which affects his substantial rights. *Malone*, 2013 OK CR 1, ¶ 41, 293 P.3d 198, 211-212. Though inartfully stated, the prosecutor's argument reiterated the jury's duty to follow their oath and the law and, thus, fell within the wide latitude of argument afforded the parties in closing argument. Accordingly, we conclude that Appellant has not shown that error, plain or otherwise, occurred. *Pullen*, 2016 OK CR 18, ¶ 13, 387 P.3d at 927 ("Both parties have wide latitude in closing argument to argue the evidence and reasonable inferences from it."); *Jones v. State*, 2009 OK CR 1, ¶ 73, 201 P.3d 869, 888 (finding comments which reiterate jurors' promise to follow their oath and the law do not misstate the law).

Reviewing the entire record in the present case, the cumulative effect of the prosecutor's comments did not deprive Appellant of a fair trial. *Malone*, 2013 OK CR 1, ¶ 43, 293 P.3d at 212. The evidence of Appellant's guilt was particularly strong. His sentences were driven by the fact of his several prior felony convictions. Thus, we find that prosecutorial misconduct did not deprive Appellant of a fundamentally fair trial. Proposition One is denied.

Ex. 1, at 3-15.

**B.     Argument and Authority**

The controlling standard for measuring alleged prosecutorial error was established by the

Supreme Court in *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974). To prevail on a claim based

on improper remarks by the prosecutor, a petitioner must show that the remarks "so infected the

trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416

U.S. at 643-44; *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (reaffirming *Donnelly*'s

holding that "[t]he relevant question" in addressing a prosecutorial error claim "is whether the

prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a

denial of due process" (internal quotation marks omitted)). A prosecutor's remarks are not to be viewed in isolation, but should be taken in the context of the entire trial. *Donnelly*, 416 U.S. at 645; *see also Fero v. Kerby*, 39 F.3d 1462, 1474 (10th Cir. 1994) ("To view the prosecutor's statements in context, we first look at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution."). The mere fact that a prosecutor may have made some inappropriate comments does not warrant relief, so long as the petitioner received a fair trial. *Matthews v. Workman*, 577 F.3d 1175, 1186 (10th Cir. 2009). Indeed, a proceeding is rendered fundamentally unfair under the Due Process Clause only if it is "shocking to the universal sense of justice." *United States v. Russell*, 411 U.S. 423, 432 (1973). On this issue, Petitioner's task is made even more difficult by application of the "ADEPA's forgiving lens." *See Matthews*, 577 F.3d at 1186.

Petitioner has not shown that the OCCA's decision on this claim was contrary to, or an unreasonable application of, clearly established Supreme Court law or based on an unreasonable determination of fact. *See* 28 U.S.C. § 2254(d). As he did on direct appeal, Petitioner has alleged that six separate instances of prosecutorial error prejudiced his right to a fair trial. Doc. 10, at 13-24; Ex. 2, pages 7-18. As shown below, because these alleged errors, when taken as a whole, did not "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process," *Donnelly*, 416 U.S. at 643-44, the OCCA's refusal to grant relief was not contrary to, or an unreasonable application of, clearly established federal law. *See Matthews*, 577 F.3d at 1186-89.

1. **Allegedly Eliciting Sympathy by Emphasizing the Prosecutor's Military Background During *Voir Dire***

First, Petitioner complains of the prosecutor's remarks made during *voir dire*, wherein the prosecutor allegedly endeared himself to the venire panel by mentioning his background in the

Army. Doc. 10, at 13-14. At the outset of *voir dire*, the prosecutor introduced himself and his co-counsel. Ex. 5, Trial Transcript Vol. I, page 49.[5] The prosecutor explained that he was originally from Mississippi, went to Mississippi State, and is an "SEC guy . . . don't hold that against me," in an effort to build a rapport with the panel. Ex. 5, Trial Transcript Vol. I, page 49. The prosecutor then noted that he joined the Army and spent several years there, was an infantry officer, and did "a few tours in Iraq" before winding up in Oklahoma and going to law school. Ex. 5, Trial Transcript Vol. I, page 49. The prosecutor concluded the introduction by remarking: "[D]espite the fact that neither one of us are from here, we both take a lot of pride in the fact that we love this place. This is our home now. And so we are very proud to represent the State of Oklahoma." Ex. 5, Trial Transcript Vol. I, page 49. The prosecutor later referred to a prospective juror who was retired from the Army as his "soldier buddy," before asking him a question. Ex. 5, Trial Transcript Vol. I, page 63. That prospective juror was ultimately struck from the jury panel. Ex. 5, Trial Transcript Vol. I, page 104. The prosecutor also told a brief story involving pencils and a pen his son gave to him before his deployment to Iraq, in order to demonstrate for the panel the importance of applying the law dispassionately and without sentiment. Ex. 5, Trial Transcript Vol. I, pages 71-73.

As a general rule, the purpose of *voir dire* is to allow the parties to select an impartial jury and to aid counsel's use of peremptory challenges. *Mu'Min v. Virginia*, 500 U.S. 415, 431 (1991). Review of *voir dire* conducted at the trial court is restricted to "enforcing the commands of the United States Constitution." *Neeley v. Newton*, 149 F.3d 1074, 1083 (10th Cir. 1998) (citing *Mu'Min*, 500 U.S. at 422 (internal quotation marks omitted)).

---

[5] In fact, both the State and the defense introduced themselves to the venire panel. Defense counsel, after the State had passed the panel for cause, also introduced herself, and explained to the jury that she was born, raised, and schooled in Oklahoma. Ex. 5, Trial Transcript Vol. I, page 81.

The prosecutor's introductory remarks and his addressing a prospective juror (who was ultimately struck from the jury panel) as "soldier buddy" were intended only to build a rapport with the venire panel, and were not improper.[6] *Cf. Holland v. Patton*, No. 11-CV-277-GKF-FHM, 2014 WL 4924438, at *8 (N.D. Okla. Sept. 30, 2014) (unpublished)[7] (reflecting on trial counsel's introductory comments made to the jury regarding counsel's military background and schooling, noting that such comments were "designed to build rapport and develop a connection with a local jury" in evaluating an ineffective assistance of counsel claim), *reversed on other grounds by Holland v. Allbaugh*, 824 F.3d 1222 (10th Cir. 2016). Petitioner's reliance on *United States v. Warshak*, 631 F.3d 266, 303-04 (6th Cir. 2010) is misplaced. As a threshold matter, only Supreme Court precedent is dispositive in determining whether AEDPA deference applies to a state court decision. *See Grant v. Royal*, 886 F.3d 874, 945-46 (10th Cir. 2018) ("[W]e are reluctant to conclude that the OCCA's approach was unreasonable when there is no relevant guidance from the Supreme Court."). Moreover, the facts in *Warshak* are distinguishable. There, in summation, the prosecutor described his time on active duty in the JAG Corps, and referenced his familiarity with a famous Green Beret who starred in the movie Black Hawk Down. *Id.*, 631 F.3d at 303. The prosecutor also described the consequences of choices he made while "prosecuting the war on terror" during his time with JAG. *Id.* On appeal, the government conceded that such remarks were

---

[6] At the very least, this claim fails for lack of clearly established law. Respondent can locate no case, Supreme Court or otherwise, suggesting it is improper for a prosecutor to introduce himself to the potential jurors, even where the prosecutor's background might naturally serve to endear him to the potential jurors.

[7] This unpublished opinion, and any other unpublished federal opinion hereinafter referred to, is cited pursuant to the Federal Rules of Appellate Procedure and the Tenth Circuit Local Rules, which permit citation to unpublished decisions of federal courts. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(a).

improper. *Id.* The Sixth Circuit likewise found these remarks irrelevant to closing argument, and concluded that such comments by the prosecutor were inappropriate. *Id.*

Here, the prosecutor's references to his military service were abbreviated and made in brief introduction to the venire panel during *voir dire*. Unlike in *Warshak* where the prosecutor recounted in closing argument his personal acquaintance with a "quasi-famous" Special Forces colleague, made a reference to the film Black Hawk Down, and elaborated on his personal efforts with the JAG Corps during the war on terror, the prosecutor in the instant case sought merely to introduce himself to the jury and build a rapport during *voir dire*. *See id.*, 631 F.3d at 303-04. Because the purpose of *voir dire* is to allow both parties to pick an impartial jury and to provide an opportunity for the use of peremptory challenges, *Mu'Min*, 500 U.S. at 431, the prosecutor's opening comments to the venire were not improper.

Considering this issue, the OCCA's decision admitted that such remarks "may have endeared the prosecutor to the jury to a certain extent." Ex. 1, at 4. Nonetheless, the OCCA found that the prosecutor's personal references were not so flagrant as to constitute plain error. Ex. 1, at 4. This decision was a reasonable application of *Donnelley*, because these comments did not "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 643-44. Therefore, the OCCA's rejection of Petitioner's plain error claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of fact in light of the state court record. *See* 28 U.S.C. § 2254(d). Accordingly, habeas relief on this basis must be denied.

### 2. Allegedly Eliciting Improper Testimony from Officer Montgomery

Petitioner next claims the prosecutor elicited improper testimony from Officer Montgomery on redirect examination when the prosecutor asked whether Petitioner was a drug

dealer. Doc. 10, at 14-15; Ex. 5, Trial Transcript Vol. I, page 199. In context, Officer Montgomery had previously testified on direct examination about his training in drug interdiction, and how, in his experience, larger scale drug dealers generally have large sums of money and several cell phones, and lack any sort of paraphernalia for drug use. Ex. 5, Trial Transcript Vol. I, pages 167-69. On cross examination, the defense probed whether every methamphetamine user carried paraphernalia, and Officer Montgomery admitted that the absence of paraphernalia alone did not automatically mean the suspect was a drug dealer. Ex. 5, Trial Transcript Vol. I, pages 196-97. On redirect, the prosecutor referenced defense counsel's line of inquiry: "And then [defense counsel] asked you, have you ever—you know, when [defense counsel] was asking you about—kind of like all the people in the world, of all the cases, does every drug dealer have this? Do you remember that?" Ex. 5, Trial Transcript Vol. I, page 199. Officer Montgomery responded in the affirmative, and the prosecutor then asked whether Petitioner was a drug dealer. Ex. 5, Trial Transcript Vol. I, page 199. Officer Montgomery again answered in the affirmative, and the defense raised an objection on the basis that the question called for a legal conclusion. Ex. 5, Trial Transcript Vol. I, page 199. The trial court sustained the objection and ordered the jury to disregard Officer Montgomery's answer. Ex. 5, Trial Transcript Vol. I, page 199. The trial proceeded on without any further mention of this issue.

Petitioner claims that the prosecutor's question about whether Petitioner was a drug dealer elicited improper testimony when Officer Montgomery answered that question in the affirmative. Doc. 10, at 14-15. According to Petitioner, this question infringed on the jury's role as the sole and exclusive factfinder. Doc. 10, at 15. The OCCA rejected that argument, finding that because the trial court sustained Petitioner's objection, any error was cured. Ex. 1, at 5. The OCCA's denial of relief on this issue was reasonable, because the prosecutor's isolated question asked on redirect

21

did not "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 643-44; *see also Patton v. Mullin*, 425 F.3d 788, 800 (10th Cir. 2005) (recognizing that the OCCA's longstanding position that a trial court's admonition to the jury generally cures any error is not contrary to the standard established by federal law) (citing *Greer v. Miller*, 483 U.S. 756, 766 n. 8 (1987)). Even if the prosecutor's question was error,[8] that question was followed immediately by a sustained objection, and the trial court instructed the jury to disregard Officer Montgomery's answer. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (noting that a jury is presumed to follow its instructions); *cf. United States v. Caballero*, 277 F.3d 1235, 1245 (10th Cir. 2002) (finding no prejudice caused by alleged prosecutorial misconduct in prosecutor's elicitation of testimony regarding the appellant's personality and demeanor, "[r]egardless of the appropriateness of the questioning," particularly when those questions were unanswered, the trial court sustained the objections, and the questions were stricken by the court). As a whole, the OCCA's decision on this issue was not contrary to, or an unreasonable application of, clearly established federal law, nor was it unreasonable in light of the facts in the record. *See* 28 U.S.C. § 2254(d). Accordingly, Petitioner's request for habeas relief on this basis must be denied.

