## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JESSE WILLIAM HOLLAND, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 19-CV-0246-GKF-CDL |
| | ) | |
| JIM FARRIS,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

Petitioner Jesse William Holland, an Oklahoma prisoner appearing through counsel,[2] petitions for a writ of habeas corpus, under 28 U.S.C. § 2254, claiming the judgment entered against him in the District Court of Tulsa County, Case No. CF-2016-5318, is subject to federal collateral attack on several grounds. Holland also seeks leave to file a supplemental petition to add a new claim. Respondent Jim Farris urges the Court to construe the motion for leave to supplement as a motion to amend, to deny leave to amend because the new claim is untimely, and to deny the amended petition because Holland has not demonstrated any basis to grant habeas relief. For the following reasons, the Court treats the motion for leave to supplement as a motion to amend, denies the motion to amend (Dkt. 18), and denies the amended petition (Dkt. 9).

---

[1] According to a website maintained by the Oklahoma Department of Corrections (ODOC) (okoffender.doc.ok.gov), Holland is currently incarcerated at the Oklahoma State Penitentiary (OSP), in McAlester, Oklahoma. The Court therefore substitutes the OSP's warden, Jim Farris, in place of the ODOC's former director, Joe Allbaugh, as party respondent. *See* Rule 2(a), *Rules Governing Section 2254 Cases in the United States District Courts*. The Clerk of Court shall note this substitution on the record.

[2] Holland initially appeared *pro se*, but counsel entered an appearance on June 12, 2022. The Court nonetheless liberally construes the pleadings that Holland filed without the assistance of counsel. *Hall v Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## BACKGROUND

Following a traffic stop in September 2016, Officer Dean Montgomery found Holland in possession of $1,190 in cash and a Ziploc bag containing at least 51 grams of methamphetamine. Dkt. 16-2, Tr. Trial vol. 1, 154, 170-82, 207.[3]  In response to questions Officer Montgomery asked as he was booking Holland into jail, Holland stated that he was unemployed.  *Id.* at 188-91; Dkt. 16-6, Original Record (O.R.) 25.   In June 2017, an Oklahoma jury convicted Holland of four felonies—trafficking in illegal drugs (count one), acquiring proceeds from drug activity (count two), possessing controlled drugs without a tax stamp (count three), and falsely personating another to create liability (count four)—all after former conviction of two or more felonies, and of one misdemeanor—obstructing an officer (count five).   Dkt. 16-3, Tr. Trial vol. 2, 49-50.   In accordance with the jury's recommendations, the trial court sentenced Holland to serve 51 years (count one), 12 years (count two), four years (count three), and 10 years (count four) in ODOC custody, and one year in the county jail (count five).   Dkt. 16-5, Tr. Sentencing Hr'g 5.   The trial court ordered Holland to serve the four prison sentences consecutively and to serve the one-yar jail sentence concurrently with the fourth prison sentence.  *Id.*

Represented by counsel, Holland filed a direct appeal in the Oklahoma Court of Criminal Appeals (OCCA), raising seven claims.   Dkt. 15-1, *Holland v. State*, No. F-2017-638 (Okla. Crim. App. 2018) (unpublished) (OCCA Op.), 1-3.   The OCCA rejected each claim on the merits and affirmed Holland's convictions and sentences but remanded the case to the Tulsa County District Court with instructions to enter an order *nunc pro tunc* to correct several scrivener's errors in the original Judgments and Sentences.  *Id.* at 28.   The state district court filed an Amended Judgment and Sentence on October 15, 2018, making corrections as directed by the OCCA, and filed a

---

[3]  For consistency, the Court's citations refer to the CM/ECF header pagination.

Second Amended Judgment and Sentence on July 23, 2019, making additional corrections.  Dkt. 15-7, Second Am. J and Sentence 1-6.[4]

Holland filed a petition for writ of habeas corpus (Dkt. 1), in April 2019, in the United States District Court for the Western District of Oklahoma.  The case was transferred to this Court in May 2019.  Dkts. 6, 7.  With leave of Court, Holland filed an amended petition (Dkt. 9)[5] and a brief in support of the amended petition (Dkt. 10)[6] on June 3, 2019, raising the same seven claims he presented to the OCCA through his direct appeal.  Farris filed a response in opposition to the amended petition (Dkt. 15), urging the Court to deny habeas relief.

In August 2020, Holland filed an application for postconviction relief in state district court, claiming that the State of Oklahoma lacked jurisdiction over his criminal prosecution, in light of *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020), because he is Native American, he is a member of a federally-recognized tribe, and he committed his crimes in Indian country (the "*McGirt* claim").  Dkt. 20-1, Appl. 11.  The state district court granted Holland's application for postconviction relief.  Dkt. 20-3, Dist. Ct. Order (June 10, 2021) 1.  The State timely appealed, and the OCCA reversed the state district court's order based on the OCCA's prior decision, in *State ex rel. Matloff v.*

---

[4]  Farris provided a copy of only the second Amended Judgment and Sentence.  The Court therefore takes judicial notice of the Amended Judgment and Sentence filed in October 2018 which is available to the public through the Oklahoma State Courts Network.  *See State v. Holland*, https://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&number=CF-2016-5318&cmid=2989370, last visited August 15, 2022.

[5] On the filing of the amended petition, the Court declared moot the original petition.  Dkt. 11, at 1 n.1.

[6]  The brief in support of the amended petition consists, primarily, of copies of the briefs Holland and the State filed in the OCCA on direct appeal.  Dkt. 10, generally.  The Court construes Holland's references to the "attached brief" as evidence that he intends to rely on the arguments his appellate counsel presented to the OCCA to support the claims he raises in the amended petition.

*Wallace*, 497 P.3d 686 (Okla. Crim. App. 2021), that *McGirt* does not apply retroactively to convictions that were final before July 9, 2020, and remanded the case for further proceedings. Dkt. 20-4, OCCA Order 1-3.  On remand, the state district court denied Holland's application reasoning that *Wallace* barred his request for postconviction relief.  *See* Docket Sheet, *State v. Holland*,   https://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&number=CF-2016-5318&cmid=2989370, last visited August 15, 2022.  Holland timely appealed, and the OCCA affirmed the denial of postconviction relief on April 5, 2022.  *See* Docket Sheet, *Holland v. State*, https://www.oscn.net/dockets/GetCaseInformation.aspx?db=appellate&number =PC-2022-13&cmid=132115, last visited August 15, 2022.

Two months later, on June 12, 2022, Holland, through habeas counsel, filed a motion for leave to file a supplemental petition to add the *McGirt* claim.  Dkt. 18, Mot. to Am. 2-7.  Farris filed a response in opposition to the motion (Dkt. 20), and Holland filed a reply (Dkt. 21).