### 3. Allegedly Disparaging the Presumption of Innocence and Attempting to Shift the Burden of Proof

Third, Petitioner alleges the prosecutor undermined or disparaged the presumption of innocence by telling the jury in first-stage closing argument that their decision on Petitioner's guilt should not take long. Doc. 10, at 15-17. According to Petitioner, the prosecutor's closing remarks

---

[8] Notably, no clearly established Supreme Court law shows the question was improper. *Cf. Moses v. Payne*, 555 F.3d 742, 761 (9th Cir. 2009) (concluding no Supreme Court case "supports the general proposition that the Constitution is violated by the admission of expert testimony concerning an ultimate issue to be resolved by the trier of fact").

encouraged the jury to deliberate hastily and give "short shrift" to a finding of Petitioner's guilt. Doc. 10, at 15. In context, the prosecutor's closing statement gave a complete summation of the evidenced presented, and recommended the jury to return guilty verdicts on each count based on that evidence and based on the jury's common sense. Ex. 5, Trial Transcript Vol. II, pages 255-58. After the prosecutor made these challenged remarks, the trial court sustained an objection by the defense and admonished the jury to remember that "the amount of time you deliberate is entirely up to you. You may take as long as you need to take." Ex. 5, Trial Transcript Vol. II, page 259. Acknowledging that the prosecutor did, indeed, give "short shrift" to the first stage of trial proceedings, the OCCA nonetheless found the sustained objection and the trial court's admonishment to the jury sufficient to cure any error. Ex. 1, at 5-6.

The OCCA's denial of relief on this basis was an entirely reasonable application of federal law in the context of prosecutorial error. *See Donnelly*, 416 U.S. at 643-44. Both the defense and the State are afforded wide latitude in closing statements to argue the evidence presented at trial and all logical inferences arising from that evidence. *Hooper v. Mullin*, 314 F.3d 1162, 1172 (10th Cir. 2002). While the prosecutor's remarks in closing might have been careless, these isolated comments did not sufficiently infect Petitioner's trial with unfairness as to result in a due process violation. *See Donnelly*, 416 U.S. at 643-44; *Hooper*, 314 F.3d at 1172-73 (on habeas review, affirming the district court's finding that the prosecutor's argument during guilt-stage closing argument was a fair comment on the evidence presented, and noting that both parties have reasonable leeway in drawing inferences from the record). Moreover, to the extent that Petitioner suggests that the prosecutor's remarks in closing argument interfered with the jury's ability to understand and remain mindful of the presumption of innocence, the jury was properly instructed that Petitioner is presumed innocent until proven guilty beyond a reasonable doubt. *See* Instruction

No. 10-4, OUJI-CR(2d); Ex. 6, page 51; *see also Patton*, 425 F.3d at 800. The jury was also instructed to discharge its duties fairly and impartially, and without sympathy, sentiment, or prejudice. *See* Instruction No. 10-8, OUJI-CR(2d); Ex. 6, page 54. It is presumed that a jury follows its instructions. *Weeks*, 528 U.S. at 234. No habeas relief is warranted for Petitioner's claim.

Petitioner also articulates a challenge to other remarks made in the prosecutor's second closing argument in the first stage of proceedings, wherein the prosecutor commented that defense counsel "doesn't have much to work with," because the evidence showed that Petitioner was guilty of the crimes charged. Doc. 10, at 17; Ex. 5, Trial Transcript Vol. II, page 252. According to Petitioner, this comment impermissibly shifted the burden of proof to the defense. Doc. 10, at 17. To the contrary, the prosecutor's statement was made in the context of rebutting the defense's theory that the methamphetamine Petitioner possessed was for personal consumption. Ex. 5, Trial Transcript Vol. II, page 252. The prosecutor referenced trial counsel's closing argument, wherein it was noted that the methamphetamine was not packed for individual sale. Ex. 5, Trial Transcript Vol. II, page 252. The prosecutor encouraged the jury to use common sense in determining whether Petitioner's possession of a large sum of cash and a large quantity of methamphetamine was evidence of Petitioner's guilt of the crimes charged. Ex. 5, Trial Transcript Vol. II, pages 252-53.

The OCCA found that the prosecutor, in making the challenged comments, did not argue that Petitioner had failed to produce evidence or show something the defense was required to prove. Ex. 1, at 6. This finding is entitled to a presumption of correctness. *See* 28 U.S.C. § 2254(e)(1). Based on this finding, the OCCA concluded that the prosecutor's statements did not attempt to shift the burden of proof. Ex. 1, at 6. Because these statements were made in response to the defense theory and were not an attempt to shift the burden of proof, the OCCA's denial of relief on this issue was entirely reasonable. *See McKinney v. Bruce*, 125 F. App'x 947, 950 (10th

Cir. Feb. 7, 2005) (unpublished) (finding prosecutor's closing statement was not an attempt to shift the burden of proof, despite the prosecutor's argument that the evidence presented by the State was uncontroverted); *cf. Trice v. Ward*, 196 F.3d 1151, 1167 (10th Cir. 1999) (holding no constitutional error arising from prosecution's comment on defense's failure to present certain testimony or call certain witnesses). And furthermore, the jury was properly instructed that the burden of proof rests on the State to show Petitioner's guilt beyond a reasonable doubt. Instruction No. 10-4, OUJI-CR(2d); Ex. 6, page 51. A jury is presumed to follow the instructions given. *Weeks*, 528 U.S. at 234.

As a whole, because the prosecutor's comments did not "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process," *Donnelly*, 416 U.S. at 643-44, the OCCA's refusal to accord relief for this issue was not contrary to, or an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d). No relief should be granted on Petitioner's habeas petition.

## 4. Making Allegedly Inflammatory Comments During the Closing Argument of the Sentencing Phase

Fourth, Petitioner argues that the prosecutor improperly requested that the jury assess an excessive sentence for Petitioner's crimes. Doc. 10, at 17-19. Specifically, Petitioner challenges the prosecutor's remarks in closing during the second stage of trial proceedings when the prosecutor told the jury to "send [Petitioner] a message," and "pick 1,000 [years] if you want" when deciding on what sentences Petitioner should serve for his crimes. Doc. 10, at 17-18; Ex. 5, Trial Transcript Vol. II, page 277. In context, the prosecutor reminded the jury of Petitioner's numerous prior convictions, and encouraged the jury to send Petitioner a message for his crimes by assessing significant sentences. Ex. 5, Trial Transcript Vol. II, page 275-77. Because Petitioner failed to lodge a contemporaneous objection to these comments at trial, the OCCA reviewed this

issue for plain error only, and found none. Ex. 1, at 7-8. In so doing, the OCCA found that the prosecutor here did not ask for the jury to "send a message to the broader public," but rather was merely arguing based on the specific facts of this case. Ex. 1, at 7-8.

The OCCA's finding no plain error on this issue was neither contrary to, or an unreasonable application of, clearly established federal law, nor based on an unreasonable determination of fact. *See Donnelly*, 416 U.S. at 643-44. For starters, the OCCA's finding that the comments did not request the jury to send a message to the broader public, but instead argued the specific facts of this case, is entitled to a presumption of correctness. *See* 28 U.S.C. § 2254(e)(1). Further, because this issue is viewed with the deferential lens of the AEDPA, because counsel failed to object to these comments, and because the entirety of the evidence in the trial record offered substantial proof of Petitioner's guilt and supported his sentences irrespective of the challenged comments, the OCCA's determination on this issue was entirely reasonable and warrants no habeas relief. *See Ross v. Parker*, 304 F. App'x 655, 659 (10th Cir. Dec. 19, 2008) (unpublished) (on habeas review, rejecting the petitioner's claim of prosecutorial misconduct based on improper "send a message" remarks during closing argument of sentencing stage, finding the OCCA did not unreasonably apply Supreme Court precedent when it found the prosecutor's argument did not warrant reversal under plain error review, particularly in light of the overwhelming evidence of the petitioner's guilt at trial, the lack of a contemporaneous objection, and the deference afforded by the AEDPA). Indeed, Petitioner's sentences were fully justified by the overwhelming evidence of Petitioner's guilt and Petitioner's lengthy prior criminal history, and the sentences ultimately returned by the jury were much more lenient than the sentences the prosecutor requested the jury assess. Accordingly, no relief is warranted for Petitioner's claim.

Petitioner also challenges the prosecutor's alleged efforts to seek sympathy for potential future victims of Petitioner's drug sales. Doc. 10, at 18-19. Again, Petitioner's claim specifically focuses on the prosecutor's statements made during closing argument of the second stage of trial proceedings. Petitioner points to remarks made by the prosecutor regarding the quantity of methamphetamine Petitioner was caught with, likening that quantity to roughly 204 "doses" of methamphetamine, and announcing that Petitioner's arrest disrupted the chance to ruin 204 lives. Ex. 5, Trial Transcript Vol. II, page 287-88. Petitioner again failed to raise an objection to these comments, making the OCCA's review for plain error only. Ex. 1, at 8-10.

Reviewing this issue, the OCCA concluded that the prosecutor did, in fact, improperly seek sympathy for his hypothetical victims. Ex. 1, at 8. The OCCA reiterated its prior disapproval of inflammatory speculation about the potential future effects of drug dealing on the broader population. Ex. 1, at 8-9. Because no evidence in the record supported the inference that Petitioner's actions might have directly affected other lives had he not been caught, the OCCA found Petitioner had shown an actual error that was plain or obvious. Ex. 1, at 9. Nonetheless, the OCCA found no relief warranted under plain error review, because the jury clearly did not follow the prosecutor's suggestion as to punishment, and instead assessed reasonable terms of years for Petitioner's crimes. Ex. 1, at 9. The OCCA concluded that, based upon the record, "the prosecutor's improper comments did not render the sentencing stage of Appellant's trial fundamentally unfair." Ex. 1, at 9.

Because the OCCA's holding followed the test set forth in *Donnelly* for claims of prosecutorial error, and because the OCCA reasonably applied that framework using a measured analysis under plain error review of the facts, the OCCA's decision was neither contrary to, or an unreasonable application of *Donnelly* and its progeny, nor was it an unreasonable determination

of fact in light of the record. *See Donnelly*, 416 U.S. at 643-44. Even to the extent that the prosecutor's argument was an inappropriate appeal to sympathy and societal alarm, "[a]n improper appeal to societal alarm typically does not amount to a denial of due process." *Jones v. Gibson*, 206 F.3d 946, 959 (10th Cir. 2000). Taken together with counsel's failure to object to these remarks, and the fact that substantial evidence in the record supported a finding of Petitioner's guilt and the sentences imposed, the OCCA's determination of this issue was entirely reasonable. *See Ross*, 304 F. App'x at 659. And furthermore, the jury was properly instructed to not allow sympathy or sentiment invade its assessment of Petitioner's sentences, and was reminded to discharge its duties impartially, faithfully, and conscientiously. Ex. 6, page 54; *see* Instruction No. 10-8, OUJI-CR(2d). Even as the prosecutor made these challenged comments, he reminded the jury not to allow sympathy impede its obligation to weight the facts neutrally. Ex. 5, Trial Transcript Vol. II, page 287. Juries are presumed to follow the instructions given. *Weeks*, 528 U.S. at 234. Accordingly, the OCCA's rejection of Petitioner's claim under plain error review was entirely reasonable, is given deference, and should afford Petitioner no habeas relief here. *See* 28 U.S.C. § 2254(d).

**5.    Making Allegedly Improper References to Pardon and Parole During the Sentencing Phase**

Fifth, Petitioner contends that the prosecutor made unmistakable and inappropriate references to pardon and parole policies during the second stage of trial proceedings, thereby allegedly encouraging the jury to speculate about how much time Petitioner had served on previous convictions. Doc. 10, at 19-21. According to Petitioner, the prosecutor's misleading remarks about Petitioner's prior convictions in the "pen pack" issued by the Department of Corrections, coupled with the prosecutor's referencing Petitioner's recidivism with the phrase "he's still here," and "[h]e's right there," together resulted in an excessive sentence. Doc. 10, at 19-21; Ex. 5, Trial

Transcript Vol. II, pages 276, 284. Petitioner also takes issue with the prosecutor's rebuttal comment that an offender should receive no "freebies" after the age of eighteen (18), in response to trial counsel's argument in closing that some of Petitioner's prior convictions occurred right around the time that Petitioner reached the age of majority. Doc. 10, at 21; Ex. 5, Trial Transcript Vol. II, page 281.