### *DISCUSSION*

As previously stated, Holland's amended petition reasserts the same seven claims he presented to the OCCA through his direct appeal.  Holland claims:

1) The prosecutor deprived him of a fair trial by (a) making statements about the prosecutor's military background during *voir dire* to "caus[e] the jury to sympathize and identify with the prosecution," (b) eliciting improper opinion testimony from Officer Montgomery regarding whether Holland is a drug dealer, (c) disparaging the presumption of innocence and attempting to shift the burden of proof to Holland, (d) making inflammatory remarks during second stage closing arguments that resulted in excessive sentences, (e) making unmistakable references to pardon and parole policies that resulted in excessive sentences, and (f) misstating the law and ridiculing defense counsel;

2)  The trial court plainly erred by allowing Officer Montgomery to testify about an incriminating statement Holland made during a custodial interrogation—namely, Holland's statement to Montgomery during the booking process that he was unemployed—because Montgomery did not first read Holland his rights, as required by *Miranda v. Arizona*, 384 U.S. 436 (1966);

3)  Holland was denied his Sixth Amendment right to counsel, as interpreted in *United States v. Cronic*, 466 U.S. 648 (1984), because trial counsel did not subject to the State's case to meaningful adversarial testing;

4)  Holland was denied his Sixth Amendment right to counsel, as interpreted in *Strickland v. Washington*, 466 U.S. 668 (1984), because trial counsel performed deficiently and prejudicially by (a) failing to raise an issue at trial about the discrepancies between the weight of the methamphetamine noted on the arrest affidavit (65.51 grams) and property receipt (65.6 grams "preweight" and 71.4 grams gross weight) and the weight of the methamphetamine as identified at trial by the forensic chemist (51.00 grams), (b) failing to object when the trial court allowed Officer Montgomery to testify about Holland's unwarned, incriminating statement regarding his lack of employment, and (c) failing to object to the prosecutorial misconduct described in claim one;

5)  The trial court abused its discretion when it ordered Holland's sentences to be served consecutively;

6)  The trial court lacked jurisdiction to impose sentences as to counts two, three, and four based on errors in the original Judgments and Sentences; and

7)  The cumulative effect of trial errors deprived Holland of a fair trial.

Dkt. 9, Am. Pet. 6-19; Dkt. 10, Pet'r's Br. 13-44.

Farris urges the Court to deny the amended petition.  He contends that 28 U.S.C. § 2254(d) bars relief as to claims one through four and seven; that claim five is not a cognizable habeas claim because it alleges only an error of state law; and that claim six is moot because the OCCA granted relief on direct appeal when it directed the trial court to enter an order *nunc pro tunc* to correct errors in the original Judgments and Sentences.  Dkt. 15, Resp. 11-67.

Before evaluating the seven claims raised in the amended petition, the Court considers Holland's request to add a *McGirt* claim.

## I.      Motion for leave to supplement

Holland seeks leave to file a supplemental petition to add a *McGirt* claim.[7]  Federal Rule of Civil Procedure 15 governs his request.  *See* 28 U.S.C. § 2242 (providing habeas petitions "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"); *see also Mayle v. Felix*, 545 U.S. 644, 655-65 (2005) (discussing application of Rule 15 in habeas context); *Postelle v. Carpenter*, 901 F.3d 1202, 1225 (10th Cir. 2018) (same).  At this stage of the proceeding, Holland may not amend the amended petition without leave of Court.  Fed. R. Civ. P. 15(a)(2).  Under Rule 15(a)(2), a "court should freely give leave" to amend "when justice so requires."  But a court may deny leave to amend if amendment would be futile.  *Stafford v. Saffle*, 34 F.3d 1557, 1560 (10th Cir. 1994).  Farris contends that amendment would be futile because the

---

[7] Holland suggests he seeks leave to supplement the amended petition, not amend it.  But the purpose of a "supplemental pleading" is to "set[] out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  Fed. R. Civ. P. 15(d); *Carter v. Bigelow*, 787 F.3d 1269, 1278 (10th Cir. 2015).  And supplemental pleadings "are distinct from amendments to pleadings under Rule 15, which 'relate to matters that occurred prior to the filing of the original pleading.'"  *Carter*, 787 F.3d at 1278.  The *McGirt* claim alleges the trial court lacked jurisdiction over Holland's prosecution based on facts that existed at the time of that prosecution.  Consequently, the Court concludes Holland seeks leave to amend, not supplement, the amended petition.

*McGirt* claim is untimely and does not relate back to any claims in the amended petition.  Dkt. 20, Resp. to Mot. 6-14.  The Court agrees.

### A.    Timeliness

Under 28 U.S.C. § 2244(d)(1), a state prisoner has one year from the latest of four dates to file a federal habeas petition challenging the validity of his or her custody pursuant to a state-court judgment.  In most cases, the one-year limitation period begins to run on the date on which the prisoner's state-court judgment becomes final following the conclusion of direct review.  28 U.S.C. § 2244(d)(1)(A); *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012); *Felix*, 545 U.S. at 655-65.  The one-year limitation period is tolled during the time that "a properly filed application for State postconviction relief or other collateral review with respect to the pertinent judgment or claim is pending" in state court.  28 U.S.C. § 2244(d)(2).  However, only applications filed within the petitioner's one-year limitation period "will toll the statute of limitations." *Clark v. Oklahoma*, 468 F.3d 711, 714 (10th Cir. 2006).

Applying § 2244(d)(1)(A),[8] Holland's state-court judgment became final on December 26, 2018, 90 days after the OCCA issued its decision on direct appeal, when the time expired for Holland to file a petition for writ of certiorari in the United States Supreme Court.  *Gonzalez*, 565 U.S. at 150.  His one-year limitation period commenced the next day, December 27, 2018, and expired on December 27, 2019. *Harris v Dinwiddie*, 642 F.3d 902, 906 n.6 (10th Cir. 2011).  Farris concedes that Holland timely filed the amended petition, and that the claims therein are timely, but argues that the *McGirt* claim is untimely.  Dkt. 15, Resp. 2; Dkt. 20, Resp. to Mot. 7-12. *See*

---

[8] In some circumstances, the limitation period begins later than the date the petitioner's state-court judgment became final.  28 U.S.C. § 2244(d)(1)(B), (C), (D).  But Holland does not suggest that any other provision of § 2244(d)(1) applies.  Dkts. 18, 21.  The Court thus confines its analysis to § 2244(d)(1)(A).

*Prendergast v. Clements*, 699 F.3d 1182, 1186-88 (10th Cir. 2012) (endorsing claim-by-claim approach to determine timeliness under § 2244(d)(1)).  The record supports Farris's view.  Holland first raised the *McGirt* claim in state court in 2020 and first raised it in this habeas proceeding in June of 2022.