The OCCA considered Petitioner's claim, and acknowledged that argument designed to encourage speculation about pardon and parole is improper. Ex. 1, at 10. The OCCA reviewed the entirety of the record to ascertain whether, in light of the totality of the circumstances, the prosecutor's comments caused prejudice to Petitioner. Ex. 1, at 10-11. Considering the record, the OCCA found the challenged remarks improper; although a prosecutor may mention or discuss the relevant proof of a defendant's prior conviction and whether that defendant received probation, suspension, or deferral of a term of imprisonment, a prosecutor may not make argument or introduce evidence regarding the actual length of sentence a defendant received for a previous conviction. Ex. 1, at 12. Moreover, the OCCA noted that a prosecutor may not make argument invoking sympathy or prejudice. Ex. 1, at 12. Agreeing with Petitioner and finding the challenged comments to be misleading and an unmistakable reference to Petitioner's prior sentences on previous convictions, particularly since the prosecutor drew specific attention to the actual term of incarceration Petitioner had served with the phrase "he's still here," the OCCA found an actual error that was plain or obvious. Ex. 1, at 12-13. Nonetheless, the OCCA ultimately denied relief because the prosecutor's comments "did not render his sentencing trial fundamentally unfair." Ex. 1, at 13. In reaching that conclusion, the OCCA rejected Petitioner's claim for relief under plain error review.

The OCCA's rejection of Petitioner's prosecutorial error claim on this issue was an entirely reasonable application of *Donnelly*, particularly since the OCCA directly applied the analytical framework set forth by the Supreme Court in that decision. *See Donnelly*, 416 U.S. at 643-44. Though the OCCA recognized that the prosecutor's references to Petitioner's prior sentences were misleading and unmistakably improper comments that resulted in actual error that was plain or obvious, the OCCA reasonably denied relief based on its finding that Petitioner had not shown that such erroneous remarks rendered his sentencing "fundamentally unfair."[9] Ex. 1, at 13. Because the OCCA looked to the entirety of the record in making this determination, and because the OCCA ultimately found that the evidence presented "readily supported the jury's assessment of punishment," this conclusion was not contrary to, or an unreasonable application of clearly established federal law. *See Donnelly*, 416 U.S. at 645 (requiring that a prosecutor's remarks be understood in the context of the entire trial, and not be viewed in isolation); *cf. Moore v. Allbaugh*, No. 13-CV-0234-JED-TLW, 2016 WL 3129227, at *6 (N.D. Okla. June 2, 2016) (unpublished) (on habeas review, rejecting the petitioner's claim of prosecutorial misconduct in part based on the prosecutor's failure to redact a reference to the petitioner's prior term of probation received after a guilty plea in a document presented to the jury, finding that "given the strength and nature of the

---

[9] Although the OCCA held it was improper under Oklahoma law for the prosecutor to discuss the actual length of time Petitioner served on his prior sentences, no clearly established Supreme Court law prohibits the same. Indeed, the Supreme Court has held it is not a *per se* violation of due process for a jury to learn of a defendant's prior crimes in a single-stage trial in which the defendant is charged as a recidivist or habitual criminal. *Spencer v. Texas*, 385 U.S. 554, 560-66 (1967). While Oklahoma law allows the consideration of "any evidence that a defendant previously received probation, suspension, or deferral of a sentence," *but not* references to prior parole, *Terrell v. State*, 425 P.3d 339, 401 (Okla. Crim. App. 2018), no authority suggests that the Constitution similarly draws the line. The OCCA has recognized that "[t]he receipt of a probationary term may be viewed as supporting both greater and lesser punishment depending on the facts of the case." *Id.* So too may the fact that a defendant was previously graced with parole but continued to offend. At the very least, no Supreme Court precedent clearly establishes that such is an unconstitutional consideration for the jury in a sentencing stage proceeding.

evidence against Petitioner and the fact that the jury's recommended sentences were well below the statutory maximum for the crimes," the prosecutor's failure to redact a reference to probation did not render the petitioner's trial and sentencing fundamentally unfair). And furthermore, the jury was properly instructed to not allow sympathy, prejudice, or sentiment enter its deliberations, but to discharge its responsibilities impartially and faithfully. Ex. 6, page 54; *see* Instruction No. 10-8, OUJI-CR(2d). It is presumed that a jury follows its instructions. *Weeks*, 528 U.S. at 234. In total, because the OCCA's analysis of this issue was not contrary to, or an unreasonable application of, clearly established federal law in *Donnelly*, nor was it an unreasonable determination of the facts, the OCCA's rejection of Petitioner's claim for relief must be upheld. *See* 28 U.S.C. § 2254(d). No habeas relief is warranted for Petitioner's claim here.

### 6.  Allegedly Misstating the Law and Ridiculing Defense Counsel

Finally, Petitioner complains that the prosecutor misstated the law and ridiculed defense counsel in closing argument during the second stage of trial proceedings when he represented to the jury that finding Petitioner guilty after two prior convictions on one count meant that the jury was bound to find him guilty after two prior convictions on all counts. Doc. 10, at 21-23. These comments were made in response to defense counsel's closing argument reminding the jury to give separate consideration to each count in determining whether Petitioner was guilty after two prior convictions. Ex. 5, Trial Transcript Vol. II, pages 277-78. In rebuttal, the prosecutor averred that it would be "asinine" to find Petitioner guilty after two prior convictions on one count but not the others, and contended that the jury should be "offended" by defense counsel's suggestion to do otherwise. Ex. 5, Trial Transcript Vol. II, page 283. The trial court sustained an objection to this argument, and the prosecutor continued with his closing argument. Ex. 5, Trial Transcript Vol. II, pages 283-84.

Considering Petitioner's claim of prosecutorial error on this basis, the OCCA reasonably rejected Petitioner's argument, taking note of the fact that the prosecutor's comments were in response to defense counsel's closing, and acknowledging that the trial court sustained an objection to the prosecutor's argument. Ex. 1, at 14. Rejecting Petitioner's claim for relief, the OCCA found that because the objection to these comments was sustained, any error arising from the challenged comments was cured. Ex. 1, at 14.

This denial of relief was not contrary to, or an unreasonable application of, clearly established federal law, nor was it unreasonable in light of the state court record. *See* 28 U.S.C. § 2254(d). The prosecutor's isolated comments did not "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 643-44. Those remarks were made in response to argument made by defense counsel, and the trial court immediately sustained an objection to the prosecutor's framing of this issue. *See Patton v. Mullin*, 425 F.3d 788, 800 (10th Cir. 2005) (generally noting that, where the trial court sustains an objection and the jury is instructed to disregard the objectionable statement, the trial court's admonition usually cures any error). Furthermore, the jury was properly instructed that each charge must be given separate consideration by the jury. Ex. 6, page 60; *see* Instruction No. 9-6A, OUJI-CR(2d). The jury was also instructed that Petitioner was only guilty after two or more convictions for each charge if the jury found the fact of his convictions proven beyond a reasonable doubt on each crime. Ex. 6, pages 89-96. A jury is presumed to follow the instructions given. *Weeks*, 528 U.S. at 234. The OCCA's denial of relief was therefore entirely reasonable in light of the standard established in *Donnelly*, and Petitioner's habeas claim must be rejected.

Petitioner also complains of the comments made by the prosecutor in second-stage closing suggesting there was "no luxury" for the jurors to pretend that certain evidence did not exist during

deliberations, because the jury verdict "must speak the truth." Ex. 5, Trial Transcript Vol. II, page 284. These comments were again made in the context of explaining the jury's determination of whether Petitioner's guilt on each charge was after two prior convictions. This particular statement was made without objection, and the OCCA reviewed it for plain error only. Ex. 1, at 14-15. The OCCA observed that the prosecutor's argument on this point was "inartfully stated," but nonetheless was an effort to urge the jury to follow its oath and the law. Ex. 1, at 15. The OCCA's determination is entitled to a presumption of correctness. *See* 28 U.S.C. § 2254(e)(1). Rejecting relief, the OCCA concluded that such argument fell within the wide range of latitude parties are permitted in closing. Ex. 1, at 15. The OCCA's conclusion fell directly under the ambit established by federal law, recognizing the latitude parties are afforded in closing argument. *See Hooper*, 314 F.3d at 1172. In total, because the prosecutor's statements did not "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process," *Donnelly*, 416 U.S. at 643-44, the OCCA was entirely reasonable in denying Petitioner relief on this issue. Accordingly, Petitioner's request for habeas relief must be denied.

## C.    Conclusion

For the reasons discussed above, the OCCA reasonably concluded that none of the prosecutor's complained-of comments so infected Petitioner's trial with unfairness that his conviction or sentence amounted to a denial of due process. Ex. 1, at 15; *see Donnelly*, 416 U.S. at 643-44. In denying Petitioner relief, the OCCA concluded that the cumulative effect of the challenged statements did not deprive Petitioner of a fair trial, particularly in light of the strong evidence of Petitioner's guilt, and the fact that his sentences were driven by multiple prior felony convictions. Ex. 1, at 15. On balance, because Petitioner received a fair trial, and because the OCCA's decision is not an "extreme malfunction" in Oklahoma's criminal justice system,

Petitioner is not entitled to habeas relief. *See Richter*, 562 U.S. at 102 (holding that federal habeas corpus is a "guard against extreme malfunctions in the state criminal justice system," rather than "a substitute for ordinary error correction through appeal").

## GROUND II

**THE DECISION OF THE OCCA FINDING NO FIFTH AMENDMENT VIOLATION IN THE DEFENDANT'S POST-ARREST ADMISSION MADE DURING THE BOOKING PROCESS AT THE JAIL WAS NEITHER CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, NOR BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS IN LIGHT OF THE STATE COURT RECORD.**

In his second ground, Petitioner alleges the trial court plainly erred in allowing the admission of testimony about Petitioner's unwarned, incriminating custodial statement made during the booking process at the jail after Petitioner's arrest. Doc. 9, at 9; Doc. 10, at 25-28. Because the OCCA's finding of no plain error resulting from the admission of Petitioner's statement at trial was neither contrary to, or an unreasonable application of, clearly established federal law, nor based on an unreasonable determination of fact, Petitioner's request for habeas relief on this basis must be rejected.

## A.    Background

On direct appeal, Petitioner challenged the trial court's admission of a statement Petitioner made during the booking process at the jail concerning his lack of employment. Ex. 2, pages 19-22. According to Petitioner, Officer Montgomery's single question about Petitioner's place of employment, among a series of other routine biographical questions at the jail, constituted custodial interrogation for Fifth Amendment purposes, and the trial court plainly erred by allowing testimony about Petitioner's unwarned answer to that question, wherein Petitioner admitted that he did not have a job. Ex. 2, pages 19-22. The significance of that admission became apparent later

at trial, when Officer Montgomery testified that Petitioner's lack of employment was corroborative of the conclusion that Petitioner's large sum of cash possessed at arrest showed a connection to drug activity. Ex. 5, Trial Transcript Vol. I, pages 190-92. The OCCA rejected Petitioner's argument, noting the fact that Petitioner failed to raise any objection to the challenged statement at trial and, under plain error review, held the following:

> In Proposition Two, Appellant challenges the admission of a statement he made during the process of being booked into jail. Citing *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), he argues that the statement was admitted in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution as well as corresponding provisions of the Oklahoma Constitution.
>
> Appellant concedes that he waived appellate review of this claim for all but plain error when he failed to challenge the introduction of the statement at trial. *Frederick v. State*, 2017 OK CR 12, ¶ 12, 400 P.3d 786, 799-800. Therefore, we review Appellant's claim pursuant to the test for plain error set out above and determine whether Appellant has shown an actual error, which is plain or obvious, and which affects his substantial rights. *Id.*
>
> Reviewing the entire record, we find that Appellant has not shown the existence of an actual error. Appellant's statement concerning lack of employment during the booking process was admissible. The officer's inquiries were not intended to elicit an incriminating response but were simply necessary to complete the booking process. Therefore, they met the booking exception to *Miranda* and do not amount to custodial interrogation. *Pennsylvania v. Muniz*, 496 U.S. 582, 594, 601-02, 110 S.Ct. 2638, 2646, 2650-51, 110 L.Ed.2d 528 (1990); *Gilbert v. State*, 1997 OK CR 71, ¶ 46, 951 P.2d 98, 112; *Clayton v. State*, 1992 OK CR 60, ¶ 29, 840 P.2d 18, 27. Thus, we conclude that Appellant has not shown that error, plain or otherwise, occurred. Proposition Two is denied.

Ex. 1, at 16-17.

## B.    Argument and Authority

When a suspect is taken into custody and subjected to questioning, the privilege against self-incrimination requires that the suspect be warned under *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966). There, the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless

it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444. "Custody" is defined according to how a "reasonable man in the suspect's positon would have understood his situation," and includes the deprivation of the suspect's freedom in any significant way. *Berkemer v. McCarty*, 468 U.S. 420, 441 (1984); *Miranda*, 384 U.S. at 444. For purposes of *Miranda*, custody "is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion." *Howes v. Fields*, 565 U.S. 499, 508-09 (2012). Additionally, "interrogation" is understood as both express questioning by police, as well as "words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). If a suspect does not receive proper warnings before custodial interrogation, statements made by the accused must be suppressed. *Oregon v. Elstad*, 470 U.S. 298, 317 (1985).