Holland nevertheless contends the *McGirt* claim cannot be untimely for two reasons.  First, he argues that because the convicting court lacked jurisdiction, his judgment is "void" and thus "could not become final" for purposes of triggering § 2244(d)(1)(A)'s one-year limitation period.  Dkt. 18, Mot. to Am. 3-7; Dkt. 21, Reply Br. 3-6.  This argument lacks merit.  *See, e.g.*, *Lamarr v. Nunn*, No. 22-6063, 2022 WL 2678602, at * 2 (10th Cir. July 12, 2022) (unpublished)[9] (rejecting identical argument as "meritless" and stating, "This court has clearly explained that challenges to the convicting court's jurisdiction are considered due process challenges, subject to" the one-year statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)); *Murrell v. Crow*, 793 F. App'x 675, 678-79 (10th Cir. 2019) (unpublished) (rejecting habeas petitioner's argument "that because a litigant can generally challenge a court's subject-matter jurisdiction at any time, § 2244(d)(1) does not apply to his claim that the trial court lacked jurisdiction to accept his plea" and reasoning that "the jurisdictional nature of [the petitioner's] due-process claim" did not bar dismissal of that claim as untimely); *Rowbotham v. Nunn*, Case No. 22-CV-0011-JFH-SH, 2022 WL 1523195, at *2 (N.D. Okla. May 13, 2022) (slip op.) ("[T]here is no language in § 2244(d)(1)(A)—or any other provision of § 2244(d)(1)—to support that the one-year statute of limitations does not apply to judgments that are allegedly 'void' for lack of subject-matter jurisdiction.")

---

[9] The Court cites this unpublished decision, and other unpublished decisions herein, as persuasive authority.  *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

Second, Holland asserts "[t]he AEDPA would in effect violate the Suspension Clause of the U.S. Const., art. I, § 9, cl. 2." Dkt. 18, Mot. to Am. 3-4. The Suspension Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. 1 § 9, cl. 2. As Holland notes, "at a minimum," the Suspension Clause "protects the writ of habeas corpus as it existed when the Constitution was adopted in 1789." *Dep't of Homeland Security v. Thuraissigiam*, 140 S. Ct. 1959, 1969 (2020) (citation omitted). Holland's argument that applying the one-year limitation period would violate the Suspension Clause lacks merit. *See Long v. Miller*, 541 F. App'x 800, 802 (10th Cir. 2013) (unpublished) ("[T]he claim that AEDPA's limitations period violates the Suspension Clause has been squarely rejected by this court."). In *Long*, the United States Court of Appeals for the Tenth Circuit explained,

> We have held that although there may be circumstances when the limitations period "raises serious constitutional questions and possibly renders the habeas remedy inadequate and ineffective" in violation of the Suspension Clause, it can properly be applied absent grounds for equitable tolling or a showing of actual innocence or incompetence.

541 F. App'x at 802 (quoting *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998)). Critically, the petitioner bears the burden to show that applying the statute of limitations would render the habeas remedy inadequate and ineffective. *Miller*, 141 F.3d at 977. Holland's bare assertion that the AEDPA violates the Suspension Clause does not satisfy that burden. Moreover, Holland neither seeks equitable tolling nor presents a credible claim that he is actually innocent.

In short, the *McGirt* claim is untimely under § 2244(d)(1)(A) and Holland does not persuasively argue otherwise.

## B.     Relation back

When, as here, a habeas petitioner requests leave to add a new, untimely claim to a timely-filed petition, the Court must consider whether Rule 15(c)'s relation-back provision supports the

requested amendment. *See Felix*, 545 U.S. 644, 655-65 (2005) (discussing application of Rule 15 in habeas context). Generally, an amendment to a pleading can relate back to the original filing date if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). But Rule 15(c)'s relation-back provision works differently in habeas proceedings. Critically, "[a]n amended habeas petition . . . does not relate back (and, thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Felix*, 545 U.S. at 650. It is not enough to say that the newly-asserted claim arises from the petitioner's trial and conviction. *Id.* at 662. Rather, in the habeas context, "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Felix*, 545 U.S. at 659.

Holland's *McGirt* claim relies on facts that differ in time and type from the facts he alleges to support the seven claims he raises in the amended petition. As a result, Holland cannot rely on Rule 15(c)'s relation-back provision to support his request to add the untimely *McGirt* claim.

### C.    Conclusion

Because the *McGirt* claim is untimely and does not relate back to the claims in the amended petition it would be futile to permit him leave to amend the amended petition to add that claim. The Court therefore denies Holland's motion for leave to file a supplemental petition, and will adjudicate the amended petition only as to the seven timely claims asserted therein.

## II.    Amended petition

Because the OCCA adjudicated each claim Holland raises in the amended petition, this Court cannot grant federal habeas relief as to any claim unless Holland first demonstrates that the OCCA's adjudication of the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).[10]

In determining whether a petitioner has made any of these threshold showings, a federal habeas court must rely on the same record that the state court considered to adjudicate the federal claim. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The federal habeas court also must presume that the state court's factual findings are correct unless the petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Supreme Court has summarized § 2254(d)'s impact by explaining that "[w]hen a state court has applied clearly established federal law to reasonably determined facts in the process of adjudicating a claim on the merits, a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'" *Shinn v. Kayer*, 141 S. Ct. 517, 520 (2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

### A.    Prosecutorial misconduct (claim one)

Holland first claims that prosecutorial misconduct deprived him of a fair trial. Dkt. 9, Am. Pet. 6-7. Under clearly established federal law, prosecutorial misconduct generally does not warrant relief unless the prosecutor's remarks or actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-44 (1974)). To assess whether prosecutorial misconduct deprived a defendant of due process, a reviewing court must consider

---

[10] The "clearly established Federal law" referred to in § 2254(d)(1) consists of the Supreme Court's holdings in decisions issued on or before the date of the state court's decision. *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003); House *v. Hatch*, 527 F.3d 1010, 1015-16 (10th Cir. 2008).

the prosecutor's remarks or actions in light of the entire trial, not in isolation.  *Donnelly*, 416 U.S. at 645.  As he did on direct appeal, Holland alleges the prosecutor committed misconduct by:

1) emphasizing his own military background during *voir dire*, thereby causing the jury to sympathize and identify with the prosecution;

2) eliciting improper opinion testimony from Officer Montgomery as to whether Holland was a drug dealer;

3) disparaging the presumption of innocence and attempting to shift the burden of proof to Holland;

4) making inflammatory statements during closing argument of the punishment phase, resulting in an excessive sentence;

5) referring to pardon and parole policies during closing argument of the punishment phase, resulting in an excessive sentence; and

6) misstating the law and ridiculing defense counsel.