The Supreme Court has recognized a "routine booking question" exception to *Miranda*, and questions designed to obtain "biographical data necessary to complete the booking or pretrial services" are not under the ambit of *Miranda*'s safeguards. *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990). Such questions are "requested for record keeping purposes only," and are reasonably related to the administrative concerns of law enforcement upon arrest. *Id.* at 601-02. Questions asked about a suspect's identity, including that person's name and address, for example, are unlikely to elicit an incriminating response, and thus are not protected by *Miranda. See United States v. Medrano*, 356 F. App'x 102, 107 (10th Cir. Dec. 7, 2009) (unpublished). If routine booking questions are asked in order to elicit an incriminating response, however, such questioning could still be prohibited by *Miranda. See United States v. Parra*, 2 F.3d 1058, 1068 (10th Cir. 1993).

Here, Petitioner contends that his right against self-incrimination was violated during the post-arrest booking process when Officer Montgomery asked Petitioner a series of routine biographical questions, including asking whether Petitioner was employed. Doc. 10, at 25-28. As Petitioner was being booked into the jail, Officer Montgomery asked Petitioner his name, Social Security Number, date of birth, and place of employment. Ex. 5, Trial Transcript Vol. I, pages 190-91. Petitioner admitted that he did not have a job, and indicated "no work" on the appropriate line for the Arrest and Booking sheet. Ex. 5, Trial Transcript Vol. I, page 191. At trial, when asked about the significance of Petitioner's possession of nearly $1,200 in cash at the time of arrest, in light of Petitioner's lack of a job, Officer Montgomery averred that "[i]t furthers that he had that much money on him with no job, $1,190 without having a job. Drugs are extremely profitable." Ex. 5, Trial Transcript Vol. I, pages 191-92.

Petitioner asserts that Officer Montgomery's questioning about Petitioner's employment status resulted in an unwarned, incriminating custodial statement, because that question was designed to elicit an incriminating explanation for Petitioner's possession of a large quantity of cash. Doc. 10, at 27. The decision of the OCCA finding no *Miranda* violation in Petitioner's response to the officer's employment question constitutes a wholly reasonable application of *Miranda* and its progeny to the record evidence, because that question was intended only for purposes of "routine booking." *See Muniz*, 496 U.S. at 601. Citing directly to *Muniz* in addressing Petitioner's claim, the OCCA found that Petitioner's statement concerning his lack of employment during the booking process was admissible, and Officer Montgomery's questions "were not intended to elicit an incriminating response but were simply necessary to complete the booking process." Ex. 1, at 16-17. The mere fact that basic biographical information obtained during booking could potentially later lead to an incriminating conclusion about the accused does not

make such information a *Miranda* violation. *See United States v. Gotchis*, 803 F.2d 74, 79 (2d Cir. 1986) (rejecting argument that employment questions sought incriminating information simply because the appellant's lack of job supported an inference that the appellant intended to sell cocaine, situating such questions as "within the benign category of basic identifying data required for booking and arraignment," and declining to create an exception forbidding routine questions about employment when the suspect is accused of distributing drugs); *Bushyhead v. Wade*, No. 10-CV-0797-CVE-FHM, at *21 (N.D. Okla. Feb. 13, 2014) (unpublished) (addressing on habeas review the petitioner's claim that employment questions during booking into the Tulsa County Jail were asked for the sake of completing routine paperwork and not for the purpose of incriminations, finding no *Miranda* warnings necessary); *United States v. Dominguez*, No. 11-CR-0129-CVE, 2011 WL 4857867, at *4 (N.D. Okla. Oct. 13, 2011) (unpublished) (rejecting claim of *Miranda* violation resulting from officer's questions about the identity of the defendant's employer and social security number during booking process, finding such questions permissible under the booking exception in *Muniz*). Officer Montgomery's routine booking questions were proper under federal law, and the OCCA's application of such federal law was reasonable. *See Muniz*, 496 U.S. at 601; Ex. 1, at 16-17.

Moreover, though Petitioner was charged and convicted of acquiring proceeds from drug activity, the elements of that crime do not require proof of a defendant's lack of legitimate employment. Ex.6, page 70. And while Petitioner's lack of employment might support the circumstantial inference that the cash he possessed was related to drug activity, Officer Montgomery's question was not designed to probe where Petitioner had received that cash from, nor did it seek an incriminating answer as to why Petitioner was in possession of that cash. *See Gotchis*, 803 F.2d at 79. Rather, the question put to Petitioner was meant only as a means of

identifying Petitioner's biographical information and completing routine paperwork at the jail. *See Muniz*, 496 U.S. at 601. Accordingly, the OCCA's application of *Muniz* and *Miranda* was entirely reasonable and should afford Petitioner no habeas relief. Because at least some fairminded jurists could agree that the officer's question about Petitioner's employment status was simply intended to complete the routine booking process and was not custodial interrogation under *Miranda*, the decision of the OCCA must be upheld. *See Richter*, 562 U.S. at 103. And because Petitioner claim cannot surmount the deference given to state court decisions under the AEDPA, no relief is warranted on Petitioner's claim of custodial interrogation. *See* 28 U.S.C. § 2254(d). No habeas relief should be granted on Petitioner's argument.

## GROUND III

**THE DECISION OF THE OCCA HOLDING THAT TRIAL COUNSEL WAS NOT INEFFECTIVE FOR ALLEGEDLY FAILING TO SUBJECT THE STATE'S CASE TO MEANINGFUL ADVERSARIAL TESTING UNDER THE TEST IN *UNITED STATES v. CRONIC* WAS NEITHER CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, NOR BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS IN LIGHT OF THE STATE COURT RECORD.**

In his third ground for relief, Petitioner contends that his trial counsel failed to subject the State's case to meaningful adversarial testing under the alternative ineffective assistance standard articulated in *United States v. Cronic*, 466 U.S. 658, 654 (1984), and that his constitutional right to counsel was thereby compromised. Doc. 9, at 10; Doc. 10, at 29-32. The OCCA's determination that counsel did not entirely fail to subject the prosecution's case to meaningful adversarial testing was neither contrary to, or an unreasonable application of, clearly established federal law, nor based on an unreasonable determination of fact. Therefore, Petitioner's request for a writ of habeas corpus must be denied.

A.    **Background**

On direct appeal, Petitioner alleged that his counsel's performance fell short of minimum constitutional guarantees for effective assistance of counsel, because trial counsel filed no motions, waived opening statement at both stages of the case, and presented no evidence or witnesses. Ex. 2, page 24. Petitioner also argued that counsel interposed few objections and conducted merely "token cross examination" of three of the four witnesses presented by the State. Ex. 2, page 24. Petitioner claims his counsel premised the defense theory on the "absurd notion" that Petitioner's possession of methamphetamine was for personal use, and the State's case was left "completely unchallenged." Ex. 2, page 24.

In support, Petitioner proffered a contemporaneously filed motion to supplement the record and request for an evidentiary hearing, pursuant to Rule 3.11, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2018). Ex. 2, page 24; Ex. 4, pages 1-5. Attached to that motion, Petitioner offered an affidavit from Toni Ann Beach, an attorney allegedly present in the courtroom hallway following Petitioner's conviction. Ex. 4, Petitioner's Exhibit A. Ms. Beach's affidavit recounted seeing Ms. Atteberry, Petitioner's trial counsel, in the hallway after Petitioner's trial had concluded. Ex. 4, Petitioner's Exhibit A. In her affidavit, Ms. Beach averred that "Ms. Atteberry appeared pleased with the results of the case. She patted the Assistant District Attorney on the back and made disparaging comments about Mr. Holland and his family. She and the prosecutors laughed at Mr. Holland and his family." Ex. 4, Petitioner's Exhibit A. Ms. Beach's affidavit continued:

> Ms. Atteberry told the prosecutors that Mr. Holland was an idiot for going to trial and deserved to die in prison, at this point she laughed. She said that Mr. Holland would be well liked in prison, that his sex life would improve. She also said that Mr. Holland was an ugly "son of a bitch" and a poor excuse for a human being. Ms. Atteberry said that Mr. Holland's wife was stupid for having babies with him and that she didn't know how Mr. Holland's wife could come to court and try to help

him. That she wouldn't help him if she was his wife, he was disgusting. She said what kind of life is a child going to have with "that" for a father. She stated that she had just made the worst closing argument of her legal career and laughed.

Ex. 4, Petitioner's Exhibit A. Ms. Beach stated that she became "[t]roubled" by what she observed, and visited Petitioner in jail to inform him of the foregoing. Ex. 4, Petitioner's Exhibit A.

In his motion to supplement the record, Petitioner incorporated the attached affidavit, and argued that Ms. Beach's statements demonstrated that Petitioner's trial counsel was ineffective. Ex. 4, pages 2-4. Petitioner asserted that Ms. Beach's affidavit was "necessary to fully demonstrate trial counsel's attitude towards Mr. Holland and his case." Ex. 4, page 3.

On direct appeal review, the OCCA denied Petitioner's claim and rejected Petitioner's request to supplement the record and remand the case for evidentiary hearing. Ex. 1, at 17-20, 23-24. In so doing, the OCCA held as follows:

> In Proposition Three, Appellant contends that he was denied the assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article II, Section 20 of the Oklahoma Constitution. He argues that defense counsel failed to subject the State's case to meaningful adversarial testing.
>
> Appellant's claim invokes the standard set forth in *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), instead of the customary two-part test mandated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).
>
> > *Cronic* held that a Sixth Amendment violation may be found "without inquiring into counsel's actual performance or requiring the defendant to show the effect it had on the trial," *Bell v. Cone*, 535 U.S. 685, 695, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002), when "circumstances [exist] that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified,"
>
> *Wright v. Van Patten*, 552 U.S. 120, 124, 128 S.Ct. 743, 746, 169 L.Ed.2d 583 (2008). *Cronic* identified those circumstances as (1) the complete denial of counsel, (2) where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," and (3) "where counsel is called upon to render assistance under circumstances where competent counsel very likely could not." *Bell v. Cone*,

535 U.S. 685, 696, 122 S. Ct. 1843, 1851, 152 L. Ed. 2d 914 (2002) (citing *Cronic*, 466 U.S. at 659-62, 104 S.Ct. at 2047-49).

In order to establish that counsel failed to subject the prosecution's case to meaningful adversarial testing, an appellant must establish that the attorney's failure was complete. *Id.*, 535 U.S. at 697, 122 S.Ct. at 1851. It is not enough to show that counsel failed to challenge the prosecution's case at specific points; instead it must be shown that counsel failed to oppose the prosecution's case throughout the proceeding. *Id.*, 535 U.S. at 697, 122 S.Ct. at 1851; *see also Florida v. Nixon*, 543 U.S. 175, 190-91, 125 S. Ct. 551, 562-63, 160 L. Ed. 2d 565 (2004) (counsel's concession of guilt did not implicate *Cronic*'s failure to subject to adversarial testing standard but must be judged under *Strickland* standard).

Reviewing the record we find that this is not a case where counsel entirely failed to subject the prosecution's case to meaningful adversarial testing. Defense counsel ably conducted *voir dire*, connecting with the potential jurors while searching for individuals favorable to Appellant's case. She engaged in poignant cross-examination of the State's witnesses and developed evidence to support Appellant's defense. Counsel also secured a stipulation preventing the prosecution from introducing evidence that Appellant had outstanding warrants at the time of the traffic stop. She raised meritorious objections, with several side bars to advance Appellant's cause, and secured favorable rulings on Appellant's behalf. Counsel entered a demur to the evidence and gave a competent closing argument at the end of the first stage of the trial. Before the second stage of the trial, defense counsel argued that some of Appellant's prior felony convictions were transactional. She entered a demur and gave a competent closing argument at the end of the second stage of the trial. Based upon the record, we find that counsel subjected the prosecution's case to adversarial testing. Therefore, we find that Appellant has not shown that he was denied the assistance of counsel. Proposition Three is denied. [. . .]

Contemporaneous with the filing of his Brief, Appellant filed his *Application to Supplement Appeal Record or in the Alternative Remand for Evidentiary Hearing on Sixth Amendment Claims*. Appellant seeks to supplement the record on appeal pursuant to Rule 3.11(A), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2018) with "Exhibit A," an affidavit from a member of the Tulsa County Bar. He argues that the affidavit is necessary to the determination of Proposition Three. Alternatively, Appellant asserts that he is entitled to an evidentiary hearing under Rule 3.11(B)(3)(b) on his claim in Proposition Three.