Dkt. 9, Am. Pet. 6-7; Dkt. 10, Pet'r's Br. 13-24.

Applying the federal-due-process standard from *Darden* and *Donnelly*, the OCCA noted that the prosecutor's challenged comments must be viewed in light of the entire record and that reversal is required only when "the cumulative effect" of the prosecutor's misconduct deprived the defendant of a fair trial.  Dkt. 15-1, OCCA Op. 3.  The OCCA considered whether the prosecutor's comments were improper and found that most were not, including the remark Holland identified as impermissibly shifting the burden of proof to the defense.  *Id.* at 3-9, 14-15.  The OCCA found that some comments, including those that Holland identified as disparaging the presumption of innocence, were arguably improper but found that the trial court cured any error by sustaining Holland's contemporaneous objections as to those comments.  *Id.* at 5-6, 14-15.

The OCCA agreed with Holland that the prosecutor made improper comments, in two instances, during the punishment phase of Holland's trial.  First, the OCCA found that "the prosecutor's suggestion in the present case that the lives of 204 people would have been destroyed if the officer had not caught [Holland] that day was inappropriate."  Dkt. 15-1, OCCA Op. 8-9.  Second, the OCCA found that the prosecutor made improper and misleading comments when he "made unmistakable references to pardon and parole" in discussing Holland's service of prior sentences.  *Id.* at 10-13.  But the OCCA concluded that these improper comments did not affect Holland's substantial rights and thus did not require reversal.  The OCCA reasoned that the prosecutor's inappropriate suggestion that hypothetical victims were spared when Holland was arrested "did not affect the jury's assessment of punishment" because "[t]he jury refused to follow the prosecutor's recommendation [to impose extremely lengthy sentences] and assessed reasonable punishments for the charged offenses" and "[t]he evidence readily supported the jury's determination."  *Id.* at 9-10.  Likewise, the OCCA reasoned that the prosecutor's improper comments regarding pardon and parole policies "did not render his sentencing trial fundamentally unfair."  *Id.* at 14.  Ultimately, the OCCA concluded, based on its review of the entire record, that "the cumulative effect of the prosecutor's comments did not deprive [Holland] of a fair trial."  *Id.* at 15.

In this proceeding, Holland reasserts the same arguments he presented to the OCCA to support his view that all of the prosecutor's comments were improper and prejudicial and thus deprived him of his constitutional right to a fair trial.  Dkt. 9, Am. Pet. 6-7; Dkt. 10, Pet'r's Br. 13-24.  For three reasons, the Court rejects this claim.  First, because the OCCA applied the correct law from *Donnelly* and *DeChristoforo*, and its application of that law to the facts of this case was objectively reasonable, Holland has not shown that the OCCA's decision either is contrary to, or

based on an unreasonable application of, controlling Supreme Court precedent.   28 U.S.C. § 2244(d)(1); *see House*, 527 F.3d at 1018-19 (discussing § 2244(d)(1)).   Second, Holland does not identify any facts that the OCCA unreasonably determined in evaluating the prosecutorial-misconduct claim.   28 U.S.C. § 2254(d)(2); *see House*, 527 F.3d at 1019-20 (noting that § 2244(d)(2) focuses on "factual error").   Third, like the OCCA, this Court has reviewed the prosecutor's challenged remarks, in light of the entire trial record, and the Court concludes that the cumulative effect of the prosecutor's improper remarks did not render the trial so unfair as to violate Holland's right to due process.   For these reasons, the Court denies the amended petition as to claim one.

### B.   Admission of Holland's unwarned statement (claim two)

Next, Holland contends the trial court plainly erred by allowing Officer Montgomery to testify at trial that, during the booking process, Holland stated that he was unemployed.   Dkt. 9, Am. Pet. 9; Dkt. 16-2, Tr. Trial vol. 1, 183, 191-92.   As Holland alleges, Montgomery also testified at trial (1) that Montgomery concluded, based on his observations during the traffic stop, that the cash in Holland's pockets constituted "drug proceeds," and (2) that Holland's statement that he was unemployed "was significant" in supporting that conclusion.   Dkt. 9, Am. Pet. 9; Dkt. 16-2, Tr. Trial vol. 1, 182-83, 191-92.   Holland claims permitting Montgomery to testify about Holland's statement that he was unemployed violated his Fifth Amendment right against self-incrimination because it is undisputed that Montgomery did not *Mirandize* Holland before asking about his employment.   Dkt. 10, Pet'r's Br. 25-27; Dkt. 16-1, Tr. Preliminary Hr'g 39.   Holland further argues that the Fifth Amendment violation was not harmless because "Montgomery's testimony about [his] statement was integral" to Holland's conviction, in count two, of acquiring proceeds from drug activity.   *Id.*

Under clearly established federal law, "suspects interrogated while in police custody must be told that they have a right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney, either retained or appointed, at the interrogation." *Thompson v. Keohane*, 516 U.S. 99, 107 (1995) (citing *Miranda*, 384 U.S. at 444). These warnings "guard[] against the prosecutorial use of compelled statements as prohibited by the Fifth Amendment." *Oregon v. Elstad*, 470 U.S. 298, 304 (1985). The "[f]ailure to administer *Miranda* warnings creates a presumption of compulsion" and "unwarned statements that are otherwise voluntary within the meaning of the Fifth Amendment must nevertheless be excluded from evidence under *Miranda*." *Id.* at 307. "[C]ustodial interrogation for purposes of *Miranda* includes both express questioning and words or actions that . . . [are] reasonably likely to elicit an incriminating response." *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990).

However, in *Muniz*, "a plurality of the [Supreme] Court recognized the exception 'which exempts from *Miranda*'s coverage questions to secure the "biographical data necessary to complete booking or pretrial services."'" *United States v. Parra*, 2 F.3d 1058, 1067 (10th Cir. 1993) (quoting *Muniz*, 496 U.S. at 601-02). The "underlying rationale" for this exception, sometimes called the "booking exception," "is that routine booking questions do not constitute interrogation because they do not normally elicit incriminating responses." *Id.* at 1068. However, in recognizing the booking exception, the *Muniz* plurality also noted that "the police may not ask questions, even during booking, that are designed to elicit incriminatory admissions." *Id.* (quoting *Muniz*, 496 U.S. at 602 n.14). "Thus, where questions regarding normally routine biographical information are designed to elicit incriminating information, the questioning constitutes interrogation subject to the strictures of *Miranda*." *Parra*, 2 F.3d at 1068.