Reviewing the attached affidavit we find that Appellant's request to supplement the record under Rule 3.11(A) should be denied. Since this document was not admitted before the trial court in this proceeding, supplementation under Rule 3.11(A) is improper. *McElmurry v. State*, 2002 OK CR 40, ¶ 167, 60 P.3d 4, 36 (holding Rule 3.11(B) strictly limits supplementation under Rule 3.11(A) to matters which were presented to the trial court).

> Therefore, we must determine whether Appellant is entitled to an evidentiary hearing under Rule 3.11(B). As discussed above, the record on appeal shows that defense counsel subjected the prosecution's case to meaningful adversarial testing. *Cronic*, 466 U.S. at 659-62, 104 S.Ct. at 2047-49. The comments within the affidavit attached to Appellant's motion fail to overcome the trial record and establish that counsel failed to oppose the prosecution's case throughout the proceeding. *Bell*, 535 U.S. at 697, 122 S.Ct. at 1851. Since Appellant has not shown clear and convincing evidence of a strong possibility that he was denied the assistance of counsel, we find that his request for an evidentiary hearing should be denied. *Simpson v. State*, 2010 OK CR 6, ¶ 53, 230 P.3d 888, 905-906.

Ex. 1, at 17-20, 23-24. This decision was neither contrary to, or an unreasonable application of, clearly established federal law, nor based on an unreasonable determination of fact.

**B.      Argument and Authority**

As an alternative to the customary two-part ineffective assistance standard set forth in *Strickland*, 466 U.S. at 687, the Supreme Court established a set of three circumstances where the constitutional deficiencies of counsel warrant relief for an accused, even "without inquiry into counsel's actual performance at trial." *Cronic*, 466 U.S. at 661-62. Those circumstances include: first, the complete denial of counsel; second, counsel's failure to "subject the prosecution's case to meaningful adversarial testing"; and third, "where counsel is called upon to render assistance under circumstances where competent counsel very likely could not." *Bell v. Cone*, 535 U.S. 685, 695-96 (2002) (citing *Cronic*, 466 U.S. at 659-62). For an accused to demonstrate that counsel failed to subject the State's case to meaningful adversarial testing, the accused must show that his counsel's failure was complete. *Id.* at 697. It is insufficient for a defendant to show that counsel failed to challenge the State's case at specific points; rather, the defendant must demonstrate that counsel entirely failed to oppose the State throughout the proceeding as a whole. *Id.* It is an unusual case where prejudice will be found under the *Cronic* standard. *Hooks v. Workman*, 689 F.3d 1148, 1186 (10th Cir. 2012); *Davis v. Exec. Dir. of Dep't of Corr.*, 100 F.3d 750, 757 n. 3 (10th Cir.

1996) (noting that "it is only in a narrow class of cases that prejudice will be presumed" under the standard in *Cronic*).

Here, the decision of the OCCA rejecting Petitioner's *Cronic* claim was neither contrary to, or an unreasonable application of, clearly established federal law, nor based on an unreasonable determination of fact. The OCCA's holding recounted in detail the variety of avenues trial counsel took in testing the prosecution's case against Petitioner. The OCCA's findings in this regard are entitled to a presumption of correctness, *see* 28 U.S.C. § 2254(e)(1), and are fully supported by the record, as shown below. The OCCA took note of the fact that trial counsel conducted *voir dire* "ably" and connected with potential jurors, while simultaneously seeking out individuals who might be favorable to the defense. Ex. 1, at 19; Ex. 5, Trial Transcript Vol. I, pages 81-100. Trial counsel participated in "poignant" cross-examination of witnesses called by the State, and developed evidence to bolster Petitioner's defense. Ex. 1, at 19; Ex. 5, Trial Transcript Vol. I, pages 139-142, 152-53, 192-97. Moreover, counsel successfully secured a stipulation to certain elements of the crime of Falsely Personating Another to Create Liability, which thereby prevented the State from introducing evidence of Petitioner's outstanding warrants at the time of the stop. Ex. 1, at 19; Ex. 5, Trial Transcript Vol. I, pages 208-09. Counsel raised a variety of objections, participated in side bar discussions with the parties, and obtained favorable rulings for Petitioner. Ex. 1, at 19; Ex. 5, Trial Transcript Vol. I, pages 8, 198-99, Vol. II, pages 229, 258-59, 261-62, 278, 283. At the close of the State's case during the first stage of proceedings, trial counsel demurred to the sufficiency of the State's evidence and requested that all charges against Petitioner be summarily dismissed. Ex. 1, at 19; Ex. 5, Trial Transcript Vol. I, page 210. After the reading of the first stage verdicts, trial counsel requested that each individual juror be polled to ensure the trustworthiness of the guilty verdicts. Ex. 5, Trial Transcript Vol. II, page 265. Trial counsel again

demurred to the sufficiency of the evidence at the close of the second stage of proceedings. Ex. 1, at 19; Ex. 5, Trial Transcript Vol. II, page 288. Additionally, trial counsel argued during second stage that some of Petitioner's previous crimes should be treated as transactional and merge for purposes of enhancement. Ex. 1, at 19; Ex. 5, Trial Transcript Vol. II, pages 224-26. And, ultimately, trial counsel gave competent closing arguments at both stages of proceedings. Ex. 1, at 19; Ex. 5, Trial Transcript Vol. II, pages 241-47, 277-81. In total, it is clear that trial counsel did not fail to "subject the prosecution's case to meaningful adversarial testing" under the standard in *Cronic*, and the OCCA's rejection of Petitioner's claim was not an unreasonable application of, or contrary to, *Cronic* and its progeny. *See Cone*, 535 U.S. at 695-96; *Cronic*, 466 U.S. at 659-62.

Furthermore, the OCCA's finding was reasonable even in light of Ms. Beach's affidavit attached to Petitioner's Motion for Supplementation of the Record, because that affidavit offered nothing more than bare hearsay and uncorroborated allegations that trial counsel bore some form of disdain or discriminatory animus against Petitioner. Ex. 4, Petitioner's Exhibit A. Ms. Beach's affidavit attested that she observed Petitioner's trial counsel in the hallway following Petitioner's jury trial, and that, according to Ms. Beach, trial counsel "appeared pleased with the results of the case." Ex. 4, Petitioner's Exhibit A. Trial counsel allegedly "patted the Assistant District Attorney on the back and made disparaging comments about [Petitioner] and his family," before laughing along with the prosecutors. Ex. 4, Petitioner's Exhibit A. Ms. Beach further attested that trial counsel remarked to the prosecutors how Petitioner was "an idiot for going to trial and deserved to die in prison," made comments about Petitioner's sex life in prison, called Petitioner ugly and "disgusting," and asserted that Petitioner's wife "was stupid for having babies with him." Ex. 4, Petitioner's Exhibit A. Trial counsel allegedly announced that she had made the worst closing argument of her career, and punctuated that remark with laughter. Ex. 4, Petitioner's Exhibit A.

Ms. Beach attested that she was "[t]roubled" by trial counsel's behavior, and visited Petitioner in jail to recount her observations. Ex. 4, Petitioner's Exhibit A.

In denying Petitioner's request to supplement the record with Ms. Beach's affidavit, the OCCA found the record adequately demonstrated that trial counsel subjected the State's case to meaningful adversarial testing, and the remarks contained in that affidavit "fail to overcome the trial record and establish that counsel failed to oppose the prosecution's case throughout the proceeding." Ex. 1, at 24. Finding Petitioner had failed to show by clear and convincing evidence that he was deprived of assistance of counsel under *Cronic*, the OCCA denied Petitioner's request for an evidentiary hearing. Ex. 1, at 24-25; *see Lott v. Trammell*, 705 F.3d 1167, 1213 (10th Cir. 2013) (approving the OCCA's use of Rule 3.11 standard in deciding ineffective assistance of counsel claims).

The OCCA's denial of Petitioner's request to supplement the record and refusal to accord relief on his ineffective assistance claim was neither contrary to, or an unreasonable application of, *Cronic*, nor based on an unreasonable determination of fact. As a threshold matter, Ms. Beach's affidavit consists almost exclusively of inadmissible hearsay, particularly since Ms. Beach was not a party to the alleged conversation. *See* Fed. R. Evid. 801. Ms. Beach fails to mention the prosecutors by name, nor does Ms. Beach identify how she knows those individuals prosecuted Petitioner in the instant case. Ms. Beach also fails to explain how she recognized trial counsel in the exchange; indeed, the affidavit merely claims that she "observed his attorney, Beverly Atteberry," without any corroborating details and without any foundation as to her personal familiarity with trial counsel. Ex. 4, Petitioner's Exhibit A. In total, her affidavit appears to be nothing more than a conversation overheard in the hallway, with few assurances that the eavesdropped remarks bore any guarantees of trustworthiness or verifiability. For that reason

alone, the OCCA was reasonable in denying Petitioner's request to supplement the record on this basis. *Cf. Herrera v. Collins*, 506 U.S. 390, 417 (1993) (in a habeas appeal, rejecting affidavits petitioner offered in support of an actual innocence claim because such affidavits were "particularly suspect" inasmuch as they consisted almost exclusively of hearsay, and any probative value offered by those affidavits was outweighed by conflicting evidence already available in the appeal record); *United States v. Campbell*, No. 95-1121, 1995 WL 520730, at *2 (10th Cir. Sept. 5, 1995) (unpublished) (on habeas review, finding hearsay statements in an affidavit insufficient to rebut the factual basis for appellant's guilty plea).

Moreover, even if the contents of this affidavit were true and verifiable, and even if the affidavit's hearsay was admissible and reliable, nothing in Ms. Beach's affidavit had any bearing on trial counsel's performance for purposes of the *Cronic* analysis. Indeed, this affidavit contains no information regarding counsel's actual performance at trial, nor does it show that any of counsel's allegedly disparaging views about Petitioner permeated the representation of Petitioner prior to or during the trial proceedings. The trial record is entirely devoid of any evidence that counsel's alleged negative feelings towards Petitioner at all manifested in her representation of him or caused her not to subject the State's case to meaningful adversarial testing. Where the record is silent, it must be presumed that trial counsel performed competently and zealously represented Petitioner irrespective of her personal feelings. *Titlow*, 571 U.S. at 22-23; *see also Strickland*, 466 U.S. at 690 (noting that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment"). Indeed, the record as described above shows that counsel did so. Because the affidavit offered by Ms. Beach was insufficient to show by "clear and convincing evidence" that counsel completely failed to subject the State's case to adversarial testing at trial under the test in *Cronic*, the OCCA's

rejection of Petitioner's motion to supplement the record was not unreasonable. *See Lott,* 705 F.3d at 1213.[10]

As a whole, the OCCA's finding that Petitioner failed to show by clear and convincing evidence a strong possibility of ineffective assistance under *Cronic* was not contrary to, or an unreasonable application of, clearly established federal law, nor was the OCCA's decision based on an unreasonable determination of fact. Ex. 1, at 17-20, 23-24; *see Cone,* 535 U.S. at 695-96; *Cronic,* 466 U.S. at 659-62. Because Petitioner has not shown an error "beyond any possibility for fairminded disagreement," *Richter,* 562 U.S. at 103, Petitioner's allegation of ineffective assistance under *Cronic* should accord him no habeas relief.

## GROUND IV

**THE DECISION OF THE OCCA HOLDING THAT TRIAL COUNSEL DID NOT RENDER INEFFECTIVE ASSISTANCE OF COUNSEL UNDER THE TEST IN *STRICKLAND v. WASHINGTON* WAS NEITHER CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, NOR BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS IN LIGHT OF THE STATE COURT RECORD.**

---

[10] Petitioner's argument also relies on the decision in *Osborn v. Shillinger*, 861 F.2d 612, 625 (10th Cir. 1988), for his generalized conclusion that counsel's post-trial disparagement of a client is relevant to an ineffective assistance claim under *Cronic*. Doc. 10, at 31. Petitioner's reliance on that case is entirely misplaced. There, during the pendency of the petitioner's appeal and in the midst of drafting the appellate documents, defense counsel wrote the district court a letter insisting that the petitioner deserved the death penalty and had brought the punishment on himself. *Osborn*, 861 F.2d at 629. Counsel also separately remarked to the press that, in his opinion, the petitioner's efforts to withdraw his guilty plea were meritless, and that the petitioner was "playing a game to attract attention." *Id.* at 628. Based on these actions by defense counsel, as well as other equally egregious missteps, the Tenth Circuit affirmed the grant of habeas relief to the petitioner under *Cronic*, finding that defense counsel had abandoned his duty of loyalty and had effectively joined the State in prosecuting the petitioner. *Id.* at 629-30. The actions of defense counsel in *Osborn* are factually distinguishable from the circumstances at bar, even assuming Ms. Beach's affidavit was a trustworthy and proper basis on which to supplement the record.