Applying plain-error review, based on Holland's failure to object to the admission of Officer Montgomery's testimony about Holland's unwarned statement, the OCCA found no Fifth Amendment violation.  The OCCA reasoned,

> [Holland's] statement concerning lack of employment during the booking process was admissible.  The officer's inquiries were not intended to elicit an incriminating response but were simply necessary to complete the booking process.  Therefore, they met the booking exception to *Miranda* and do not amount to custodial interrogation.  *Pennsylvania v. Muniz*, 496 U.S. 582, 594, 601-02, 110 S. Ct. 2638, 2646, 2650-51, 110 L. Ed. 2d 528 (1990); *Gilbert v. State*, 1997 OK CR 71, ¶ 46, 951 P.2d 98, 112; *Clayton v. State*, 1992 OK CR 60, ¶ 29, 840 P.2d 18. 27.  Thus, we conclude that [Holland] has not shown that error, plain or otherwise, occurred.

Dkt. 15-1, OCCA Op. 16-17.

Holland argues, as he did on direct appeal, that his statement about being unemployed was not admissible under the booking exception because, under the circumstances of this case, it was clear that Officer Montgomery's question about Holland's employment, after finding a bag containing 51 grams of methamphetamine and nearly $1200 in cash in Holland's pockets—was custodial interrogation designed to elicit an incriminating response.  Dkt. 10, Pet'r's Br. 26-27.

The Court liberally construes Holland's argument as attempting to show, under § 2254(d)(1), that the OCCA unreasonably applied *Muniz* to the facts of his case.  As just discussed, it would be objectively unreasonable to apply the booking exception when "questions regarding normally routine biographical information are designed to elicit incriminating information."  *Parra*, 2 F.3d at 1068.  And there is some support in the record for Holland's view that Montgomery's question about his employment, even if ordinarily routine, might have been improperly used as an investigatory tool in this case.  For example, during Holland's preliminary hearing, the prosecutor asked Officer Montgomery, "So what are some of the things when you find drugs and money that you look for, other things in order to determine whether that money is associated with the distribution of drugs?"  Dkt. 16-1, Tr. Preliminary Hr'g 26.  Montgomery

16

responded:  "The easiest one to look at is if the subject has a job, a legitimate means to come across

that earning.  And if there is not a legitimate means, and they have narcotics, it's oftentimes related

one to the other."  Dkt. 16-1, Tr. Preliminary Hr'g 26.  Similarly, at trial, Officer Wesley Anderson,

the officer who initiated the traffic stop that resulted in Holland's arrest, testified that "things" he

looks for "commonly associated with the illegal drugs found" that may indicate the drugs are

intended for distribution include "[l]arge amounts of money that is unexplainable, not having a

job, multiple cell phones, packaging materials, [and] scales."  Dkt. 16-2, Tr. Trial vol. 1, 120-24.

In addition, at the preliminary hearing, Montgomery testified that he found $1,190 in cash in

Holland's pocket, and the following colloquy occurred:

> Q.   And based on everything that you observed or saw that day, did you draw
>       any type of conclusions as to what that money was associated with, or what
>       it was used for?
> A.   Yes.
> Q.   What was that for?
> A.   Drugs.
> Q.   All right.  And how were you able to draw that conclusion?
> A.   Mr. Holland did not have a job, the female occupant of the car did not have
>       a job, either.  A large amount of narcotics, along with the cash.  And some
>       of the cash was consistent with street level narcotics sales.

Dkt. 16-1, Tr. Preliminary Hr'g 31.  On cross-examination, Montgomery testified he did not give

Holland any *Miranda* warnings.  *Id.* at 39.  But when defense counsel asked, "How did you learn

that Mr. Holland was not employed?  Did you ask him about his employment?," Montgomery

replied, "I don't think I did."  *Id.* at 39-40.  And, as previously stated, Officer Montgomery testified

at trial that Holland's lack of employment was "significant" in reinforcing Montgomery's belief

that the nearly $1200 in cash Holland had in his pocket was "drug proceeds."  *Id.* at 183, 191-92.

Nevertheless, Officer Montgomery also clearly testified at trial that he asked about

Holland's employment during the booking process at the jail.  On direct examination at trial,

Montgomery described questions he asked Holland during the booking process when Montgomery

was completing an arrest and booking report, and the following colloquy took place between the

prosecutor and Montgomery:

> Q.    Okay.  All right.  Do you obtain – do you obtain an individual's employment
>       records whenever you were there?
> A.    There is a line to be filled out.
> Q.    Now, on this particular night, when you arrested the defendant, did you ask
>       him if he was employed?
> A.    Yes.
> Q.    What did he say?
> A.    He said no work, or he said he doesn't have a job.  I indicated no work on
>       the line.
> Q.    He told you he didn't have a job.  Officer Montgomery, is that significant
>       to you in light of the fact that he almost had $1,200 in cash in his pocket?
> A.    Yes.
> Q.    And why is that significant?
> A.    It furthers that he had that much money on him with no job, $1,190 without
>       having a job.  Drugs are extremely profitable.

Dkt. 16-2, Tr. Trial vol. 1, 190-92.  Consistent with his testimony, the arrest and booking report

contains a blank for "employment" which Montgomery completed by indicting "no work."  Dkt.

16-6, O.R. 25.   On this record, reasonable, fairminded jurists could find that the circumstances

surrounding when and how Officer Montgomery first elicited Holland's statement about his

employment status are ambiguous.  Thus, it is at least arguable that application of the booking

exception, under the particular facts of this case, was a closer call than the OCCA determined.

All that said, even if this Court assumes without deciding that the OCCA unreasonably

applied *Muniz* when it found that no Fifth Amendment error occurred, this would only remove

§ 2254(d)'s bar to habeas relief.  And removing that bar does not entitle Holland to federal habeas

relief on this claim unless he can also persuade this Court that the constitutional "error had a

'substantial or injurious effect or influence' on the outcome of his trial."  *Brown v. Davenport*, 142

S. Ct. 1510, 1517, 1519 (April, 21, 2022) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637

(1993)); *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (holding "that in § 2254 proceedings

a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under

the 'substantial and injurious effect' standard set forth in *Brecht* . . . whether or not the state appellate court recognized the error and reviewed it for harmlessness under the "harmless beyond a reasonable doubt" standard"). And, on the record presented, the Court finds that any Fifth Amendment error arising from the admission of Montgomery's testimony about Holland's unwarned statement was harmless under *Brecht*.