In his fourth ground for relief, Petitioner complains that his counsel rendered ineffective assistance under the traditional test set forth in *Strickland*, 466 U.S. at 687, 694. Doc. 10, at 33-38. The OCCA's determination that Petitioner's trial counsel was not ineffective under *Strickland* was neither contrary to, or an unreasonable application of, clearly established federal law, nor an unreasonable determination of fact. Petitioner's request for habeas corpus relief must be denied accordingly.

**A.     Background**

On direct appeal, Petitioner cited a variety of reasons why his counsel was ineffective at trial. Specifically, Petitioner made reference to a discrepancy between the weight of the methamphetamine listed in the arrest affidavit and the weight attested to at trial by the forensic chemist. Ex. 2, pages 27-30. Petitioner proffered a contemporaneously filed motion to supplement the record and request for an evidentiary hearing, pursuant to Rule 3.11, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2018). Ex. 2, page 24; Ex. 4, pages 1-5. Attached to that motion, Petitioner offered a property receipt allegedly received from the Tulsa Police Department, which reflects different weights of the methamphetamine seized from Petitioner in this case, including a drug preweight of 65.6 grams, and a gross weight of 71.4 grams. Ex. 4, Petitioner's Exhibit B. Petitioner also offered an affidavit from Petitioner's appellate counsel, Chad Johnson, wherein he attested that he was provided a copy of a Tulsa Police Department Property Receipt, and that such receipt indicated a drug preweight of 65.6 grams, and another weight of 71.4 grams. Ex. 4, Petitioner's Exhibit C. Mr. Johnson admitted his belief that such receipt was authentic and unaltered. Ex. 4, Petitioner's Exhibit C. Petitioner claimed that the property receipt listing discrepancies in the weight of the drugs found on Petitioner's person was a weakness that trial counsel should have challenged. Ex. 4, pages 2-4. According to Petitioner,

the "alarming inconsistencies" between the methamphetamine weights, as shown by the property receipt, undermined the chain of custody of the drug, a weakness trial counsel should have challenged. Ex. 2, pages 28-29; Ex. 4, pages 2-4.

Additionally, Petitioner challenged trial counsel's failure to object to Petitioner's unwarned statement during the booking process at the jail, wherein Petitioner admitted to not having a job, as discussed in Ground II, *see supra*. Ex. 2, pages 29-30. Lastly, Petitioner complained of trial counsel's failure to lodge timely objections to several instances of alleged prosecutorial error, *see supra* Ground I. Ex. 2, pages 30-31.

The OCCA rejected Petitioner's claim of ineffective assistance, and denied Petitioner's request to supplement the record and remand the case for evidentiary hearing. Ex. 1, at 20-25. The OCCA held as follows:

> In Proposition Four, Appellant raises a customary challenge to the effectiveness of defense counsel under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Under *Strickland* an appellant must show: (1) that counsel's performance was constitutionally deficient; and (2) that counsel's deficient performance prejudiced the defense. *Bland v. State*, 2000 OK CR 11, ¶ 112-13, 4 P.3d 702, 730-31 (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064). Appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and demonstrate that counsel's representation was unreasonable under prevailing professional norms. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. To demonstrate prejudice an appellant must show that there is a reasonable probability that the outcome of the trial would have been different but for counsel's unprofessional errors. *Bland*, 2000 OK CR 11, ¶ 112, 4 P.3d at 731. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112, 131 S.Ct. 770, 792, 178 L.Ed.2d 624 (2011).
>
> Appellant raises several different allegations of ineffective assistance. We address his claims solely based upon the record on appeal. *Dewberry v. State*, 1998 OK CR 10, ¶ 9, 954 P.2d 774, 776 ("The instruments filed in support of a request for evidentiary hearing are not considered, by reason of their filing with this Court, part of the trial record. If the items are not within the existing record, then only if they are properly introduced at the evidentiary hearing will they be a part of the trial court record on appeal.").

Appellant asserts that defense counsel was ineffective for failing to object and raise the challenges that he set forth in Propositions One and Two. We determined in those propositions that Appellant had not shown that plain and reversible error had occurred. As the merits of the underlying claims have been rejected, we find that Appellant has not shown ineffective assistance of counsel. *Glossip v. State*, 2007 OK CR 12, ¶¶ 110-12, 157 P.3d 143, 161.

Appellant further asserts that counsel was ineffective for failing to point out the discrepancies in the weight of the methamphetamine discovered in Appellant's pocket and challenge the State's chain of custody of the drug. "The purpose of the chain of custody rule is to guard against substitution of or tampering with the evidence between the time it is found and the time it is analyzed." *Mitchell v. State*, 2010 OK CR 14, ¶ 74, 235 P.3d 640, 657. The State need not negate every possibility of alteration but need only lay a foundation showing that the evidence offered is in substantially the same condition as when the crime was committed. *Id.*; *Driskell v. State*, 1983 OK CR 22, ¶ 60, 659 P.2d 343, 354. "Any weakness in chain of custody goes to the weight to be given to the evidence and does not prevent admissibility." *Stouffer v. State*, 2006 OK CR 46, ¶ 193, 147 P.3d 245, 279.

Reviewing the record in the present case, we find that Appellant has not shown that counsel rendered ineffective assistance under *Strickland*. The officer's testimony at trial established that the methamphetamine was in substantially the same condition as when the crime was committed, thus, the substance was admissible at trial. Although it is clear from the record that there was a variance in the measures of the substance between the field and laboratory, the quantity of the substance was well above the minimum amount to qualify as trafficking under either measurement. In light of the other evidence at trial, we find that Appellant has not shown a reasonable probability that the outcome of the trial would have been different had counsel raised the challenge that Appellant now raises on appeal. Proposition Four is denied.

[. . .]

Appellant further seeks to supplement the record under Rule 3.11(B)(3)(b) with additional evidence in support of his claim of ineffective assistance in Proposition Four. Citing "Exhibit B" (Tulsa Police Department Property Receipt) and "Exhibit C" (Affidavit of Appellate Counsel) he seeks an evidentiary hearing concerning the variance in the weight of the methamphetamine. Reviewing these attachments we find that Appellant has not shown clear and convincing evidence of a strong possibility that counsel was ineffective for failing to utilize the Property Receipt as evidence at trial. As discussed in Proposition Four, the evidence was such that there is not a reasonable probability that the outcome of the trial would have been different had defense counsel pointed out and challenged the evidence in light of the variance in the measures of the substance. Therefore, Appellant's Application is **DENIED**.

Ex. 1, at 20-25.

**B.     Argument and Authority**

In *Strickland*, 466 U.S. at 687, the Supreme Court set forth the familiar standard a defendant must meet in order to raise a successful ineffective assistance of counsel claim. A defendant seeking relief based on ineffective assistance must prove that counsel's performance was deficient and that such performance prejudiced his defense. *Strickland*, 466 U.S. at 687. On the performance component, Petitioner bears the burden of showing that counsel's performance was unreasonable, and this Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 687, 689. As to prejudice, Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

This standard was designed to be difficult to meet, even on *de novo* review. *Richter*, 562 U.S. at 105. However,

> [e]stablishing that a state court's application of *Strickland* was unreasonable under §
> 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d)
> are both highly deferential, and when the two apply in tandem, review is doubly so.
> The *Strickland* standard is a general one, so the range of reasonable applications is
> substantial. Federal habeas courts must guard against the danger of equating
> unreasonableness under *Strickland* with unreasonableness under § 2254(d). When §
> 2254(d) applies, the question is not whether counsel's actions were reasonable. The
> question is whether there is any reasonable argument that counsel satisfied
> *Strickland*'s deferential standard.

*Id.* (citations and internal quotation marks omitted). On habeas review, the dispositive question is not whether the state court's determination was incorrect, but "whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (internal quotation marks omitted)).

Here, the OCCA's reasoning was not contrary to, or an unreasonable application of, *Strickland*, nor was it based on an unreasonable determination of fact. Petitioner first claims that trial counsel was ineffective for failing to challenge an alleged discrepancy between the weight of the methamphetamine Petitioner possessed at arrest and the weight of that drug during the State's chain of custody. Specifically, Petitioner recounts how Jared Lieser, a forensic chemist for the Tulsa Police Department, testified that analysis of the methamphetamine in this case revealed a total weight of 51.00 grams. Doc. 10, at 33-34; Ex. 5, Trial Transcript Vol. I, page 207. Mr. Lieser noted that this weight determination was accurate to within one hundredth of a gram. Doc. 10, at 27; Ex. 5, Trial Transcript Vol. I, page 207. The arresting officers testified to the unbroken chain of custody in recovering and booking Petitioner's methamphetamine. Doc. 10, at 27; Ex. 5, Trial Transcript Vol. I, pages 132-33, 184-87. Nonetheless, Petitioner now attacks trial counsel's failure to challenge the State's confidence in the drug's weight and condition. As evidence of a discrepancy in the weight of the methamphetamine, Petitioner cites to Officer Anderson's probable cause affidavit, which listed the drug's weight at 65.61 grams. Doc. 10, at 27-28; Ex. 6, page 23. Petitioner also references a Tulsa Police Department Property Receipt, which he attached as Exhibit B in his motion to supplement the record proffered on direct appeal; that receipt purportedly lists a gross weight of 71.4 grams of presumptively positive methamphetamine, and a "drug preweight" of 65.6 grams. Doc. 10, at 28; Ex. 4, Petitioner's Exhibit B. Petitioner's appellate counsel, Chad Johnson, attached his own affidavit as Exhibit C to his motion to supplement, wherein Mr. Johnson attested that he believed the property receipt to be authentic and unaltered. Ex. 4, Petitioner's Exhibit C. According to Petitioner, trial counsel's performance was deficient for failing to raise this variance at trial, and such performance prejudiced Petitioner because, had this issue been raised, "there certainly would have been a reasonable doubt" whether the

methamphetamine at issue was truly taken from Petitioner's possession at arrest. Doc. 10, at 34-35.

The OCCA's finding that trial counsel was not ineffective on this basis was not contrary to, or an unreasonable application of, *Strickland* and its progeny, nor was it an unreasonable determination of fact in light of the state court record. In denying Petitioner's allegation of ineffective assistance on the basis of counsel's failure to challenge the variance of the drug weight, the OCCA found that the methamphetamine "was in substantially the same condition as when the crime was committed," and thus was admissible at trial. Ex. 1, at 22. The OCCA acknowledged that a discrepancy existed between the weight of the drug in the field and in the laboratory, but noted that the quantity of the drug was clearly above the threshold weight to qualify for trafficking, regardless of the weight variance. Ex. 1, at 22. Indeed, even absent this variance, Petitioner's possession of fifty-one (51) grams of methamphetamine clearly exceeded the statutory threshold of twenty (20) grams necessary to prove trafficking in methamphetamine. *See* Okla. Stat. tit. 63, § 2-415 (2015). Further, counsel could reasonably have chosen not to challenge the weight of the methamphetamine, because doing so would risk introducing to the jury evidence inculpating Petitioner for roughly twenty (20) additional grams of methamphetamine than was already alleged. *See Strickland*, 466 U.S. at 690-91 (reasoning that deference is to be given the strategic decisions of trial counsel); *Turrentine v. Mullin*, 390 F.3d 1181, 1204-05 (10th Cir. 2004) (eliminating the pitfalls of hindsight in evaluating trial counsel's strategy requires examination of "counsel's decision to investigate—or not to investigate—matters that materially affect a defendant's case"); *United States v. Arreola*, 53 F. App'x 55, 57 (10th Cir. Dec. 16, 2002) (unpublished) (rejecting challenge to trial counsel's failure to raise chain of custody defense, as such claim was either meritless or "fail[ed] to overcome a strong presumption of reasonable trial strategy").

Finally, in light of the other evidence presented, the OCCA found that Petitioner had fallen short of demonstrating "a reasonable probability that the outcome of the trial would have been different" if trial counsel had challenged the chain of custody, which is language taken directly from the decision in *Strickland*. Ex. 1, at 22-23; *see also Strickland*, 466 U.S. at 695. This was reasonable in light of the overwhelming evidence of Petitioner's guilt, as discussed elsewhere throughout this response.

Denying Petitioner's request for relief, the OCCA both cited specifically to *Strickland* and properly applied the Supreme Court's test for ineffective assistance to the facts of the case. Ex. 1, at 22-23. Therefore, because the OCCA's rejection of Petitioner's claim that trial was ineffective for failing to challenge the chain of custody was neither contrary to, or an unreasonable application of, clearly established federal law, nor was it unreasonable in light of the state court record, Petitioner's request for habeas relief on this basis must be denied. *See Bagby v. Jones*, 495 F. App'x 860, 862 (10th Cir. Aug. 3, 2012) (unpublished) (on habeas review, affirming OCCA's denial of petitioner's ineffective assistance claim predicated on trial counsel's failure to challenge an alleged break in the chain of custody during law enforcement's possession and analysis of a drug, finding the OCCA had reasonably applied *Strickland* under the "reasonable probability" standard for prejudice).