In addition to Montgomery's testimony that Holland stated he was not employed, the jury heard evidence that Holland had nearly $1200 in cash and at least 51 grams of methamphetamine in his pockets, had four cell phones with him in the car, had no identification documents, and gave officers a false name during the traffic stop. Dkt. 16-2, Tr. Trial vol. 1, 127-36, 178-81, 207. Officers Anderson and Montgomery testified, based on their training and experience, that the amount of methamphetamine in the bag and the multiple cell phones were indicative of drug dealing. *Id.* at 137-38, 165-69. And, while Holland's theory of defense appeared to be that he possessed the methamphetamine for personal use, *see* Dkt. 10, Pet'r's Br. 30, Montgomery testified that the "typical dosage unit" for personal use of methamphetamine "is about a quarter of a gram," and that Holland's bag contained over 200 doses. Dkt. 16-2, Tr. Trial vol. 1, 161. Based on his training and experience, Montgomery testified that people who possess drugs for personal use generally have instruments that they would use to ingest the drugs, e.g., lighters and glass pipes. *Id.* at 164. Montgomery also testified he did not find any instruments on Montgomery's person or in the car that could have been used to ingest methamphetamine. *Id.* at 182-83. In light of the entire trial record, and regardless of how significant Montgomery found Holland's employment status, the jury had strong circumstantial evidence—beyond the unwarned statement that Holland was unemployed—to find, beyond a reasonable doubt, that Holland acquired the $1,190 as proceeds of drug activity.

In sum, even if the Court assumes without deciding (1) that the OCCA's decision on the Fifth Amendment claim involved an unreasonable application of *Muniz* and (2) that a Fifth Amendment error occurred at trial, the Court concludes that error had no substantial and injurious effect on the outcome of Holland's trial.  The Court thus denies the amended petition as to claim two.

## C.       Ineffective assistance of trial counsel under *Cronic* (claim three)

Next, Holland claims he was deprived of his Sixth Amendment right to counsel, as interpreted in *United States v. Cronic*, 466 U.S. 648 (1984), because trial counsel failed to subject the State's case to meaningful adversarial testing. Dkt. 9, Am. Pet. 10.  As he did on direct appeal, Holland argues that his attorney filed no pretrial motions, waived opening statements at both stages of his bifurcated trial, "interposed few objections and conducted only token cross examination of three of the State's four witnesses," thereby leaving the State's case "completely unchallenged." Dkt. 10, Pet'r's Br. 30 (citing Dkt. 16-2, Tr. Trial vol. 1, 214, 139-42, 152-53, 192-97; Dkt. 16-3, Tr. Trial vol. 2, 242-45, 267).  As further support for this claim Holland asked the OCCA, and now asks this Court, to consider an affidavit he attached his request either to supplement the appellate record or to have an evidentiary hearing regarding his ineffective-assistance-of-counsel claims (claims three and four). Dkt. 10, Pet'r's Br. 30-31.  That affidavit, signed by an attorney who was present in the Tulsa County courthouse on the last day of Holland's trial, avers that the affiant saw Holland's attorney "in the hallway celebrating with the prosecutors" after the trial, that Holland's attorney "appeared pleased with the results of the case . . . and made disparaging comments about Mr. Holland and his family," and that Holland's attorney "told the prosecutors that Mr. Holland

was an idiot for going to trial and deserved to die in prison." Dkt. 10, Pet'r's Br. 30-31; Dkt. 15-4, Beach Aff. 6-7.[11]

Under clearly established federal law, the right to the assistance of counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *Cronic*, 466 U.S. at 654; *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). In 1984, the Supreme Court issued two decisions that supply guiding legal principles for most ineffective-assistance-of-counsel claims. The Supreme Court later summarized these cases:

> In *Strickland*, which was decided the same day as *Cronic*, we announced a two-part test for evaluating claims that a defendant's counsel performed so incompetently in his or her representation of a defendant that the defendant's sentence or conviction should be reversed. We reasoned that there would be a sufficient indication that counsel's assistance was defective enough to undermine confidence in a proceeding's result if the defendant proved two things: first, that counsel's "representation fell below an objective standard of reasonableness," 466 U.S., at 688, 104 S. Ct. 2052; and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.*, at 694, 104 S. Ct. 2052. Without proof of both deficient performance and prejudice to the defense, we concluded, it could not be said that the sentence or conviction "resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable," *id.*, at 687, 104 S. Ct. 2052, and the sentence or conviction should stand.
>
> In *Cronic*, we considered whether the Court of Appeals was correct in reversing a defendant's conviction under the Sixth Amendment without inquiring into counsel's actual performance or requiring the defendant to show the effect it had on the trial. 466 U.S., at 650, 658, 104 S. Ct. 2039. We determined that the court had erred and remanded to allow the claim to be considered under *Strickland*'s test. 466 U.S., at 666–667, and n. 41, 104 S. Ct. 2039. In the course of deciding this question, we identified three situations implicating the right to counsel that involved circumstances "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.*, at 658-659, 104 S. Ct. 2039.
>
> First and "[m]ost obvious" was the "complete denial of counsel." *Id.*, at 659, 104 S. Ct. 2039. A trial would be presumptively unfair, we said, where the accused is denied the presence of counsel at "a critical stage," *id.*, at 659, 662, 104 S. Ct. 2039, a phrase we used in *Hamilton v. Alabama*, 368 U.S. 52, 54, 82 S. Ct. 157, 7 L.Ed.2d

---

[11] The OCCA denied Holland's request to add the affidavit to the appellate record, but the OCCA considered the substance of the affidavit when it denied his request for an evidentiary hearing. Dkt. 15-1, OCCA Op. 23-24. The affidavit is thus part of the record properly before this Court.

114 (1961), and *White v. Maryland*, 373 U.S. 59, 60, 83 S. Ct. 1050, 10 L.Ed.2d 193 (1963) (*per curiam*), to denote a step of a criminal proceeding, such as arraignment, that held significant consequences for the accused.   Second, we posited that a similar presumption was warranted if "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Cronic*, *supra*, at 659, 104 S. Ct. 2039. Finally, we said that in cases like *Powell v. Alabama*, 287 U.S. 45, 53 S. Ct. 55, 77 L. Ed. 158 (1932), where counsel is called upon to render assistance under circumstances where competent counsel very likely could not, the defendant need not show that the proceedings were affected.   *Cronic*, *supra*, at 659-662, 104 S. Ct. 2039.

*Bell v. Cone*, 535 U.S. 685, 695-96 (2002) (footnote omitted).   Like Holland, the habeas petitioner in *Cone* raised a claim that he believed fit within the second situation described in *Cronic*.   *Cone*, 535 U.S. at 696.   Specifically, the petitioner in *Cone* argued that his attorney "failed to 'mount some case for life' after the prosecution introduced evidence in the sentencing hearing and gave a closing statement." *Id.* at 697.   The *Cone* Court disagreed, explaining that "[w]hen [the Supreme Court] spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, [it] indicated that the attorney's failure must be complete." *Cone*, 535 U.S. at 697.   The *Cone* Court thus clarified that *Cronic*'s presumption of prejudice, as to the second situation the *Cronic* Court described, applies only when defense counsel completely fails to challenge the prosecution's case, whereas *Strickland*'s showing of prejudice applies in all cases when defense counsel fails to challenge the prosecution's case "at specific points." *Cone*, 535 U.S. at 697.