Moreover, the OCCA's denial of Petitioner's motion to supplement the record with evidence attesting to the variance in the drug weight was entirely reasonable, because Petitioner failed to show by clear and convincing evidence that trial counsel's failure to challenge the variance in the weight of the methamphetamine constituted ineffective assistance. *See Lott*, 705 F.3d at 1213. By offering the Tulsa Police Department Property Receipt, as well as appellate counsel's own interpretation of the significance of that receipt, in support of his ineffective

assistance claim, Petitioner's argument urged the OCCA to engage in pure speculation as to the reasons behind the discrepancy and whether cross on that issue would have had any significance, and to analyze trial counsel's conduct using the "distorted lens of hindsight." *See Strickland*, 466 U.S. at 689. Because clearly established federal law forbids the use of such speculation in assessing the effectiveness of trial counsel, and because trial counsel's conduct is strongly presumed to fall within a broad range of professional conduct, the OCCA was reasonable in denying Petitioner's request to supplement the record on this basis. *See id.* at 687-89. Having failed to show by clear and convincing evidence that supplementation of the record was necessary, the OCCA reasonably denied Petitioner's motion. *See Lott*, 705 F.3d at 1213. Federal habeas review should not be used "as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). Accordingly, no habeas relief is necessary here.

Next, Petitioner asserts that his trial counsel was ineffective for failing to object to the admissibility of Petitioner's unwarned custodial remark made to Officer Montgomery during the booking process, wherein Petitioner admitted that he lacked employment. Doc. 10, at 35-36. According to Petitioner, because his incriminating admission during routine booking was significant in identifying the large sum of cash as drug proceeds, his trial counsel was ineffective for failing to seek exclusion of that statement under *Miranda*, 384 U.S. at 444. Doc. 10, at 35. As discussed in Ground II, *see supra*, Petitioner's custodial statement explaining to Officer Montgomery that he lacked a job was entirely admissible under the routine booking exception to *Miranda*. *See Muniz,* 496 U.S. at 601-02. When taken in context with the other questions Officer Montgomery asked, including Petitioner's name, date of birth, and Social Security Number, a question about Petitioner's place of employment was not intended to elicit an incriminating response, but was merely needed to complete the booking process at the jail. *See Medrano*, 356 F.

App'x at 107. Because information about Petitioner's place of employment was "requested for record keeping purposes only," and was part of the administrative book-in process, Petitioner's answer was admissible under *Miranda*. *See Muniz*, 496 U.S. at 601-02. Counsel's failure to raise a meritless objection cannot form the basis of an ineffective assistance claim. *See Sperry v. McKune*, 445 F.3d 1268, 1275 (10th Cir. 2006); *cf. Richter*, 562 U.S. at 108 ("An attorney need not pursue an investigation that would be fruitless."). Thus, the OCCA's rejection of Petitioner's ineffective assistance claim was neither contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. *See* 28 U.S.C. § 2254(d).

Lastly, Petitioner contends that his trial counsel was ineffective for failing to object to various instances of alleged prosecutorial error during both stages of the trial. Doc. 10, at 30-32. In Ground I, *see supra*, Petitioner identified several remarks made by the prosecutor during both stages of Petitioner's trial, and Petitioner alleged that these instances collectively amounted to a denial of his right to a fair trial. Doc. 10, at 13-24. According to Petitioner, because counsel failed to raise timely objections to those allegedly inappropriate remarks and argument, his counsel rendered ineffective assistance under the standard in *Strickland*. The OCCA reasonably denied Petitioner relief on this claim, finding that because Petitioner's prosecutorial error argument failed to show plain and reversible error, and because the merits of Petitioner's claim were already rejected, Petitioner had failed to show ineffective assistance of counsel on that basis. Ex. 1, at 21. Although the *Strickland* prejudice standard is lower than the standard for showing prosecutorial error so infected a trial as to render it fundamentally unfair, *cf. Williams v. Trammell*, 782 F.3d 1184, 1198-99 (10th Cir. 2015) (noting that the *Strickland* prejudice standard is lower than a showing that the outcome was affected for purposes of plain error review), for the same reasons

the OCCA reasonably rejected Petitioner's prosecutorial error claims, *see supra* Ground I, a fairminded jurist could agree he did not show a reasonable probability of a different result as to his ineffective assistance claims. In particular, overwhelming evidence supported Petitioner's convictions, and his sentences were within the statutory range and were warranted by the evidence and Petitioner's lengthy criminal history. Accordingly, the OCCA's finding that trial counsel was not ineffective on this basis was neither contrary to, or an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of fact in light of the state court record. *See* 28 U.S.C. § 2254(d). Because at least some fairminded jurists could agree that Petitioner's trial counsel was not constitutionally ineffective under *Strickland* for failing to object to the prosecutor's allegedly improper remarks, the decision of the OCCA must be upheld. *See Richter*, 562 U.S. at 103. No habeas relief should be granted here.

## GROUND V

**THE DECISION OF THE OCCA FINDING THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN ORDERING PETITIONER'S SENTENCES TO RUN CONSECUTIVELY IS AN ISSUE OF STATE LAW AND THEREFORE IS NOT COGNIZABLE ON FEDERAL HABEAS REVIEW.**

In his fifth ground, Petitioner argues that the trial court abused its discretion in ordering his sentences to be served consecutively. Doc. 9, at 15; Doc. 10, at 39. Because this claim does not present an issue that is cognizable in a federal habeas proceeding, this ground must fail.

**A.     Background**

On direct appeal, Petitioner complained that the trial court abused its discretion when it ordered Petitioner's sentences to run consecutively. Ex. 2, page 33. The OCCA rejected Petitioner's challenge to his consecutive sentences, finding the trial court did not abuse its discretion. Ex. 1, at 25. The OCCA held as follows:

In Proposition Five, Appellant contends that the trial court abused its discretion when it ordered his sentences in Counts 1 through 4 to run consecutively. Contrary to Appellant's assertion the jury did not suggest or recommend that the sentences be served concurrently. Reviewing the record in the present case, we find that the trial court did not abuse its discretion. *Neloms v. State*, 2012 OK CR 7, ¶ 35, 274 P.3d 161, 170; *Moss v. Oklahoma Dep't of Corr.*, 2016 OK CR 23, ¶ 15, 403 P.3d 379, 382; *Riley v. State*, 1997 OK CR 51, ¶¶ 20-21, 947 P.2d 530, 535. Proposition Five is denied.

Ex. 1, at 25.

## B.    Argument and Authority

The Supreme Court has held that "[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "Generally, [this Court's] review of a sentence ends once [this Court] determine[s] the sentence is within the limitation set by statute." *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000); *see also Johnson v. Cowley*, 40 F.3d 341, 345 (10th Cir. 1994) (noting that sentence enhancement procedure is a matter of state law); *Shafer v. Stratton*, 906 F.2d 506, 510 (10th Cir. 1990) (on habeas review, rejecting petitioner's claim that the state's interpretation of its own sentencing laws was so egregious that his sentences were excessive and violated his due process rights, finding that such issue was one of state law and not a cognizable matter for a federal habeas petition).

Here, each of Petitioner's sentences given were properly within the statutory range of punishment for each crime. On Count I, Petitioner received fifty-one (51) years imprisonment for the crime of Trafficking in Illegal Drugs (Methamphetamine), in violation of Okla. Stat. tit. 63, § 2-415 (2015). Ex. 1, at 1. After two (2) or more prior felony convictions, this crime carries a range of punishment of twelve (12) years to life imprisonment. Okla. Stat. tit. 21, § 51.1(C) (2011); Okla. Stat. tit. 63, § 2-401 (2012); Okla. Stat. tit. 63, § 2-415 (2015). On Count II, Petitioner received twelve (12) years imprisonment for the crime of Acquiring Proceeds from Drug Activity, in

violation of Okla. Stat. tit. 63, § 2-503.1 (2011). Ex. 1, at 1-2. After two (2) or more prior felony convictions, this crime carries a punishment range of six (6) years to life imprisonment. Okla. Stat. tit. 21, § 51.1(C) (2011); Okla. Stat. tit. 63, § 2-503.1 (2011). On Count III, Petitioner received four (4) years imprisonment for the crime of Possession of Controlled Drugs Without Tax Stamp, in violation of Okla. Stat. tit. 68, § 450.8 (2011). Ex. 1, at 1-2. After two (2) or more prior felony convictions, this crime has a punishment range of four (4) years to life imprisonment. Okla. Stat. tit. 21, § 51.1(C) (2011); Okla. Stat. tit. 68, § 450.8 (2011). On Count IV, Petitioner received ten (10) years imprisonment for the crime of Falsely Personating Another to Create Liability, in violation of Okla. Stat. tit. 21, § 1531(4) (2011). Ex. 1, at 1-2. After two (2) or more prior felony convictions, this crime carries a punishment range of four (4) years to life imprisonment. Okla. Stat. tit. 21, § 51.1(C) (2011); Okla. Stat. 21, § 1531(4) (2011). Because each of these sentences are within the statutory range of punishment for each crime, this issue is not cognizable for federal habeas review. *Dennis*, 222 F.3d at 1258.

Petitioner's only challenge to the excessiveness of his sentence is an attack on the trial court's decision to order his sentences on Counts I-IV to run consecutively. Doc. 10, at 39. Whether a petitioner has been properly sentenced to concurrent or consecutive terms of imprisonment is an issue of state law that does not raise a cognizable federal issue for habeas corpus review. *Handley v. Page*, 398 F.2d 351, 352 (10th Cir. 1968); *see also Flowers v. Franklin*, 208 F. App'x 626, 628 (10th Cir. Dec. 11, 2006) (unpublished) (upholding magistrate's finding that, "to the extent [petitioner] was simply challenging the trial court's decision to run his sentence consecutively to the one previously imposed, that claim did not provide a basis for granting federal habeas relief"); *Woodberry v. Hannigan*, 37 F. App'x 404, 406 (10th Cir. Apr. 17, 2002) (unpublished) ("It is well established that courts may constitutionally impose consecutive sentences for completely distinct

and separate offenses"); *Harris v. Farris*, No. CIV-15-194-RAW-KEW, 2018 WL 4610067, at *12 (N.D. Okla. Sept. 25, 2018) (unpublished) (rejecting petitioner's habeas claim asserting the trial court abused its discretion in running his sentences consecutively, finding the claim not cognizable for federal habeas review).

Petitioner's fifth ground for relief is an issue of purely state law and does not raise an issue of federal constitutional law. *Estelle*, 502 U.S. at 67-69. Because Petitioner's claim is not an appropriate issue for federal habeas corpus relief, his argument must be rejected.

### GROUND VI

**PETITIONER'S CHALLENGE TO THE SCRIVENER'S ERRORS IN HIS JUDGMENT AND SENTENCE DOCUMENT IS MOOT, AS THE TRIAL COURT ISSUED AN AMENDED JUDGMENT AND SENTENCE CORRECTING THOSE ERRORS FOLLOWING THE DECISION OF THE OCCA ON DIRECT APPEAL.**

In his sixth ground for relief, Petitioner contends that his Judgment and Sentence documents in Counts II, III, and IV reflect the incorrect statutory provisions for each applicable conviction. Doc. 9, at 17; Doc. 10, at 40-42. As part of this argument, Petitioner also alleges that, because the Judgment and Sentence documents listed incorrect statutory citations, the trial court lacked jurisdiction to impose punishment on those counts. Doc. 10, at 40-42. The OCCA remanded this issue to the district court so that an order *nunc pro tunc* correcting the Judgment and Sentence documents could be entered, in order to accurately reflect Petitioner's convictions. Ex. 1, at 25-27. Because the issue was remanded to correct the Judgment and Sentence documents, the OCCA denied Petitioner's challenge to the trial court's jurisdiction. Ex. 1, at 27. Here, because the OCCA granted Petitioner's request for relief on this issue on direct appeal, Petitioner's re-urging of the same argument should be found moot on habeas review.