The OCCA rejected Holland's *Cronic* claim because it found that "this is not a case where counsel entirely failed to subject the prosecution's case to meaningful adversarial testing." Dkt. 15-1, OCCA Op. 19.   The OCCA reasoned:

Defense counsel ably conducted *voir dire*, connecting with the potential jurors while searching for individuals favorable to [Holland's] case.   She engaged in a poignant cross-examination of the State's witnesses and developed evidence to support [Holland's] defense.   Counsel also secured a stipulation preventing the prosecution from introducing evidence that [Holland] had outstanding warrants at the time of the traffic stop.   She raised meritorious objections, with several side bars

> to advance [Holland's] cause, and secured favorable rulings on [Holland's] behalf.
> Counsel entered a demur to the evidence and gave a competent closing argument
> at the end of the first stage of the trial.  Before the second stage of the trial, defense
> counsel argued that some of [Holland's] prior felony convictions were
> transactional.  She entered a demur and gave a competent closing argument at the
> end of the second stage of the trial.  Based upon the record, we find that counsel
> subjected the prosecution's case to adversarial testing.

Dkt. 15-1, OCCA Op. 19.

The OCCA then looked beyond the trial record and considered the affidavit Holland

submitted regarding trial counsel's post-trial behavior.  Dkt. 15-1, OCCA Op. 24.  The OCCA

concluded that "[t]he comments within the affidavit . . . fail to overcome the trial record and

establish that counsel failed to oppose the prosecution's case throughout the proceeding."  *Id.*

Having independently reviewed the trial record, the Court finds the OCCA's decision to

reject Holland's *Cronic* claim is neither contrary to *Cronic* and *Cone* nor based on an unreasonable

application of *Cronic* and *Cone*.  As the OCCA reasoned, the trial transcripts do not show a

"complete" failure to challenge the State's case.  And, while the comments in the affidavit, if true,

demonstrate, at the very least, a serious lapse in judgment and a complete lack of professionalism,

the Court cannot say that it was objectively unreasonable for the OCCA to determine that the

substance of the affidavit did not "overcome" evidence in the trial record that defense counsel did

not utterly fail to subject the prosecution's case to adversarial testing.  The Court therefore agrees

with Farris that § 2254(d) bars relief and denies the petition as to claim three.

### D.   Ineffective assistance of trial counsel under *Strickland* (claim four)

Alternatively, Holland claims he was deprived of his Sixth Amendment right to counsel,

as interpreted in *Strickland v. Washington*, 466 U.S. 668 (1984), because trial counsel (1) did not

object to the prosecutorial misconduct, as described in claim one; (2) did not object to the

admission of Holland's unwarned statement about his employment status, as discussed in claim

two; and (3) did not raise any issues before or during trial regarding discrepancies in the weight of

the methamphetamine identified in the arrest affidavit, the property receipt, and the testimony of the forensic analyst or to challenge the chain of custody for the methamphetamine.  Dkt. 9, Am. Pet. 12; Dkt. 10, Pet'r's Br. 33-38.

As previously stated, *Strickland* provides the clearly established federal law and requires a defendant to show (1) that counsel performed deficiently and (2) that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different.  466 U.S. at 687-88, 694.  On direct review in state court, "the standard for judging counsel's representation is a most deferential one."  *Richter*, 562 U.S. at 105.  On habeas review, "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult."  *Id.*  On habeas review, "the question is not whether counsel's actions were reasonable," instead, "the question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*

Applying *Strickland*, the OCCA rejected the *Strickland* claim.  Relying on its prior determinations that the prosecutor did not commit reversible misconduct and that the trial court did not commit reversible error by admitting Holland's unwarned, incriminating statement about his employment, the OCCA found that trial counsel did not perform deficiently or prejudicially by failing to object to the prosecutorial misconduct or the admission of Holland's statement.  Dkt. 15-1, OCCA Op. 20-21.  As to trial counsel's failure to object to discrepancies in the weight of the methamphetamine and failure to challenge the chain of custody, the OCCA stated,

> Reviewing the record in the present case, we find that [Holland] has not shown that counsel rendered ineffective assistance under *Strickland*.  The officer's testimony at trial established that the methamphetamine was in substantially the same condition as when the crime was committed, thus, the substance was admissible at trial.  Although it is clear from the record that there was a variance in the measures of the substance between the field and laboratory, the quantity of the substance was well above the minimum amount to qualify as trafficking under either measurement.  In light of the other evidence at trial, we find that [Holland] has not

shown a reasonable probability that the outcome of the trial would have been different had counsel raised the challenge that [Holland] now raises on appeal.

Dkt. 15-1, OCCA Op. 22-23.

Because it is clear that the OCCA applied *Strickland*, Holland cannot show that the OCCA's decision is contrary to clearly established federal law. *House*, 527 F.3d at 1018-19. Thus, the Court construes his argument to assert that the OCCA either unreasonably applied the law or unreasonably determined the facts relevant to the *Strickland* analysis. But if this is his argument the Court rejects it. As previously discussed, it was objectively reasonable for the OCCA to determine that the prosecutor's alleged misconduct did not deprive Holland of a fair trial. Even if trial counsel reasonably should have objected to those remarks the OCCA found improper, counsel's failure did not prejudice Holland. And, while it might have been objectively unreasonable for the OCCA to reject Holland's Fifth Amendment claim, and thus objectively unreasonable for the OCCA to find that counsel did not perform deficiently by failing to object to Officer Montgomery's testimony about the unwarned statement, the admission of that statement was harmless. And there is no basis in the record to say that, but for, trial counsel's failure to object to the admission of that statement, the outcome of the trial would have been different. Finally, it was not objectively unreasonable for the OCCA to determine that Holland could not establish prejudice based on counsel's failure to challenge discrepancies in the weight of the methamphetamine or to challenge the chain of custody. On the record presented, it appears that officers may have recovered *more* methamphetamine from Holland's pocket than the forensic chemist testified to at trial. As the OCCA reasoned, the 51.00 grams of methamphetamine the forensic chemist described was more than twice the minimum quantity necessary to establish drug trafficking under Oklahoma law. Okla. Stat. tit. 63, § 415(C)(4)(a). There is a reasonable argument counsel satisfied *Strickland*'s deferential standard by not calling attention to the

possibility that Holland actually may have possessed closer to three times the minimum quantity of methamphetamine necessary to convict him of drug trafficking and by not suggesting that either the law enforcement officers or the forensic chemist tampered with the drugs or otherwise failed to comply with chain-of-custody procedures. Moreover, even if it could be reasonable to conclude that counsel performed deficiently as to the drug quantity and chain of custody issues, it was not objectively unreasonable for the OCCA to find no resulting prejudice.