A.      **Background**

On direct appeal, Petitioner challenged the Judgment and Sentence documents reflecting his convictions in Counts II-IV, alleging that incorrect or incomplete statutory provisions were listed on each document. Ex. 2, pages 34-36. According to Petitioner, the trial court lacked jurisdiction to impose the sentences on each of the challenged counts as a result of the errors in the Judgment and Sentence documents. Ex. 2, pages 34-36. Petitioner requested his Judgment and Sentence documents be corrected by an order *nunc pro tunc*, or, in the alternative, that his sentences on the challenged counts be modified. Ex. 2, page 36. The OCCA agreed with Petitioner's challenge to the correctness of the statutory provisions listed on the Judgment and Sentence documents for Counts II-IV, and remanded the issue to the district court to enter an order *nunc pro tunc* to correct the documents. Ex. 1, at 25-27. In so holding, the OCCA announced the following:

> In Proposition Six, Appellant identifies several scrivener's errors within the Judgment and Sentence documents. Judgment and [S]entence documents are required to contain the statutory reference to the crime for which the defendant was convicted. 22 O.S.Supp.2016, § 977(A)(4). This Court has determined that the district court's judgment and sentence documents should accurately reflect the charge that is the basis for conviction. *Neloms v. State*, 2012 OK CR 7, ¶ 44, 274 P.3d 161, 172; *Head v. State*, 2006 OK CR 44, ¶ 30, 146 P.3d 1141, 1149; *Arnold v. State*, 1987 OK CR 220, ¶ 9, 744 P.2d 216, 218; *Dunaway v. State*, 1977 OK CR 86, ¶ 19, 561 P.2d 103, 108. A scrivener's error in a judgment and sentence document concerning the basis for conviction should be corrected by order *nunc pro tunc*. *Id.*
>
> The Judgment and Sentence in Count 2 of the present case follows the charging Information and incorrectly lists the statute under which Appellant was convicted as 63 O.S. § 2-503. The correct statutory reference is 63 O.S. § 2-503.1. This obvious clerical error should be corrected by order *nunc pro tunc*.
>
> The Judgment and Sentence in Count 3 follows the charging Information and incorrectly lists the statute under which Appellant was convicted as 68 O.S. § 450.1. The correct statutory reference is 68 O.S. § 450.8. This obvious clerical error should be corrected by order *nunc pro tunc*.

The Judgment and Sentence in Count 4 follows the charging Information and incorrectly lists the statute under which Appellant was convicted as 21 O.S. § 1531.4. The correct statutory reference is 21 O.S. § 1531(4). This obvious clerical error should be corrected by order *nunc pro tunc*.

The Judgment and Sentence documents for Counts 1 through 4 each fails to list Appellant's sentence as having been enhanced after two or more felony convictions as determined by the jury. This obvious clerical error should be corrected by order *nunc pro tunc*.

Upon remand, the district court should enter an order *nunc pro tunc* correcting the Judgment and Sentence documents to accurately reflect Appellant's convictions. Appellant's challenge to the jurisdiction of the trial court is denied.

Ex. 1, at 25-27.

**B.      Argument and Authority**

Following the OCCA's remand of this issue to the trial court so that an order *nunc pro tunc* could be entered to correct the statutory references for Counts II-IV, and to properly show that Petitioner's convictions on Counts I-IV were enhanced after two or more felony convictions, the trial court issued an amended Judgment and Sentence on July 23, 2019 titled "Amended to Add Attachment for Prior Convictions Judgment and Sentence," which is attached to this Response as Exhibit "8." In the amended Judgment and Sentence, the trial court corrected the statutory references for Counts II, III, and IV, in accordance with the mandate of the OCCA on remand. Ex. 7. Moreover, the amended Judgment and Sentence also references Petitioner's multiple prior convictions. Ex. 7. The first page of the amended Judgment and Sentence document includes the phrase "Prior Convictions See Attached," and a list of Petitioner's five (5) prior felony convictions is attached to the amended Judgment and Sentence. Ex. 7. Accordingly, because Petitioner was already granted relief on this issue by the OCCA, and because the trial court complied with the OCCA's mandate upon remand by issuing this amended Judgment and Sentence, Petitioner's identical claim on habeas review is therefore moot. *See United States v. Fisher*, 805 F.3d 982 (10th

Cir. 2015) ("A claim is moot if a party has already obtained the only relief it seeks.").[11] Because

Petitioner has already received his requested relief on this issue, no relief is warranted here.

## GROUND VII

**THE DECISION OF THE OCCA HOLDING THAT PETITIONER WAS NOT ENTITLED TO RELIEF ON A THEORY OF ALLEGED CUMULATIVE ERRORS WAS NEITHER CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, NOR BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS IN LIGHT OF THE STATE COURT RECORD.**

In his seventh and final ground for relief, Petitioner argues the cumulative effect of the

errors raised warrants relief, because such alleged errors deprived Petitioner of a fair proceeding

and a reliable outcome. Doc. 10, at 43. As will be shown, the OCCA reasonably denied relief on

this claim. Petitioner's request for a writ of habeas corpus should be denied accordingly.

## A.    Background

On direct appeal, Petitioner contended that cumulative error at trial denied him a fair

proceeding and a reliable outcome, and that such cumulative error warrants relief.  Ex. 2, page 37.

Petitioner based this claim on OCCA cases, the decision of the Tenth Circuit in *Cargle v. Mullin*,

317 F.3d 1196, 1206-1207 (10th Cir. 2003), and citations to the United States and Oklahoma

Constitutions. Ex. 2, page 37. The OCCA denied relief, holding the following:

> In Proposition Seven, Appellant claims the combined errors in his trial denied him
> the right to a constitutionally guaranteed fair trial. When there have been numerous

---

[11] In the substance of Petitioner's attack on his original Judgment and Sentence document, Petitioner claims that a trial court cannot impose punishment beyond the statutory maximum. Doc. 10, at 42. Petitioner claims that the trial court lacked jurisdiction to enforce punishment on his convictions because the original Judgment and Sentence listed the incorrect statutory references and failed to list Petitioner's prior convictions. Doc. 10, at 42. As discussed above, the amended Judgment and Sentence resolves the inaccurate statutory references and scrivener's errors presented in the original Judgment and Sentence. Therefore, Petitioner's challenge to the trial court's jurisdiction is now moot, just as his requested relief is also moot.

irregularities during the course of a trial that tend to prejudice the rights of the defendant, reversal will be required if the cumulative effect of all the errors is to deny the defendant a fair trial. *Bechtel v. State*, 1987 OK CR 126, ¶ 12, 738 P.2d 559, 561. In Proposition One we found that certain of the prosecutor's comments constituted error but that the comments had not affected his substantial rights. Considering these errors together, we, again, conclude that Appellant was not deprived of a fair trial. *Baird v. State*, 2017 OK CR 16, ¶ 42, 400 P.3d 875, 886. Proposition Seven should be denied.

Ex. 1, at 27-28.

**B. Argument and Authority**

The Tenth Circuit has rejected the argument that cumulative error analysis is not supported by clearly established federal law. *See Hanson v. Sherrod*, 797 F.3d 810, 852 n. 16 (10th Cir. 2015) ("[W]hen a habeas petitioner raises a cumulative error argument under due process principles the argument is reviewable because 'Supreme Court authority clearly establishes the right to a fair trial and due process'" (quoting *Darks v. Mullin*, 327 F.3d 1001, 1017 (10th Cir. 2003))). However, for purposes of preservation, Respondent maintains that there is no clearly established federal law on this issue and that the Tenth Circuit's reliance on general principles of "the right to a fair trial and due process," *see id.*, is improper pursuant to *Wright v. Van Patten*, 552 U.S. 120, 125-26 (no clearly established federal law where no decision of the Supreme Court "squarely addresses the issue"). *See, e.g.*, *Bush v. Carpenter*, 926 F.3d 644, 686 n. 16 (10th Cir. 2019) ("Although we are bound by Tenth Circuit precedent on this issue, we note, in passing, that the Supreme Court has never recognized the concept of cumulative error. And, because there is no 'clearly established Federal law' on this issue, we question whether a state appellate court's rejection of a cumulative error argument can justify federal habeas relief under the standards outlined in § 2254(d)."); *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002) ("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief.").

"A cumulative-error analysis aggregates all errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Smith v. Duckworth*, 824 F.3d 1233, 1255 (10th Cir. 2016) (internal quotation marks omitted). "The cumulative-error analysis applies where there are two or more actual errors. It does not apply, however, to the cumulative effect of non-errors." *Id.* (internal quotation marks omitted).

Here, Petitioner is not entitled to relief on his cumulative error claim. As an initial matter, § 2254(d) deference applies to the OCCA's rejection of Petitioner's cumulative claim because it adjudicated the claim on the merits. Although the OCCA did not cite the U.S. Constitution or any federal cases in deciding this claim, this Court must presume that the OCCA adjudicated the federal aspect of Petitioner's claim on the merits. *See Johnson*, 568 U.S. at 298. Therefore, Section 2254(d) deference should apply.

Moreover, the OCCA's decision rejecting Petitioner's cumulative error claim was neither contrary to, or an unreasonable application of, clearly established Supreme Court law, nor based on an unreasonable determination of fact. Even assuming cumulative error analysis is clearly established by the Supreme Court, the OCCA correctly—and certainly reasonably—rejected Petitioner's cumulative error claim, given that any errors found in the foregoing grounds were harmless individually, and were harmless when taken together. *See Smith*, 824 F.3d at 1255. Additionally, Respondent has demonstrated in each of the above grounds that Petitioner's claims are without merit and that the OCCA's denial of relief was fully supported by the record.[12]

---

[12] This Court may consider in its cumulative error analysis only constitutional errors. *See Lott*, 705 F.3d at 1223.

In reaching its decision, the OCCA found at most three errors. First, the OCCA determined that the prosecutor's elicitation of testimony from Officer Montgomery regarding whether Petitioner was a drug dealer was error, but was cured by the trial court's admonition to the jury. Ex. 1, at 5. Because an admonition to the jury generally cures any error, *see Patton*, 425 F.3d at 800, and because the OCCA found no other errors during the first stage of trial proceedings, there is no error to cumulate. *See Black v. Workman*, 682 F.3d 880, 914 (10th Cir. 2012) ("We are not persuaded that the constitutional violations alleged in Defendant's application had an 'inherent synergistic effect.' For these reasons, we hold that the OCCA did not unreasonably apply federal law in denying this claim."). Additionally, the OCCA found error in the second stage of trial proceedings in the prosecutor's appeal to sympathy for hypothetical victims of Petitioner's crimes, and error in the prosecutor's remarks about Petitioner's prior sentences for previous convictions. Ex. 1, at 8, 10-12. Although both of these errors occurred in second stage, a fairminded jurist could agree that these errors did not cumulate when Petitioner's sentences were well below the statutory maximum for each crime, and were fully justified by the compelling evidence of Petitioner's guilt and his lengthy criminal history. *See Richter*, 562 U.S. at 103.

## C.     Conclusion

Accordingly, this Court must deny relief on Petitioner's claim of cumulative error. The OCCA's rejection of Petitioner's cumulative error argument was neither contrary to, or an unreasonable application of, clearly established federal law, nor based on an unreasonable determination of fact in light of the state court record. *See* 28 U.S.C. § 2254(d). No relief is warranted for Petitioner's request for a writ habeas corpus.

## CONCLUSION

Petitioner's contentions have been answered by both argument and citations of authority. Respondent has shown that the decisions of the OCCA on direct appeal are neither contrary to, nor unreasonable applications of, Supreme Court precedent. Furthermore, as Respondent has supported his augments with ample reference to facts in the state court record, Petitioner fails to show that the OCCA's decisions were unreasonable determinations of fact in light of Supreme Court precedent or that the State court rested its decisions on factually mistaken interpretations of the record. 28 U.S.C. § 2254(d)(1)-(2). Because Petitioner has failed to show that the OCCA's adjudication of his claims resulted in unreasonable determinations of law or fact under 28 U.S.C. § 2254(d), he is not entitled to an evidentiary hearing or any other relief. *See Pinholster*, 563 U.S. at 181-86; *Jones*, 805 F.3d at 1222. Federal habeas corpus relief must be denied in its entirety by this Court.

Respectfully submitted,

**MIKE HUNTER**
**ATTORNEY GENERAL OF OKLAHOMA**

**s/ JOSHUA R. FANELLI**
**JOSHUA R. FANELLI, OBA # 33503**
**ASSISTANT ATTORNEY GENERAL**

313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 522-4423
(405) 522-4534 (FAX)
Service email: fhc.docket@oag.ok.gov

**ATTORNEYS FOR RESPONDENT**

## <u>CERTIFICATE OF SERVICE</u>

**<u>X</u>**       I hereby certify that on August 5, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.

**<u>X</u>**       I hereby certify that on August 5, 2019, I served the attached document by mail on the following, who is not a registered participant of the ECF System:

Jesse William Holland, #404882
Lawton Correctional Facility
8607 SE Flower Mound Rd.
Lawton, OK 73501

**<u>s/ JOSHUA R. FANELLI</u>**