The Court therefore denies the amended petition as to claim four.

### E.      Consecutive sentences (claim five)

In his fifth claim, Holland asserts that the trial court abused its discretion by ordering him to consecutively serve his four prison sentences.  Dkt. 9, Am. Pet. 15; Dkt. 10, Pet'r's Br. 39. Holland argued on direct appeal, and reasserts here, that, under state law, "[m]odification from consecutive to concurrent is warranted where the crimes occurred near the same time and place, where not all offenses were serious, and where the jury suggests a preference of concurrent service." Dkt. 10, Pet'r's Br. 39.  Applying state law, the OCCA rejected this claim.  Dkt. 15-1, OCCA Op. 25.

The Court agrees with Farris that this claim does not present a cognizable habeas claim.  A federal district court has authority to grant relief to a prisoner in custody under a state-court judgment only if the prisoner demonstrates "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The plain language of § 2254(a) provides that habeas relief is available only to remedy violations of federal law, not state law. *Wilson v. Cocoran*, 562 U.S. 1, 5 (2010).  Holland cites no clearly established federal law governing a state court's discretionary decision to impose consecutive rather than concurrent sentences. Dkt. 9, Am. Pet. 15; Dkt. 10, Pet'r's Br. 39.  This is not surprising as a state trial court's

sentencing decisions generally involve matters of state law.  *See Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000) (noting that federal habeas courts "afford wide discretion to the state trial court's sentencing decision, and challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law").  Holland does not argue that his sentences are outside the statutory limits for his crimes or are otherwise unauthorized by state law.  And, as Farris contends, each of Holland's sentences are within the applicable statutory range of punishment.  His 51-year prison sentence for trafficking methamphetamine is within the permitted range of 12 years to life imprisonment when that crime is committed by a person who has two or more prior felony convictions.  Okla. Stat. tit. 63, § 2-401 (2012), Okla. Stat. tit. 63, § 2-415 (2015); Okla. Stat. tit. 21, § 51.1(C) (2011).  His 12-year prison sentence for acquiring proceeds from drug activity is within the statutory range of six years to life imprisonment when that crime is committed by a person who has two or more prior felony convictions.  Okla. Stat. tit. 63, § 2-503.1 (2011); Okla. Stat tit. 21, § 51.1(C) (2011).

Based on the foregoing, Holland's fifth claim does not present a cognizable habeas claim.  The Court thus denies the amended petition as to claim five.

### F.    Scrivener's errors (claim six)

In claim six, Holland alleges the trial court "lacked jurisdiction to impose the count 2-4 sentences based on the convictions reflected [in the] Judgment and Sentence documents."  Dkt. 9, Am. Pet. 17.  More specifically, he argued on direct appeal and reasserts here, that the original Judgments and Sentences referred to incorrect statutory provisions and failed to refer to the statutes related to sentencing, but he acknowledged that the jury "was correctly instructed on the subject offenses and found him guilty after two or more previous convictions."  Dkt. 10, Pet'r's Br. 40-

42.  The relief he sought from the OCCA was to either modify his sentences or direct the trial court to correct errors in the Judgments and Sentences through an order *nunc pro tunc*.  *Id.* at 42.

As Farris contends, Holland's complaints about scrivener's errors are not cognizable on habeas review.  *Wilson*, 562 U.S. at 5.  And, even if this claim were cognizable, the OCCA granted the latter form of relief, and the trial court corrected the errors complained of, making this claim moot.  Dkt. 15-1, OCCA Op. 25-27; Dkt. 15-7, Second Am. J and Sentence 1-6.  For these reasons, the Court denies the amended petition as to claim six.

### G.    Cumulative error (claim seven)

In his seventh and final claim, Holland alleges the cumulative effect of the errors he alleged in claims one through six deprived him of his constitutional right to a fair trial.  Dkt. 9, Am. Pet. 19; Dkt. 10, Pet'r's Br. 43.  Holland raised this claim on direct appeal, and the OCCA rejected it. The OCCA stated, "When there have been numerous irregularities during the course of a trial that tend to prejudice the rights of the defendant, reversal will be required if the cumulative effect of all the errors is to deny the defendant a fair trial."  Dkt. 15-1, OCCA Op. 27.  The OCCA noted that the only errors it found in Holland's trial were those stemming from the prosecutor's comments the OCCA found were improper but not prejudicial.  *Id.*  The OCCA reasoned, "Considering these errors together, we, again, conclude that [Holland] was not deprived of a fair trial."  *Id.* at 27-28.

The OCCA's statement of the law is consistent with the law of this circuit.  "Under cumulative error review, a court 'merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'" *Jackson v. Warrior*, 805 F.3d 940, 955 (10th Cir. 2015) (quoting *Hamilton v. Mullin*, 436 F.3d

1181, 1196 (10th Cir.2006)); *see also Thacker v. Workman*, 678 F.3d 820, 849 (10th Cir. 2012) (noting that "cumulative-error in the federal habeas context applies only where there are two or more actual constitutional errors").

Like the OCCA, the Court will aggregate the non-prejudicial errors stemming from the prosecutor's improper comments, discussed in claim one, and, in addition, this Court will consider the arguable Fifth Amendment violation discussed in claim two that this Court found harmless under *Brecht*.  In light of the record as a whole, the Court finds that the cumulative effect of these individually harmless errors did not deprive Holland of a fair trial.  The Court thus denies the amended petition as to claim seven.

## CONCLUSION

Because the Court concludes that it would be futile to amend the amended petition to add the *McGirt* claim, the Court denies Holland's motion for leave to file a supplemental petition, construed as a motion to amend.  Further, because the Court concludes that Holland has not established that he is in custody in violation of the Constitution or laws or treaties of the United States, the Court denies Holland's amended petition for writ of habeas corpus.  Finally, because the Court concludes that reasonable jurists would not debate this Court's assessment of Holland's claims, the Court declines to issue a certificate of appealability.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Clerk of Court shall note the substitution of Rick Whitten in place of Joe Allbaugh as party respondent.

2.  The motion for leave to file a supplemental petition (Dkt. 18) is construed as a motion to amend and is **denied**.

3.  The amended petition for writ of habeas corpus (Dkt. 9) is **denied**.

4.  A certificate of appealability is **denied**.

5.  A separate judgment shall be entered in this matter.

**DATED** this 18th day of August 2022.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE